KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
                                                                   :
In re:                                                             :    Chapter 11
                                                                   :
TGHI, INC., et al.,                                                :    Case No. 16-10300(MEW)
                                                                   :
                                   Debtors.[1]                     :    Jointly Administered
                                                                   :
-------------------------------------------------------------------X

**DEBTORS' MEMORANDUM OF LAW IN SUPPORT OF ENTRY**
**OF AN ORDER (I) APPROVING (A) THE DEBTORS' DISCLOSURE**
**STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE**
**BANKRUPTCY CODE, AND (B) THE SOLICITATION PROCEDURES, AND**
**(II) CONFIRMING THE FIRST AMENDED JOINT PREPACKAGED PLAN**
**OF LIQUIDATION OF THE DEBTORS PURSUANT TO CHAPTER 11**
**OF THE BANKRUPTCY CODE**

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521) and TGHI, Inc. (3814).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................... 3

    A.    General Background ............................................................................. 3

    B.    Summary of the Prepack Plan.............................................................. 3

    C.    Solicitation of the Prepack Plan ......................................................... 4

ARGUMENT ......................................................................................................... 6

I.     The Court Should Approve The Debtors' Disclosure Statement........................ 6

II.    The Court Should Approve The  Debtors' Solicitation Procedures ................. 10

    A.    The Debtors' Prepetition Solicitation Complies with the Requirements of Sections 1125(g) and 1126(b) of the Bankruptcy Code......................................... 10

    B.    The Debtors' Solicitation Package and Solicitation Procedures Comply with the Requirements of Bankruptcy Rules 3017(d) and 3018(c) ............................ 11

          1.    Solicitation Packages and Combined Notice ........................... 12

          2.    Ballots ...................................................................................... 13

          3.    The Solicitation Period Complied with Applicable Law and was Reasonable Under Bankruptcy Rule 3018(b) .......................... 13

          4.    The Voting Tabulation Procedures Are Appropriate............... 14

    C.    No Solicitation is Required of Classes Presumed to Accept the Prepack Plan .... 15

    D.    No Solicitation is Required of Classes Deemed to Reject the Prepack Plan........ 15

III.   The Prepack Plan Satisfies Each  Requirement for Confirmation .................... 16

    A.    The Prepack Plan Complies with the Applicable Provisions  of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).......................................... 17

          1.    The Prepack Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code ................................................. 18

2.    The Prepack Plan Satisfies the Seven Mandatory Plan Requirements of 11 U.S.C. §§ 1123(a)(1)-(a)(7) ............................................................. 22

B.    The Debtors, as Plan Proponents, Have Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2)) .............................. 25

C.    The Prepack Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3)) ........................................ 25

D.    The Prepack Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4)) ............................................. 27

1.    All Payments to be made by the Debtors are Subject to Court Approval as Reasonable ................................................................. 27

E.    Post-Effective Date Directors and Officers Have Been Disclosed and Their Appointment is Consistent with Public Policy (11 U.S.C. § 1129(a)(5)) ............. 27

F.    The Prepack Plan Does Not Require Governmental Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6)) .................................................. 28

G.    The Prepack Plan Is in the Best Interests of Creditors and Equity Interest Holders (11 U.S.C. § 1129(a)(7)) ............................................................ 29

H.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)) .................................. 31

I.    The Prepack Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9)). ..................... 32

J.    At Least One Impaired Class of Claims Has Accepted the Prepack Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10)) ...................... 34

K.    The Prepack Plan is Feasible (11 U.S.C. § 1129(a)(11)) ...................................... 35

L.    The Prepack Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12)) ............................................................ 36

M.    The Prepack Plan Provides for the Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13)) ............................................................ 36

N.    Sections 1129(a)(14) and 1129(a)(15) Do Not Apply to the Prepack Plan .......... 37

O.    The Prepack Plan Does Not Provide for the Transfer of Property by Any Nonprofit Entities Not In Accordance with Applicable Nonbankruptcy Law (11 U.S.C. § 1129(a)(16)) ............................................................ 37

P.    The Prepack Plan Satisfies the "Cram Down" Requirements of 11 U.S.C. § 1129(b) ............................................................ 38

|  |  | 1. | The Prepack Plan Does Not Discriminate Unfairly | 38 |
|  |  | 2. | The Prepack Plan Is Fair and Equitable | 40 |
|  | Q. | | The Principal Purpose of the Prepack Plan is Not Avoidance of Taxes (11 U.S.C. § 1129(d)) | 42 |
| IV. | | | The Discretionary Contents of the Prepack Plan Should Be Approved | 43 |
|  | A. | | The General Settlement of Claims and Interests under the Prepack Plan is Fair and Reasonable | 44 |
|  | B. | | The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases Under the Prepack Plan Should Be Approved | 46 |
|  | C. | | The Prepack Plan's Release, Injunction and Exculpation Provisions Are Appropriate and Should be Approved | 47 |
|  |  | 1. | The Debtor Release | 47 |
|  |  | 2. | Third Party Releases | 52 |
|  |  |  | (a) The Third Party Releases as to the Voting Classes are Completely Consensual | 54 |
|  |  |  | (b) The Third Party Releases by Unimpaired Claims are Appropriate Under the Circumstances and Should be Approved | 55 |
|  |  | 3. | The Exculpation Provision | 59 |
|  |  | 4. | Injunction | 62 |
|  | D. | | The Technical Modifications to the Plan Comply with Section 1127 of the Bankruptcy Code | 62 |
| CONCLUSION | | | | 66 |

# TABLE OF AUTHORITIES[†]

CASES                                                                                    Page(s)

*Abel v. Shugrue (In re Ionosphere Clubs, Inc.),*
    184 B.R. 648 (S.D.N.Y. 1995) .............................................................................62

*Aetna Cas. & Sur. Co. v. Clerk U.S. Bankr. Ct., New York, N.Y. (In re Chateaugay
    Corp.),*
    89 F.3d 942 (2d Cir. 1996) ..................................................................................19

*Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N LaSalle St. P'ship,*
    526 U.S. 434 (1999) .......................................................................................29, 41

*Blackacre Bridge Capital LLC v. Korff (In re River Center Holdings, LLC),*
    288 B.R. 59 (Bankr. S.D.N.Y. 2003) ...................................................................53

*Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship),*
    21 F.3d 477 (2d Cir. 1994) ..................................................................................18

*Cadle Co. II, Inc. v. PC Liquidation Corp. (In re PC Liquidation Corp.),*
    383 B.R. 856 (E.D.N.Y. 2008) ..............................................................................8

*Cartalemi v. Karta Corp. (In re Karta Corp.),*
    342 B.R. 45 (S.D.N.Y. 2006) ..............................................................................56

*Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater),*
    57 B.R. 354, 358 (D. Utah 1985) ........................................................................64

*Cosoff v. Rodman (In re W.T. Grant Co.),*
    699 F.2d 599 (2d Cir. 1983) ...........................................................................44, 49

*Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re
    Metromedia Fiber Network, Inc.),*
    416 F.3d 136 (2d Cir. 2005) ......................................................................... passim

*Enron Corp. v. New Power Co. (In re New Power Co.),*
    438 F.3d 1113 (11th Cir. 2006) ...........................................................................63

*Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.),*
    10 F.3d 944 (2d Cir. 1993) ..................................................................................18

*Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II (In re Briscoe Enters., Ltd. II),*
    994 F.2d 1160 (5th Cir. 1993) .............................................................................16

---

[†]  Due to the volume of the unreported decisions and pleadings cited herein, copies of any such decisions or pleadings will be provided to chambers and are available upon request.

*IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*,
338 B.R. 574 (Bankr. S.D.N.Y. 2005) ..........................................................53

*In re 500 Fifth Ave. Assocs.*,
148 B.R. 1010 (Bankr. S.D.N.Y. 1993) ........................................................18

*In re Adelphia Commc'ns Corp.*,
368 B.R. 140 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y.
2007), *aff'd*, 544 F.3d 420 (2d Cir. 2008) ................................................ passim

*In re Almatis, B.V.*,
No. 10-12308 (MG) (Bankr. S.D.N.Y. Sept. 20, 2010) ..............................51, 61, 62

*In re Am. Solar King Corp.*,

90 B.R. 808 (Bankr. W.D. Tex. 1988) ........................................................63

*In re AMR Corp.*,
11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013) .........................................51, 61

*In re Aztec Co.*,
107 B.R. 585 (Bankr. M.D. Tenn. 1989) ......................................................38

*In re Bally Total Fitness of Greater N.Y., Inc.*,
No. 07-12395, 2007 WL 2779438 (Bankr. S.D.N.Y. Sept. 17, 2007) ..................16, 49, 60, 62

*In re Best Prods. Co.*,
168 B.R. 35 (Bankr. S.D.N.Y. 1994) .........................................................44

*In re Borders Grp.*,
No. 11-10614 (MG) (Bankr. S.D.N.Y. Dec. 21, 2011) .......................................61

*In re Buttonwood Partners, Ltd.*,
111 B.R. 57 (Bankr. S.D.N.Y. 1990) .........................................................39

*In re Calpine Corp.*,
No. 05-60200 (BRL) (Bankr. S.D.N.Y. Dec. 19, 2007) .......................................51

*In re Cellular Info. Sys., Inc.*,
171 B.R. 926 (Bankr. S.D.N.Y. 1994) ........................................................26

*In re Copy Crafters Quickprint, Inc.*,
92 B.R. 973 (Bankr. N.D.N.Y. 1988) ..........................................................7

*In re DBSD N. Am., Inc.*,
419 B.R. 179 (Bankr. S.D.N.Y. 2009), *aff'd in part and rev'd in part*, 627 F. 3d 496
(2d Cir. 2010), *aff'd in part and rev'd in part*, 634 F. 3d 79 (2d Cir. 2011) ..............48, 54, 62

*In re DJK Residential LLC*,
No. 08-10375 (JMP) (Bankr. S.D.N.Y. May 2, 2008)............................................13

*In re DJK Residential LLC*,
No. 08-10375 (JMP) (Bankr. S.D.N.Y. May 7, 2008)............................................51

*In re Drexel Burnham Lambert Grp., Inc.*,
138 B.R. 723 (Bankr. S.D.N.Y. 1992)...............................................17, 18, 19, 27

*In re Eagle-Picher Indus., Inc.*,
203 B.R. 256 (Bankr. S.D. Ohio 1996).............................................................27

*In re El Charro, Inc.*,
No. 05-60294, 2007 WL 2174911 (Bankr. D. Kan. July 26, 2007) .......................17

*In re Elsinore Shore Assocs.*,
91 B.R. 238 (Bankr. D.N.J. 1988) ...................................................................27

*In re Enron Corp.*,
No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 15, 2004) .........................................35

*In re FairPoint Commc'ns, Inc.*,
452 B.R. 21 (S.D.N.Y. 2011).........................................................................53

*In re Ferretti*,
128 B.R. 16 (Bankr. D.N.H. 1991) .................................................................7, 8

*In re Freymiller Trucking, Inc.*,
190 B.R. 913 (Bankr. W.D. Okla. 1996) ...........................................................38

*In re Gen. Mar. Corp.*,
No. 11-15285 (MG) (Bankr. S.D.N.Y. May 7, 2012)......................................60, 62

*In re Granite Broad. Corp.*,
369 B.R. 120 (Bankr. S.D.N.Y. 2007) ..............................................................60

*In re Gucci*,
193 B.R. 411 (S.D.N.Y. 1996)........................................................................46

*In re Heritage Org., L.L.C.*,
375 B.R. 230 (Bankr. N.D. Tex. 2007)........................................................18, 19

*In re Hibbard Brown & Co., Inc.*,
217 B.R. 41 (Bankr. S.D.N.Y. 1998)................................................................44

*In re Indianapolis Downs LLC*,
486 B.R. 286 (Bankr. D. Del. 2013) ................................................................56

*In re Ion Media Networks, Inc.*,
    No. 09-13125 (JMP) (Bankr. S.D.N.Y. 2009) ....................................................51

*In re Ionosphere Clubs, Inc.*,
    179 B.R. 24 (Bankr. S.D.N.Y. 1995) ...........................................................................7

*In re Ionosphere Clubs, Inc.*,
    98 B.R. 174 (Bankr. S.D.N.Y. 1989) ..........................................................................18

*In re Jersey City Med. Ctr.*,
    817 F.2d 1055 (3d Cir. 1987) ....................................................................................18

*In re Jobson Med. Info. Holdings LLC*,
    No. 12-10434 (SHL) (Bankr. S.D.N.Y. Mar. 5, 2012) .............................................51

*In re Johns-Manville Corp.*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78
    B.R. 407 (S.D.N.Y. 1987)...........................................................................................25

*In re Kaiser Aluminum Corp.*,
    No. 02-10429, 2006 WL 616243 (Bankr. D. Del. Feb. 6, 2006) ..............................19

*In re Mesa Air Grp.*,
    No. 10-10018 (MG) (Bankr. S.D.N.Y. Jan. 20, 2011)..............................................62

*In re Mirant Corp.*,
    No. 03-46590, 2007 WL 1258932 (Bankr. N.D. Tex. Apr. 27, 2007) .............17, 19

*In re Momentum Mfg. Corp.*,
    25 F.3d 1132 (2d Cir. 1994).........................................................................................7

*In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I*,
    79 B.R. 305 (Bankr. S.D. Ohio 1987) .......................................................................63

*In re Oldco M Corp. (f/k/a Metaldyne Corp.)*,
    No. 09-13412 (MG) (Bankr. S.D.N.Y. Jan. 10, 2010)......................................54, 62

*In re Oneida Ltd.*,
    351 B.R. 79 (Bankr. S.D.N.Y. 2006) .........................................................................48

*In re Phoenix Petroleum Co.*,
    278 B.R. 385 (Bankr. E.D. Pa. 2001) ..........................................................................8

*In re PWS Holding Corp.*,
    228 F.3d 224 (3d Cir. 2000).......................................................................................60

*In re Sbarro LLC*,
    No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 13, 2014) ...........................................13

*In re Scioto Valley Mortgage Co.*,
  88 B.R. 168 (Bankr. S.D. Ohio 1988) .....................................................................8

*In re SGPA, Inc.*,
  No. 1-01-02609 (Bankr. M.D. Pa. Sept. 28, 2001) ...............................................35

*In re Spiegel, Inc.*,
  No. 03-11540, 2005 WL 1278094 (Bankr. S.D.N.Y. May 25, 2005) ....................49

*In re Sylvan I-30 Enters.*,
  No. 05-86708, 2006 WL 2539718 (Bankr. N.D. Tex. Sept. 1, 2006).....................17

*In re Texaco, Inc.*,
  84 B.R. 893 (Bankr. S.D.N.Y. 1988),
  *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1998) ........................................26, 28, 45

*In re Tower Auto., Inc.*,
  No. 05-10578 (ALG) (Bankr. S.D.N.Y. July 12, 2007) ........................................51

*In re Toy & Sports Warehouse, Inc.*,
  37 B.R. 141 (Bankr. S.D.N.Y. 1984)......................................................................25

*In re Uno Rest. Holdings Corp.*,
  No. 10-10209 (MG) (Bankr. S.D.N.Y. July 6, 2010) ......................................51, 61

*In re Washington Mutual, Inc.*,
  No. 08-12229 (MFW) (Bankr. D. Del. Feb. 24, 2012) ..........................................51

*In re Winn-Dixie Stores*,
  356 B.R. 239 (Bankr. M.D. Fla. 2006) ...................................................................60

*In re WorldCom, Inc.*,
  No. 02-13533, 2003 Bankr. LEXIS 1401 (Bankr. S.D.N.Y. Oct. 31, 2003) .................. passim

*Johns-Manville Corp. v. Chubb Indem. Ins. Co.* (*In re Johns-Manville Corp.*),
  517 F.3d 52 (2d Cir. 2008) .....................................................................................53

*JPMorgan Chase Bank, N.A. v Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns, Inc.*),
  419 B.R. 221 (Bankr. S.D.N.Y. 2009)..............................................................35, 56

*Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*),
  843 F.2d 636 (2d Cir. 1988)...........................................................................17, 25, 26

*Kirk v. Texaco, Inc.*,
  82 B.R. 678 (S.D.N.Y. 1988)...................................................................................8

*Krystal-Cadillac-Oldsmobile GMC Truck Inc. v. Gen. Motors Corp.*,
337 F.3d 314 (3d Cir. 2003)........................................................................................7

*Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*,
930 F.2d 1132 (6th Cir. 1991) ..................................................................................53

*Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*,
478 F.3d 452 (2d Cir. 2007)...............................................................................45, 49

*N.Y.C. Emps. Ret. Sys. V. Ebbers (In re WorldCom, Inc. Sec. Litig.)*,
293 B.R. 308 (S.D.N.Y. 2003)...................................................................................53

*NLRB v. Bildisco & Bildisco*,
465 U.S. 513 (1984)....................................................................................................46

*Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*,
78 F.3d 18 (2d Cir. 1996) ...........................................................................................46

*Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*,
4 F.3d 1095 (2d Cir. 1993)..........................................................................................46

*Pfizer Inc. v. Law Offices of Peter G. Angelos* (*In re Quigley Co.*),
676 F.3d 45 (2d Cir. 2012), *cert. denied sub nom. Pfizer, Inc. v. Law Offices of Peter
G. Angelos*, 133 S. Ct. 2849 (2013) ..........................................................................53

*Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414 (1968)....................................................................................................44

*Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.)*,
330 B.R. 394 (Bankr. S.D.N.Y. 2005).......................................................................56

*SEC v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*,
960 F.2d 285 (2d Cir. 1992)............................................................................... passim

*Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*,
326 B.R. 497 (S.D.N.Y. 2005)...................................................................................51

*Windels Marx Lane & Mittendorf, LLP v. Source Enters., Inc. (In re Source Enters.,
Inc.)*,
392 B.R. 541 (S.D.N.Y. 2008)...................................................................................18

## STATUTES

11 U.S.C. § 101(31) .........................................................................................................28

11 U.S.C. § 365 ...............................................................................................................46

11 U.S.C. § 365(a) ..........................................................................................................46

11 U.S.C. § 507(a) ...................................................................................................................32

11 U.S.C. § 507(a)(1) .............................................................................................................33

11 U.S.C. § 507(a)(2) .............................................................................................................32

11 U.S.C. § 507(a)(3) .............................................................................................................32

11 U.S.C. § 507(a)(4) .............................................................................................................33

11 U.S.C. § 507(a)(5) .............................................................................................................33

11 U.S.C. § 507(a)(6) .............................................................................................................33

11 U.S.C. § 507(a)(7) .............................................................................................................33

11 U.S.C. § 507(a)(8) .............................................................................................................33

11 U.S.C. § 1107(a) ..................................................................................................................3

11 U.S.C. § 1108 ......................................................................................................................3

11 U.S.C. § 1122 ...............................................................................................................passim

11 U.S.C. § 1122(a) ................................................................................................................18

11 U.S.C. § 1122(b) ................................................................................................................33

11 U.S.C. § 1123 ..................................................................................................17, 18, 63, 65

11 U.S.C. § 1123(a) ..............................................................................................22, 23, 24, 25

11 U.S.C. § 1123(a)(1) .....................................................................................................22, 23

11 U.S.C. § 1123(a)(2) .....................................................................................................22, 23

11 U.S.C. § 1123(a)(3) .....................................................................................................22, 23

11 U.S.C. § 1123(a)(4) .....................................................................................................22, 23

11 U.S.C. § 1123(a)(5) .....................................................................................................22, 23

11 U.S.C. § 1123(a)(6) .....................................................................................................22, 24

11 U.S.C. § 1123(a)(7) .....................................................................................................22, 24

11 U.S.C. § 1123(b) .........................................................................................................43, 44

11 U.S.C. § 1123(b)(3) .....................................................................................................48, 49

11 U.S.C. § 1123(b)(3)(A)...............................................................................................43, 48, 51

11 U.S.C. § 1123(b)(3)(B)...............................................................................................43

11 U.S.C. § 1123(b)(5).....................................................................................................43

11 U.S.C. § 1123(b)(6).................................................................................................43, 47

11 U.S.C. § 1125..........................................................................................................passim

11 U.S.C. § 1125(a)....................................................................................................10, 11

11 U.S.C. § 1125(a)(1)...................................................................................................6

11 U.S.C. § 1125(g)....................................................................................................10, 11

11 U.S.C. § 1126........................................................................................................1, 25

11 U.S.C. § 1126(b).....................................................................................................passim

11 U.S.C. § 1126(c)..........................................................................................................31

11 U.S.C. § 1126(d)..........................................................................................................31

11 U.S.C. § 1126(f).....................................................................................................passim

11 U.S.C. § 1126(g).....................................................................................................passim

11 U.S.C. § 1127....................................................................................................17, 62, 63

11 U.S.C. § 1127(a)..........................................................................................................63

11 U.S.C. § 1127(b).....................................................................................................63, 64

11 U.S.C. § 1129(a)(1).....................................................................................................17

11 U.S.C. § 1129(a)(2).....................................................................................................25

11 U.S.C. § 1129(a)(3)..............................................................................................25, 26, 27

11 U.S.C. § 1129(a)(4).....................................................................................................27

11 U.S.C. § 1129(a)(5).....................................................................................................28

11 U.S.C. § 1129(a)(5)(A)................................................................................................28

11 U.S.C. § 1129(a)(5)(B)................................................................................................28

11 U.S.C. § 1129(a)(6).....................................................................................................28

11 U.S.C. § 1129(a)(7)........................................................................................................29, 31

11 U.S.C. § 1129(a)(8).........................................................................................................passim

11 U.S.C. § 1129(a)(9)........................................................................................................32, 33

11 U.S.C. § 1129(a)(10)......................................................................................................34, 35

11 U.S.C. § 1129(a)(11)............................................................................................................35

11 U.S.C. § 1129(a)(12)............................................................................................................36

11 U.S.C. § 1129(a)(13)............................................................................................................36

11 U.S.C. § 1129(a)(14)............................................................................................................37

11 U.S.C. § 1129(a)(15)............................................................................................................37

11 U.S.C. § 1129(a)(16)............................................................................................................37

11 U.S.C. § 1129(b)...........................................................................................................passim

11 U.S.C. § 1129(b)(1)........................................................................................................32, 38

11 U.S.C. § 1129(b)(2)(B).........................................................................................................40

11 U.S.C. § 1129(b)(2)(B)(ii)....................................................................................................41

11 U.S.C. § 1129(b)(2)(C).........................................................................................................41

11 U.S.C. § 1129(b)(2)(C)(ii)....................................................................................................41

11 U.S.C. § 1129(d).............................................................................................................42, 43

28 U.S.C. § 1930........................................................................................................................36

## OTHER AUTHORITIES

Fed. R. Bankr. P. 3017.............................................................................................................3, 25

Fed. R. Bankr. P. 3017(d) ...............................................................................................10, 11, 13

Fed. R. Bankr. P. 3017(e) .........................................................................................................10

Fed. R. Bankr. P. 3018.............................................................................................................3, 25

Fed. R. Bankr. P. 3018(b) ....................................................................................................10, 13

Fed. R. Bankr. P. 3018(c) ...............................................................................................10, 11, 13

Fed. R. Bankr. P. 3019 ................................................................................................63, 64

Fed. R. Bankr. P. 9019 ................................................................................................44, 49

Fed. R. Bankr. P. 9019(a) ...............................................................................................49

H.R. Rep. No. 109-31 (2005)...........................................................................................37

H.R. Rep. No. 595, 95th Cong., 1st Sess. (1977) ...............................................7, 17, 25

S. Rep. No. 95-989 (1978) ...............................................................................17, 25, 31

TGHI, Inc. ("**Holdings**") and Parent THI, Inc. ("**Parent**," and together with Holdings, the "**Debtors**") as chapter 11 debtors and debtors in possession in the above-referenced chapter 11 cases (the "**Chapter 11 Cases**"), submit this memorandum of law (the "**Memorandum**") in support of entry of an order (the "**Confirmation Order**") (i) approving (a) the *Disclosure Statement for the Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code* (as amended from time to time, the "**Disclosure Statement**") [Docket No. 7], pursuant to sections 1125 and 1126 of the Bankruptcy Code, and (b) the solicitation procedures (the "**Solicitation Procedures**") used in connection with the Debtors' prepetition solicitation of votes on the Prepack Plan (defined below), and (ii) confirming the *Prepackaged Plan Of Liquidation Of The Debtors Pursuant To Chapter 11 Of The Bankruptcy Code*, dated February 3, 2016 (as amended by the *First Amended Joint Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code*, dated April 15, 2016, the "**Prepack Plan**") [Docket No. 6, as amended at Docket No. 42].[3]  In further support of entry of the Confirmation Order, the Debtors respectfully represent as follows:

## PRELIMINARY STATEMENT

1.    The Prepack Plan is the culmination of over a year of extensive negotiations among the Debtors and their secured and unsecured lenders.  As more fully set forth in the Disclosure Statement, prior to the commencement of these Chapter 11 Cases, the Debtors and the Formerly Owned Operating Businesses reached consensus with their secured lenders to obtain time and liquidity to thoroughly market the Debtors and the Formerly Owned Operating Businesses pursuant to the terms of the Transaction Support Agreement entered into between, among others, the Debtors and certain of their secured and unsecured lenders.  In exchange for

---

[3]  Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Prepack Plan.

certain conditions set forth in the Transaction Support Agreement, the parties to the Transaction

Support Agreement negotiated for material benefits to be provided to Holdings and Parent from

the Formerly Owned Operating Businesses in exchange for Holdings' agreement to transfer the

common stock of the main operating company into escrow pending the results of a vigorous out-

of-court sale process for the Formerly Owned Operating Businesses. These benefits included (i)

value for the payment of administrative costs and priority claims of both Parent and Holdings,

(ii) remaining value to be distributed to the creditors of Holdings in accordance with structural

seniority and (iii) facilitation of the orderly wind down of both Debtors.   The parties mutually

determined that an out-of-court marketing process would provide the best avenue to maximize

the value of the Debtors and the Formerly Owned Operating Businesses.   The Forbearance and

Marketing Period ultimately established that the value of the Formerly Owned Operating

Businesses was inadequate to satisfy their secured debt, much less all of their debt.   As a result,

the marketing process further established that Holdings, as the then-direct or indirect parent

company to the Formerly Owned Operating Businesses was insolvent and without any means to

pay its debts, and that Parent, as the parent company of Holdings, was also insolvent.   The

Transaction Support Agreement avoided the need for an immediate bankruptcy filing by the

Debtors and the Formerly Owned Operating Businesses through the provision of an immediate

liquidity infusion to stabilize operations, and allowed for the thorough pursuit of non-bankruptcy

solutions to maximize value for all stakeholders.   The Prepack Plan implements the transactions

contemplated by the Transaction Support Agreement for Holdings and Parent, distributes the

negotiated value to creditors of Holdings and Parent and efficiently winds down the Debtors.

2.      The Prepack Plan enjoys overwhelming support by the Voting Classes

(defined below), having received 100% participation in voting by creditors entitled to vote, *every*

*one* of which voted to accept the Plan.  Notice of the Prepack Plan has been widely disseminated to all known creditor constituencies and also published in the National Edition of *The New York Times*.  No objections were filed or received.  In addition, as set forth in greater detail herein, the Debtors and the Prepack Plan are in compliance with all of the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, and accordingly, the Solicitation Procedures and Disclosure Statement should be approved under sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rules 3017 and 3018, and the Prepack Plan should be confirmed under section 1129 of the Bankruptcy Code.

## **BACKGROUND**

### **A.    General Background**

3.    On February 9, 2016 (the "**Petition Date**"), the Debtors filed their voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Each Debtor continues to operate its respective business and manage its respective property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.    The Debtors' cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of this Court.

5.    No trustee, examiner or statutory committee has been appointed herein.

### **B.    Summary of the Prepack Plan**

6.    The Prepack Plan designates 8 different classes of creditors and equity interest holders as either impaired or unimpaired, as follows:

| Class | Claim or Equity Interest | Status | Voting Rights |
|---|---|---|---|
| 1 | Other Priority Claims | Unimpaired | Conclusively Presumed to Accept |
| 2 | Other Secured Claims | Unimpaired | Conclusively Presumed to Accept |

| 3 | Prepetition $20 Million Facility Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims against Parent | Impaired | Deemed to Reject |
| 5 | General Unsecured Claims against Holdings | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Holdings | Impaired | Deemed to Reject |
| 8 | Equity Interests in Parent | Impaired | Deemed to Reject |

7.      The Disclosure Statement provides a more detailed discussion of the Prepack Plan's treatment of the various classes of Claims and Equity Interests and estimated recoveries on account of such Claims and Equity Interests.

## C.      Solicitation of the Prepack Plan

8.      The only Impaired Classes entitled to vote on the Prepack Plan are Classes 3 and 5, consisting of the (a) holders of the Prepetition $20 Million Facility Claims; and (b) holders of General Unsecured Claims against Holdings, respectively (the "**Voting Classes**"). Claims in Classes 1 (Other Priority Claims) and 2 (Other Secured Claims) are Unimpaired under the Prepack Plan and are therefore conclusively presumed to accept the Prepack Plan in accordance with section 1126(f) of the Bankruptcy Code.  Claims and Equity Interests in Classes 4 (General Unsecured Claims against Parent), 6 (Intercompany Claims), 7 (Equity Interests in Holdings) and 8 (Equity Interests in Parent) are deemed to reject the Prepack Plan in accordance with section 1126(g) of the Bankruptcy Code.

9.      On February 3, 2016, prior to commencing the Chapter 11 Cases, the Debtors caused a copy of the Prepack Plan, the Disclosure Statement, and the Ballots to be delivered to all holders of Claims in the Voting Classes.  The Debtors established February 5, 2016 at 4:00 p.m. (prevailing New York time) as the deadline for the receipt of votes to accept or

reject the Prepack Plan from the holders of Claims in Voting Classes 3 and 5 (the "**Voting Deadline**").

10.     Kurtzman Carson Consultants LLC (the "**Voting Agent**") collected and tabulated the Ballots received on or before Voting Deadline.  As of the Voting Deadline, the Prepack Plan was unanimously accepted by Voting Classes 3 and 5.[4]  No holder of a claim in Voting Classes 3 or 5 failed to vote or voted to reject the Prepack Plan and, therefore, none opted out of the releases.

11.     On the Petition Date, the Debtors filed, among other pleadings, the Debtors' motion, *inter alia*, for an order scheduling a combined hearing on the adequacy of the Disclosure Statement and the Solicitation Procedures, and confirmation of the Prepack Plan (the "**Scheduling Motion**") [Docket No. 8] and on February 11, 2016, this Court entered an order granting the relief requested therein (the "**Scheduling Order**") [Docket No. 13].

12.     Pursuant to the Scheduling Order, this Court established (i) 4:00 p.m., prevailing Eastern Time on March 22, 2016 as the deadline by which objections to the Solicitation Procedures, Disclosure Statement, or Prepack Plan were to be filed, and (ii) 11:00 a.m., prevailing Eastern Time on April 1, 2016 as the time and date for the combined hearing to consider approval of the Solicitation Procedures and Disclosure Statement and confirmation of the Prepack Plan (the "**Confirmation Hearing**"). The Confirmation Hearing was later rescheduled to April 20, 2016 at 10:00 a.m.

13.     Pursuant to the Scheduling Order, on February 12, 2016, the Debtors served a notice (the "**Combined Notice**") of, among other things, (i) the commencement of the

---

[4] *Declaration of James Lee of Kurtzman Carson Consultants LLC Regarding the Transmission of Solicitation Packages, Voting, and Tabulation of Ballots For the Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 44], Exhibit C (the "**Voting Declaration**").

Chapter 11 Cases, (ii) the date, time, and place of the Confirmation Hearing, (iii) the deadline

and procedures for filing objections to the adequacy of the Disclosure Statement, and

confirmation of the Prepack Plan, and (iv) instructions for obtaining copies of the Disclosure

Statement and the Prepack Plan, upon: (a) all of the Debtors' known creditors and equity interest

holders; (b) the Prepetition $20 Million Facility Agent and its counsel; (c) the Prepetition $20

Million Lenders; (d) the PIK Notes Agent and its counsel; (e) the Office of the United States

Trustee (the "**U.S. Trustee**") for the Southern District of New York; (f) the United States

Attorney for the Southern District of New York; (g) the Internal Revenue Service; (h) relevant

state taxing authorities for each of California, Delaware and New York; and (i) the Attorney

General for each of California, Delaware and New York. *See* Affidavit of Service of Lydia

Pastor Nino, subscribed and sworn to on February 17, 2016 [Docket No. 18].

14.    In addition, in accordance with the Scheduling Order, the Debtors caused

the Combined Notice to be published in the National Edition of *The New York Times* on

February 11, 2016. *See* Proof of Publication sworn to by Alice Weber on February 16, 2016

[Docket No. 23].

<u>**ARGUMENT**</u>

I.    **THE COURT SHOULD APPROVE THE
      DEBTORS' DISCLOSURE STATEMENT**

15.    Under section 1126(b) of the Bankruptcy Code, a disclosure statement

must disclose "adequate information."[5]    Section 1125(a)(1) of the Bankruptcy Code defines

"adequate information" to mean:

> [I]nformation of a kind, and in sufficient detail, as far as is
> reasonably practicable in light of the nature and history of the
> debtor and the condition of the debtor's books and records,

---

[5]  11 U.S.C. § 1126(b).

including a discussion of the potential material Federal tax
consequences of the plan to the debtor, any successor to the debtor,
and a hypothetical investor typical of the holders of claims or
interests in the case, that would enable such a hypothetical investor
of the relevant class to make an informed judgment about the
plan . . . .[6]

16.     Thus, a debtor's disclosure statement must, as a whole, provide information that is reasonably practicable to permit an informed judgment by impaired creditors entitled to vote on the plan.[7]  The disclosure statement "must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to getting its distribution."[8]

17.     The Bankruptcy Court has broad discretion to determine the adequacy of the information contained in a disclosure statement.[9]  This discretion permits courts to tailor disclosures made in connection with the solicitation of votes on a Chapter 11 plan in a broad range of businesses and circumstances.[10]  Congress granted bankruptcy courts discretion in order to facilitate effective reorganizations in the broad range of businesses in which chapter 11 debtors engage and the broad range of circumstances that accompany chapter 11 cases.[11] Accordingly, the determination of whether a disclosure statement contains adequate information

---

[6]  See id. § 1125(a)(1).

[7]  In re Momentum Mfg. Corp., 25 F.3d 1132, 1136 (2d Cir. 1994); see also In re Ionosphere Clubs, Inc., 179 B.R. 24, 29 (Bankr. S.D.N.Y. 1995) (the adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of Chapter 11 towards fair settlement through a negotiation process between informed interested parties" (internal citation omitted)); Krystal-Cadillac-Oldsmobile GMC Truck Inc. v. Gen. Motors Corp., 337 F.3d 314, 322 (3d Cir. 2003).

[8]  In re Ferretti, 128 B.R. 16, 19 (Bankr. D.N.H. 1991).

[9]  See Kirk v. Texaco, Inc., 82 B.R. 678, 682 (S.D.N.Y. 1988).

[10]  Id.

[11]  See H.R. Rep. No. 595, 95th Cong., 1st Sess. 408-09 (1977); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1988) (adequacy of disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the policy of chapter 11 towards fair settlement through a negotiation process between informed interested parties").

is to be made on a case-by-case basis, focusing on the unique facts and circumstances of each case.[12]

18.     In that regard, courts generally examine a number of factors to determine whether the disclosure statement contains adequate information.[13]  The factors are not meant to be comprehensive, and a debtor need not provide information on all factors.  Rather, the bankruptcy court must decide what is appropriate in each case.[14]

19.     Here, the Disclosure Statement contains adequate information with respect to the relevant factors, including, but not limited to, the following key sections and information contained therein:

    a)  *Introduction and Executive Summary*:  A summary of the events leading to the Chapter 11 Cases, including the transactions embodied in the Transaction Support Agreement, an overview of chapter 11, voting rights, solicitation procedures and voting deadlines under the Prepack Plan.  *See* Disclosure Statement, Art. I.

    b)  *Summary of Treatment*:  A summary of the proposed treatment of Classes of Claims and Equity Interests under the Prepack Plan.  *See* Disclosure Statement, Art. II.

    c)  *Background*: The history of the Debtors, their businesses, and their prepetition capital structure.  *See* Disclosure Statement, Art. III.

    d)  *Events Leading to the Chapter 11 Cases*:  A description of the Debtors' industry and summary of significant events leading to the commencement of the Chapter 11 Cases, including negotiations with the Debtors' stakeholders resulting in the Transaction Support Agreement, the marketing process, and the Collateral Agent Stock Turnover.  *See* Disclosure Statement, Art. IV.

    e)  *Anticipated Chapter 11 Cases*: The expected timetable for the Chapter 11 Cases and first day motions.  *See* Disclosure Statement, Art. V.

---

[12]  *See Kirk*, 82 B.R. at 682; *see also Cadle Co. II, Inc. v. PC Liquidation Corp.* (*In re PC Liquidation Corp.*), 383 B.R. 856, 865 (E.D.N.Y. 2008).

[13]  *See, e.g.*, *In re Scioto Valley Mortgage Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (listing factors); *see also In re Ferretti*, 128 B.R. at 18-19 (similar list).

[14]  *In re Phoenix Petroleum Co.*, 278 B.R. 385, 393 (Bankr. E.D. Pa. 2001) (considering list of factors but cautioning that "no one list of categories will apply in every case").

    f)   *Summary of the Prepack Plan*: Information concerning the Prepack Plan, the means for implementation of the Prepack Plan, the effect of confirmation of the Prepack Plan (including injunctions, releases and exculpations) and alternatives thereto. *See* Disclosure Statement, Art. VI.

    g)   *Confirmation and Effectiveness of Prepack Plan*: Information relating to the conditions precedent to confirmation of the Prepack Plan, effectiveness of the Prepack Plan, modification of the Plan, and effects of revocation, withdrawal or non-consummation of the Plan. *See* Disclosure Statement, Art. VII

    h)   *Confirmation Procedures*: Information to assist the Court in determining whether the Prepack Plan complies with the Bankruptcy Code. *See* Disclosure Statement, Art. VIII.

    i)   *Risk Factors*: A description of certain risk factors that may affect the Prepack Plan and an overall disclaimer as to the information provided by and set forth in the Disclosure Statement. *See* Disclosure Statement, Art. IX.

    j)   *Alternatives to Confirmation and Consummation of the Prepack Plan*: A summary of alternatives, including an alternate plan of liquidation, liquidation under Chapter 7 of the Bankruptcy Code and dismissal of the Chapter 11 Cases. *See* Disclosure Statement, Art. X.

    k)   *Certain U.S. Federal Income Tax Consequences of the Prepack Plan:* A description of certain U.S. federal income tax law consequences of the Prepack Plan. *See* Disclosure Statement, Art. XI.

    l)   *Recommendation and Conclusion*: A recommendation by the Debtors that holders of Claims and Equity Interests in the voting classes vote to accept the Prepack Plan. *See* Disclosure Statement, Art. XII.

    20.    In addition, the Prepack Plan and Disclosure Statement were subject to the review and comment of, among others, the holders of the Prepetition $20 Million Facility Claims, the agent for the holders of the Prepetition $20 Million Facility Claims and its counsel, the Agent for the PIK Notes and its counsel; and certain holders of the Holdings PIK notes and Parent PIK Notes before the commencement of the solicitation process[15], and the terms thereof were the subject of extensive arms'-length negotiations.

---

[15] Holders of Holdings PIK Notes who voted to accept the Prepack Plan also hold approximately 62% of the outstanding principal amount of, and constitute 46% in number of the holders of the Parent PIK Notes. Certain other holders of Parent PIK Notes were involved in the process either as a secured lender or as an observer on the Board.

21.     Accordingly, the Disclosure Statement contains more than sufficient information typically found by bankruptcy courts to be adequate and complies with all aspects of section 1125 of the Bankruptcy Code.   Therefore, this Court should approve the Disclosure Statement as containing "adequate information" as defined by section 1125(a) and as required by section 1126(b) of the Bankruptcy Code.

## II.     THE COURT SHOULD APPROVE THE DEBTORS' SOLICITATION PROCEDURES

22.     To determine whether a solicitation of votes to accept or reject a plan should be approved, this Court must determine whether the solicitation complied with sections 1125(g) and 1126(b) of the Bankruptcy Code, and Bankruptcy Rules 3017(d), and (e), and 3018(b) and (c).   For the reasons set forth herein and in the Scheduling Motion, the Debtors' Solicitation Procedures comply with the Bankruptcy Code, Bankruptcy Rules and applicable nonbankruptcy law, and should be approved.

### A.     The Debtors' Prepetition Solicitation Complies with the Requirements of Sections 1125(g) and 1126(b) of the Bankruptcy Code

23.     Sections 1125(g) and 1126(b) of the Bankruptcy Code govern the acceptance of a Chapter 11 plan by a holder of a claim or interest prior to the commencement of a chapter 11 case.   Section 1125(g) provides:

> Notwithstanding subsection (b), an acceptance or rejection of the plan may be solicited from a holder of a claim or interest if such solicitation complies with applicable nonbankruptcy law and if such holder was solicited before the commencement of the case in a manner complying with applicable nonbankruptcy law.[16]

24.     Section 1126(b) of the Bankruptcy Code provides that a holder of a claim or interest that has accepted or rejected the plan before the commencement of the chapter 11 case is deemed to have accepted or rejected such plan if:

---

[16]  11 U.S.C. § 1125(g).

(1) the solicitation of such acceptance or rejection was in compliance with any applicable nonbankruptcy law, rule or regulation governing the adequacy of disclosure in connection with such solicitation; or

(2) if there is not any such law, rule or regulation, such acceptance or rejection was solicited after disclosure to such holder of adequate information, as defined in section 1125(a) of this title.

25.      Here, the Debtors' prepetition solicitation of votes on the Prepack Plan complies with the sections 1125(g) and 1126(b) of the Bankruptcy Code.

26.      Because the Solicitation did not constitute an offer or sale of securities, there is no applicable nonbankruptcy law governing such solicitation under section 1126(b) of the Bankruptcy Code. In such cases, the Solicitation must include disclosure of adequate information as defined in section 1125(a) of the Bankruptcy Code.[17]  As discussed in Section I, *supra*, the Disclosure Statement contains adequate information as required in section 1125(a) of the Bankruptcy Code.

**B.     The Debtors' Solicitation Package and Solicitation Procedures Comply with the Requirements of Bankruptcy Rules 3017(d) and 3018(c)**

27.      Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for the purpose of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization.[18]  Bankruptcy Rule 3018(c) provides that "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form."[19]

---

[17] *See* 11 U.S.C. § 1126(b)(2).

[18] *See* Fed. R. Bankr. P. 3017(d).

[19] *Id.* 3018(c).

28.    The Debtors' Solicitation Package, Ballots and Solicitation Procedures comply with the requirements of the Bankruptcy Code and the Bankruptcy Rules.

### 1.    Solicitation Packages and Combined Notice

29.    As required by Bankruptcy Rule 3017(d), the Solicitation Packages included the Disclosure Statement, the Prepack Plan and the applicable Ballot to accept or reject the Prepack Plan.[20]    Holders of Claims against the Debtors in Classes 1 and 2 (*i.e.*, the Unimpaired Classes) were not provided with Solicitation Packages because such Holders of Claims are Unimpaired and conclusively presumed to accept the Prepack Plan pursuant to section 1126(f) of the Bankruptcy Code.  In addition, the holders of Claims and Equity Interests in Classes 4, 6, 7 and 8 were not provided with Solicitation Packages because such Holders are deemed to reject the Prepack Plan pursuant to section 1126(g) of the Bankruptcy Code.  For the reasons set forth herein and in the Scheduling Motion, the Debtors request a waiver of the Bankruptcy Rule requirement that the Debtors mail a copy of the Prepack Plan and Disclosure Statement to creditors or equity interest holders presumed to accept or deemed to reject the Prepack Plan.

30.    In addition, the Debtors distributed the Combined Notice to creditors and equity holders in compliance with the Scheduling Order, and published the Combined Notice in the National Edition of *The New York Times*.  The Combined Notice provided that copies of the Prepack Plan and the Disclosure Statement could be obtained upon request of the Debtors' counsel, are on file with the Clerk of the Bankruptcy Court, and are available for inspection on the Debtors' restructuring website at www.kccllc.net/TGHI.    The Combined Notice also

---

[20] Voting Declaration, at ¶ 6.

described the procedures and deadline for submitting an objection to the Disclosure Statement or confirmation of the Prepack Plan.

## 2.    **Ballots**

31.    Bankruptcy Rules 3017(d) and 3018(c) require a form of ballot substantially conforming to Official Form No. B 214.  The Ballots are based on Official Form No. B 214, but were modified to address the particular aspects of these Chapter 11 Cases.  To be counted as votes to accept or reject the Prepack Plan, the Ballot stated that all Ballots had to be properly executed, completed and delivered to KCC so that they would be received no later than the Voting Deadline.

## 3.    **The Solicitation Period Complied with Applicable Law and was Reasonable Under Bankruptcy Rule 3018(b)**

32.    Bankruptcy Rule 3018(b) provides that prepetition acceptances or rejections of a prepackaged plan are valid only if the plan was transmitted to substantially all of the holders of claims or interests in each class, and only if the time for voting was not "unreasonably short."[21]  The voting period of three (3) Business Days for the holders of Claims in Class 3 and Class 5 lasted from February 3, 2016 through February 5, 2016 at 4:00 p.m. (prevailing New York time) (the "**Voting Period**"), is adequate under the particular facts and circumstances of these Chapter 11 Cases and was not "unreasonably short."

33.    The three (3) Business Day voting period for holders of claims in Class 3 and Class 5 was justified and is consistent with other prepackaged cases in this district.[22]  Indeed,

---

[21] Bankruptcy Rule 3018(b) also requires that the solicitation comply with section 1126(b) of the Bankruptcy Code, in that it must comply with applicable nonbankruptcy law or contain "adequate information."  As discussed in further detail herein, the Debtors' solicitation complies with section 1126(b) of the Bankruptcy Code in all respects.

[22] *See, e.g.*, *In re Sbarro LLC*, No. 14-10557 (MG) (Bankr. S.D.N.Y. Mar. 13, 2014) (approving solicitation of prepetition secured lender claims in connection with a prepackaged plan with a voting period of three (3) days); *In re DJK Residential LLC*, No. 08-10375 (JMP) (Bankr. S.D.N.Y. May 2, 2008) (approving solicitation of prepetition

the holders of Claims in Classes 3 and 5 were clearly able to provide such votes within that time period, as evidenced by the fact that 100% of the holders of the Claims in Classes 3 and 5 submitted Ballots, and each voted to accept the Prepack Plan during the Voting Period. Accordingly, the Voting Classes had adequate and reasonable voting periods.

### 4.      The Voting Tabulation Procedures Are Appropriate

34.      The voting tabulation procedures used in the Chapter 11 Cases are appropriate, and the Court should approve the voting tabulation methodology used by the Debtors and the Voting Agent.  The Voting Agent did not count or consider, for any purpose in determining whether the Prepack Plan was accepted or rejected, the following Ballots, as applicable:

a)   any Ballot received after the applicable Voting Deadline[23];

b)   any Ballot that was illegible, contained insufficient information to identify the holder, lacked necessary information, or was damaged;

c)   any Ballot cast by a person or entity that does not hold a Claim or Equity Interest in the Voting Classes;

d)   any unsigned Ballot;

e)   any Ballot not marked to accept or reject the Prepack Plan, or marked both to accept and reject the Prepack Plan; and

f)   any Ballot submitted by a party not entitled to cast a vote with respect to the Prepack Plan.

35.      Furthermore, the Debtors required that each voting creditor vote the full amount of each Claim to either accept or reject the Prepack Plan; and that each voting creditor who holds multiple Claims within a particular class vote all such Claims to either accept or reject

---

facility claims in connection with an amended prepackaged plan, with a voting period of two (2) days, following the prepackaged solicitation of the original prepackaged plan, with a voting period of five (5) days).

[23] The Debtors did receive and count two ballots received after the Voting Deadline in the exercise of their business judgment.

the Prepack Plan.  Additionally, if two or more Ballots were submitted by or on behalf of the

same creditor, and were inconsistent in whole or in part, the last valid Ballot received prior to the

applicable Voting Deadline, to the extent of such inconsistency, superseded and revoked any

prior Ballot.

### C.      No Solicitation is Required of Classes Presumed to Accept the Prepack Plan

36.      The holders of Claims in each of the Unimpaired Classes are conclusively

presumed to have accepted the Prepack Plan and are not entitled to vote to accept or reject the

Prepack Plan.  The Bankruptcy Code does not require the solicitation of votes from such holders.

Specifically, section 1126(f) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class that is
> not impaired under a plan, and each holder of a claim or interest of
> such class, are conclusively presumed to have accepted the plan,
> and solicitation of acceptances with respect to such class from the
> holders of claims or interests of such class is not required.[24]

37.      Accordingly, pursuant to section 1126(f) of the Bankruptcy Code, the

holders of Claims in each of the Unimpaired Classes are conclusively presumed to accept the

Prepack Plan and have not been solicited.

### D.      No Solicitation is Required of Classes Deemed to Reject the Prepack Plan

38.      Under the Prepack Plan, holders of (a) Class 4 General Unsecured Claims

against Parent, (b) Class 6 Intercompany Claims, (c) Class 7 Equity Interests in Parent, and (d)

Class 8 Equity Interests in Holdings are deemed to reject the Prepack Plan and their votes were

not solicited.[25]  As set forth in further detail below, the Debtors do not intend to confirm the

---

[24]  11 U.S.C. § 1126(f).

[25] Section 1126(g) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan
> if such plan provides that the claims or interests of such class do not entitle the holders of such
> claims or interests to receive or retain any property under the plan on account of such claims or
> interests.

Prepack Plan with respect to Classes 4, 6, 7 and 8 under section 1129(a) of the Bankruptcy Code;

rather, the Debtors are seeking to confirm the Prepack Plan with respect to Classes 4, 6, 7 and 8

under the "cram down" provisions of section 1129(b).  In a "cram down" context, the results

from any solicitation of votes from the holders of Classes 4, 6, 7 and 8 would be irrelevant.

Thus, consistent with the language in Section 1126(g) of the Bankruptcy Code, the Debtors

deemed Classes 4, 6, 7 and 8 to reject the Prepack Plan and the Debtors need not solicit votes

from holders of Claims and Equity Interests in those Classes.[26]

39.    Moreover, holders of claims and interests in Classes 4, 6, 7 and 8 were

provided with the Combined Notice at the outset of these Chapter 11 Cases.   Thus, holders of

Claims and Equity Interests in Classes 4, 6, 7 and 8 had sufficient time and notice to object to

and be heard with respect to the Prepack Plan and the Debtors' determination to "cram down"

Classes 4, 6, 7, and 8 under section 1129(b) of the Bankruptcy Code[27].  As such, their votes with

respect to the Prepack Plan need not be solicited.

## III.    THE PREPACK PLAN SATISFIES EACH REQUIREMENT FOR CONFIRMATION

40.    To confirm the Prepack Plan, the Debtors must demonstrate by a

preponderance of the evidence that they have satisfied the provisions of section 1129 of the

Bankruptcy Code.[28]   The Prepack Plan complies with all relevant sections of the Bankruptcy

---

11 U.S.C. § 1126(g) (emphasis added).

[26] In the present case, because certain holders of both secured and unsecured claims are not being paid in full, the holders of General Unsecured Claims against Parent, Intercompany Claims, Equity Interests in Parent and Equity Interests in Holdings are not "entitled" under the Bankruptcy Code's absolute priority rule to any distribution on account of their respective Claims and Equity Interests.

[27] No such objections were filed by any member of Classes 4, 6, 7 and 8 (or any other party).

[28] *See In re Bally Total Fitness*, 2007 WL 2779438, at *3 ("The Debtors, as proponents of the Plan, have the burden of proving the satisfaction of the elements of Sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence."); *see also Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters., Ltd. II* (*In re Briscoe Enters., Ltd. II*), 994 F.2d 1160, 1165 (5th Cir. 1993) ("The combination of legislative silence, Supreme Court holdings, and the

Code (including sections 1122, 1123, 1125, 1126, 1127, and 1129) as well as the Bankruptcy

Rules and applicable nonbankruptcy law.    This memorandum addresses each requirement

individually, as well as the permissive elements of the Prepack Plan.

41.    In further support of entry of the Confirmation Order, the Debtors will file

contemporaneously herewith (a) the Declaration of John James O'Connell III in Support of

Confirmation of the Debtors' First Amended Joint Prepackaged Plan of Liquidation Pursuant to

Chapter 11 of the Bankruptcy Code (the "O'Connell Declaration") [Docket No. 45] and (b) the

Declaration of Christopher Layden in Support of Confirmation of the Debtors' First Amended

Joint Prepackaged Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code (the

"Layden Declaration") [Docket No. 46].

## A.    The Prepack Plan Complies with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))

42.    Section 1129(a)(1) of the Bankruptcy Code requires that a chapter 11 plan

"compl[y] with the applicable provisions of [the Bankruptcy Code]."[29]  The legislative history of

section 1129(a)(1) of the Bankruptcy Code explains that this provision encompasses the

requirements of sections 1122 and 1123 of the Bankruptcy Code including, principally, rules

governing classification of claims and interests and the contents of a plan of reorganization.[30]  As

---

structure of the [Bankruptcy] Code leads this Court to conclude that preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cramdown."); *In re El Charro, Inc.*, No. 05-60294, 2007 WL 2174911, at *4 n.4 (Bankr. D. Kan. July 26, 2007) (preponderance of evidence standard applies to valuation and every element governing confirmation); *In re Sylvan I-30 Enters.*, No. 05-86708, 2006 WL 2539718, at *6 (Bankr. N.D. Tex. Sept. 1, 2006) (applying preponderance of evidence standard to confirmation in context of feasibility).

[29]  11 U.S.C. § 1129(a)(1).

[30]  S. Rep. No. 95-989, at 126 (1978); H.R. Rep. No. 95-595, at 412 (1977); *see also Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 648-49 (2d Cir. 1988) (suggesting Congress intended the phrase "'applicable provisions' in [section 1129(a)(1)] to mean provisions of Chapter 11 . . . such as section 1122"); *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. 723, 757 (Bankr. S.D.N.Y. 1992) (noting that "[t]he legislative history of § 1129(a)(1) explains that this provision embodies the requirements of §§ 1122 and 1123, respectively, governing classification of claims and the contents of the Plan"); *see also In re Mirant Corp.*, No. 03-46590, 2007 WL 1258932, at *7 (Bankr. N.D. Tex. Apr. 27, 2007) (noting that objective of 1129(a)(1) is to assure compliance with sections of Bankruptcy Code governing classification and contents of a plan of reorganization).

explained below, the Prepack Plan complies with sections 1122 and 1123 of the Bankruptcy Code in all respects.

### 1.  The Prepack Plan Satisfies the Classification Requirements of Section 1122 of the Bankruptcy Code

43.    The classification requirements of section 1122 provide:

(a)    Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b)    A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

44.    The Second Circuit has recognized that, under section 1122 of the Bankruptcy Code, plan proponents have significant flexibility to place similar claims into different classes, provided there is a rational basis for doing so.[31]  For example, courts have

---

[31] *See Windels Marx Lane & Mittendorf, LLP v. Source Enters., Inc. (In re Source Enters., Inc.)*, 392 B.R. 541, 556 (S.D.N.Y. 2008) ("[A] plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is a reasonable basis for the classification scheme and if all claims within a particular class are substantially similar.") (internal quotation marks omitted); *Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship)*, 21 F.3d 477, 483 (2d Cir. 1994) (holding that similar claims may be separately classified unless sole purpose is to engineer an assenting impaired class); *Frito-Lay, Inc. v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 10 F.3d 944, 956-57 (2d Cir. 1993) (finding separate classification appropriate because classification scheme had a rational basis; separate classification based on bankruptcy court approval of Debtors' reimbursement of guarantors for payment of certain claimants' indemnity claims); *In re 500 Fifth Ave. Assocs.*, 148 B.R. 1010, 1018 (Bankr. S.D.N.Y. 1993) (although discretion is not unlimited, "the proponent of a plan of reorganization has considerable discretion to classify claims and interests according to the facts and circumstances of the case") (internal quotation marks omitted); *Drexel*, 138 B.R. at 757 ("Courts have found that the Bankruptcy Code only prohibits the identical classification of dissimilar claims.  It does not require that similar classes be grouped together . . . ."); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177-78 (Bankr. S.D.N.Y. 1989) ("[A] debtor may place claimants of the same rank in different classes and thereby provide different treatment for each respective class."); *see also In re Jersey City Med. Ctr.*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) (recognizing that a plan proponent may group similar claims in different classes if separate classes of claims are reasonable); *In re Heritage Org., L.L.C.*, 375 B.R. 230, 303 (Bankr. N.D. Tex. 2007) ("[T]he only express prohibition on separate classification is that it may not be done to gerrymander an affirmative vote on a reorganization plan.").

allowed separate classification: (a) where members of a class possess different legal rights;[32] and (b) where there are good business reasons for separate classification.[33]

45.     The Prepack Plan provides for the separate classification of Claims and Equity Interests into eight (8) different Classes based upon differences in the legal or factual nature of those Claims and Equity Interests or other relevant and objective criteria. Additionally, each of the Claims or Equity Interests in a particular Class under the Prepack Plan is substantially similar to the other Claims or Equity Interests in such Class, and the classification structure is necessary to implement certain aspects of the Prepack Plan. Administrative Claims, Fee Claims, Priority Tax Claims and U.S. Trustee Fees (the "**Unclassified Claims**") are not classified and are separately treated.

46.     The Prepack Plan's classification scheme follows the Debtors' capital structure. More specifically:

- Class 1 provides for the separate classification of all Other Priority Claims;

- Class 2 provides for the separate classification of all Other Secured Claims;

- Class 3 provides for the separate classification of all Prepetition $20 Million Facility Claims;

- Class 4 provides for the separate classification of all General Unsecured Claims against Parent;

- Class 5 provides for the separate classification of all General Unsecured Claims against Holdings;

---

[32] *See Drexel*, 138 B.R. at 715; *see also Heritage*, 375 B.R. at 299 n.86 (finding that if creditors had different legal rights under equitable subordination, then separate classification would be appropriate); *Mirant Corp.*, 2007 WL 1258932, at *7 (permitting separate classification because holders of claims had different legal interests in debtor's estate); *In re Kaiser Aluminum Corp.*, No. 02-10429, 2006 WL 616243, at *5 (Bankr. D. Del. Feb. 6, 2006) (permitting classification scheme after consideration of creditors' legal rights).

[33] *See Aetna Cas. & Sur. Co. v. Clerk U.S. Bankr. Ct., New York, N.Y. (In re Chateaugay Corp.)*, 89 F.3d 942, 949 (2d Cir. 1996) (finding that debtor must have a legitimate business reason supported by credible proof to justify separate classification of unsecured claims).

- Class 6 provides for the separate classification of all Intercompany Claims;

- Class 7 provides for the separate classification of all Equity Interests in Holdings; and

- Class 8 provides for the separate classification of all Equity Interests in Parent.

47.     Class 1 Other Priority Claims are claims entitled to priority under the Bankruptcy Code, other than Priority Tax Claims, which are not classified. Although the Debtors believe that there are no Class 1 Other Priority Claims, any such claims are different than claims in all other classes and accordingly, are classified separately from other Claims and Equity Interests.

48.     Class 2 Other Secured Claims are claims secured by a "lien" as defined by section 101(37) of the Bankruptcy Code. Although the Debtors believe that there are no Class 2 Other Secured Claims, any such claims are different than claims in all other classes and accordingly, are classified separately from other Claims and Equity Interests.

49.     Class 3 Prepetition $20 Million Facility Claims are Claims evidenced by, derived from, based upon, relating to, or arising from the Prepetition $20 Million Facility.  In exchange for each Prepetition $20 Million Facility Claim, each holder of an Allowed Prepetition $20 Million Facility Claim will, on the Effective Date, allocate its right to receive a distribution of the Transaction Consideration and any Distributable Holdings Assets to the holders of Allowed Class 7 Unsecured Claims against Holdings, provided, however, that for the avoidance of doubt the treatment of the Prepetition $20 Million Facility Claims pursuant to the Plan will not constitute a release of any Prepetition $20 Million Facility Claims held by holders of Allowed Prepetition $20 Million Claims against any entity other than the Debtors. Class 3 $20 Million

Facility Claims are impaired under the Prepack Plan, were entitled to vote on the Prepack Plan, and voted unanimously to accept the Prepack Plan.

50.     Class 4 General Unsecured Claims against Parent are Claims against Parent that are not Secured or entitled to priority under the Bankruptcy Code or an order of the Court.  In full and final satisfaction, settlement and release of and in exchange for each Allowed General Unsecured Claim against Parent, each holder of an Allowed General Unsecured Claim against Parent will receive its pro rata share of any Distributable Parent Assets. Class 4 General Unsecured Claims against Parent are Impaired.  Because the Debtors believe there will be no Distributable Parent Assets to be distributed to holders of Class 4 General Unsecured Claims against Parent, holders of Claims in Class 4 are deemed to reject the Plan, and are not entitled to vote to accept or reject the Plan.

51.     Class 5 General Unsecured Claims against Holdings are Claims against Holdings that are not Secured or entitled to priority under the Bankruptcy Code or an order of the Court.  In full and final satisfaction, settlement and release of and in exchange for each Allowed General Unsecured Claim against Holdings, on or as soon as practicable after the Effective Date, (i) each holder of an Allowed Class 5 Claim that votes to accept the Plan by the Voting Deadline shall receive its pro rata share of: (x) the Fixed Transaction Consideration Payment, (y) any Distributable Holdings Assets, and (z) the Residual Funded Amount; or (ii) alternatively, each holder of an Allowed Class 5 Claim that either votes to reject the Plan or does not vote on the Plan by the Voting Deadline shall receive its pro rata share of (a) the Fixed Transaction Consideration Payment, and (b) any Distributable Holdings Assets. Class 5 General Unsecured Claims against Holdings are impaired under the Prepack Plan, were entitled to vote on the Prepack Plan, and voted unanimously to accept the Prepack Plan.

52.     Intercompany Claims are unique in their relationship to the Debtors' capital structure and are thus separately classified in Class 6.  As disclosed in the Prepack Plan, Intercompany Claims are being cancelled and are therefore deemed to reject the Prepack Plan.

53.     Equity Interests are classified separately from Claims and are divided into two separate Classes: Equity Interests in Holdings (Class 7) and Equity Interests in Parent (Class 8).  Both Class 7 and Class 8 holders of Equity Interests are not receiving or retaining any property under the Plan, and consequentially are deemed to reject the Plan.

54.     Finally, the classification structure was not designed to gerrymander the Classes to create an Impaired consenting Class.  Accordingly, the Prepack Plan fully complies with and satisfies the requirements of section 1122 of the Bankruptcy Code.

## 2.     The Prepack Plan Satisfies the Seven Mandatory Plan Requirements of 11 U.S.C. §§ 1123(a)(1)-(a)(7)

55.     Section 1123(a) of the Bankruptcy Code requires that the contents of a chapter 11 plan: (i) designate classes of claims and interests; (ii) specify unimpaired classes of claims and interests; (iii) specify treatment of impaired classes of claims and interests; (iv) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest; (v) provide adequate means for the plan's implementation; (vi) provide for the prohibition of nonvoting equity securities and provide an appropriate distribution of voting power among the classes of securities; and (vii) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors.[34]

---

[34]  *See* 11 U.S.C. §§ 1123(a)(1)-(a)(7).

56.    The Prepack Plan satisfies the mandatory plan requirements set forth in section 1123(a) of the Bankruptcy Code.  Article III of the Prepack Plan satisfies the first three requirements of section 1123(a) of the Bankruptcy Code by designating Classes of Claims and Equity Interests, as required by section 1123(a)(1) of the Bankruptcy Code; specifying the Classes of Claims and Equity Interests that are Unimpaired under the Prepack Plan, as required by section 1123(a)(2) of the Bankruptcy Code; and specifying the treatment of each Class of Claims and Equity Interests that is Impaired, as required by section 1123(a)(3) of the Bankruptcy Code.[35]

57.    The Prepack Plan also satisfies section 1123(a)(4) of the Bankruptcy Code – the fourth mandatory requirement – because the treatment of each Allowed Claim or Equity Interest within a Class is the same as the treatment of each other Allowed Claim or Interest in that Class, unless the Holder of a Claim or Equity Interest consents to less favorable treatment on account of its Claim or Interest. Moreover there is nothing in the Prepack Plan to the contrary.

58.    The provisions of the Prepack Plan provide adequate means for the Prepack Plan's implementation, thus satisfying the fifth requirement of section 1123(a) of the Bankruptcy Code.[36]  The provisions of Article IV of the Prepack Plan include, among other things:

- The assumption of and effectuation of the Transaction Support Agreement;

- Use of the Funded Amount  and Wind-Down Reserve for the purposes specified in the Plan;

---

[35]  Prepack Plan, Art. III.

[36]  Section 1123(a)(5) of the Bankruptcy Code specifies that adequate means for implementation of a plan may include: retention by the debtor of all or part of its property; the transfer of property of the estate to one or more entities; cancellation or modification of any indenture; curing or waiving of any default; amendment of the debtor's charter; or issuance of securities for cash, for property, for existing securities, in exchange for claims or interests or for any other appropriate purpose.  11 U.S.C. § 1123(a)(5).

- The deemed dissolution of the Debtors on the Effective Date; and

- The indemnification of Directors, Officers and Employees.

The foregoing provisions, among others, will effectively and efficiently distribute the assets of the Debtors' estates and wind-down the Debtors businesses consistent with the intent of the Transaction Support Agreement.

59.    The sixth requirement of section 1123(a) – *i.e.*, that a plan prohibit the issuance of nonvoting equity securities – is also satisfied.  The Plan does not contemplate the issuance of any equity securities, voting or nonvoting. Accordingly, section 1123(a)(6) is not applicable.

60.    Finally, the Prepack Plan fulfills the seventh requirement in section 1123(a), which requires that the Prepack Plan "contain only provisions that are consistent with the interests of creditors and equity security holders and with public policy" with respect to the manner of selection of any officer, director, or trustee.[37]

61.    Because the Prepack Plan is a plan of liquidation that contemplates the dissolution of the Debtors upon the Effective Date, the Plan does not provide for the selection of any officers, directors or trustees.  Rather, the Debtors' Board of Directors and the Debtors sole officer, Christopher Layden, who holds the office of President, Secretary and Treasurer, shall remain in their respective roles until dissolution of the Debtors.  It is in the best interests of the estates and their stakeholders to provide for this continuity to efficiently wind down the Debtors. Thus, the manner of selection of officers and directors is consistent with public policy and the interests of creditors.

---

[37] 11 U.S.C. § 1123(a)(7).

62.     Accordingly, the Prepack Plan satisfies the mandatory plan requirements set forth in section 1123(a) of the Bankruptcy Code.

**B.    The Debtors, as Plan Proponents, Have Complied with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(2))**

63.     Section 1129(a)(2) of the Bankruptcy Code requires that the proponent of a chapter 11 plan comply with the applicable provisions of the Bankruptcy Code.  The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements set forth in section 1125 of the Bankruptcy Code and the plan acceptance requirements set forth in section 1126 of the Bankruptcy Code.[38]  As described above, the Debtors have complied with these provisions, including sections 1125 and 1126 of the Bankruptcy Code, as well as Bankruptcy Rules 3017 and 3018, and accordingly, the Debtors have satisfied the requirement of section 1129(a)(2) of the Bankruptcy Code.

**C.    The Prepack Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3))**

64.     Section 1129(a)(3) of the Bankruptcy Code requires a bankruptcy court to deny confirmation of a plan if it is not proposed in "good faith" or is "forbidden by law."[39]  The Second Circuit has construed the good faith standard as requiring a showing that "the plan was proposed with honesty and good intentions and with a basis for expecting that reorganization can

---

[38] *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd*, *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636 (2d Cir. 1988) ("Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the [Bankruptcy] Code."); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984) (stating that to comply with section 1129(a)(2), "the proponent must comply with the ban on post-petition solicitation of the plan unaccompanied by a written disclosure statement approved by the court in accordance with [Bankruptcy] Code §§ 1125 and 1126."); *see also* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of section 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

[39] 11 U.S.C. § 1129(a)(3).

be effected."[40]   Additionally, courts generally hold that "good faith" should be evaluated in light

of the totality of the circumstances surrounding confirmation.[41]

65.    Courts in this district have described the goals and policies associated with

the "good faith" requirement of section 1129(a)(3) of the Bankruptcy Code as follows:

> The primary goal of chapter 11 is to promote the rehabilitation of
> the debtor.  Congress has recognized that the continuation of the
> operation of a debtor's business as a viable entity benefits the
> national economy through the preservation of jobs and continued
> production of goods and services.  The Supreme Court similarly
> has recognized that "the fundamental purpose of reorganization is
> to prevent a debtor from going into liquidation, with an attendant
> loss of jobs and possible misuse of economic resources."[42]

66.    The Debtors proposed the Prepack Plan in good faith and with a desire to

effectuate the Transaction Support Agreement, efficiently wind down and dissolve the Debtors

and to provide for distributions to holders of administrative and priority claims of both Debtors

and any remaining amounts to be distributed to holders of Class 5 General Unsecured Claims.

More specifically, the Prepack Plan is the result of significant arm's-length negotiations

culminating in the Transaction Support Agreement among the Debtors, the Prepetition $20

Million Facility Lenders, the Supporting PIK Noteholders, and others.  The resulting Prepack

Plan contains a series of compromises that represent a good faith effort to provide the highest

available recoveries in the totality of the circumstances.  As a result of these compromises, the

Prepack Plan received 100% voting participation and acceptance of the Prepack Plan by the

---

[40] *Johns-Manville*, 843 F.2d at 649 (internal quotation marks omitted); *see also In re Texaco, Inc.*, 84 B.R. 893, 907 (Bankr. S.D.N.Y. 1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1998) ("[I]n the context of a [Chapter 11] reorganization . . . a plan is considered proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code.") (internal quotation marks omitted).

[41] *In re Cellular Info. Sys., Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) (citing cases).

[42]  *In re WorldCom, Inc.*, No. 02-13533, 2003 Bankr. LEXIS 1401, at *152 (Bankr. S.D.N.Y. Oct. 31, 2003) (citations omitted).

Prepetition $20 Million Facility Lenders and the holders of General Unsecured Claims against Holdings.[43]  Thus, the Prepack Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

### D.    The Prepack Plan Provides for Bankruptcy Court Approval of Certain Administrative Payments (11 U.S.C. § 1129(a)(4))

#### 1.    All Payments to be made by the Debtors are Subject to Court Approval as Reasonable

67.    Section 1129(a)(4) of the Bankruptcy Code requires that certain professional fees and expenses paid by the plan proponent, by the debtor, or by a person issuing securities or acquiring property under a plan, be subject to approval of the Court as reasonable.[44] Here, the Prepack Plan mandates that all payments made by the Debtors for services, costs, or expenses in connection with these Chapter 11 Cases before the Effective Date, including all Fee Claims are subject to the approval of the Bankruptcy Court.[45]  Pursuant to the Prepack Plan, Professionals asserting Fee Claims for services rendered before the Effective Date must file a request for final allowance of such Fee Claims with the Bankruptcy Court no later than thirty (30) days after the Effective Date.[46]

### E.    Post-Effective Date Directors and Officers Have Been Disclosed and Their Appointment is Consistent with Public Policy (11 U.S.C. § 1129(a)(5))

68.    Section 1129(a)(5)(A) of the Bankruptcy Code requires that, before confirmation, the proponent of a plan must disclose the identities and affiliations of the proposed officers and directors of the reorganized debtors and that the appointment or continuance of such

---

[43]   *See In re Eagle-Picher Indus., Inc.*, 203 B.R. 256, 274 (Bankr. S.D. Ohio 1996) (finding that plan of reorganization was proposed in good faith when, among other things, it was based on extensive arm's-length negotiations among plan proponents and other parties-in-interest).

[44]   *See, e.g.*, *WorldCom*, 2003 Bankr. LEXIS 1401, at *160; *Drexel*, 138 B.R. at 760; *In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (holding that requirements of section 1129(a)(4) were satisfied where plan provided for payment of only "allowed" administrative expenses).

[45] Prepack Plan, Art. II.B.1.

[46] *Id.*

officers and directors must be consistent with the interests of creditors and equity security holders and with public policy.[47]  In addition, section 1129(a)(5)(B) requires a plan proponent to disclose the identity of any "insider" (as defined by 11 U.S.C. § 101(31)) to be employed or retained by the reorganized debtor and the "nature of any compensation for such insider."[48]  A plan may also contemplate the retention of the debtor's existing officers and directors to serve post-effective date.[49]

69.     The Debtors' pre-Petition Date Board of Directors and sole officer, Christopher Layden, will retain their respective positions following confirmation of the Prepack Plan. The Debtors will be dissolved on the Effective Date of the Plan and the directors and officers will be discharged of their duties upon the dissolution.  Accordingly, the requirements of section 1129(a)(5) are satisfied.

**F.     The Prepack Plan Does Not Require Governmental Regulatory Approval of Rate Changes (11 U.S.C. § 1129(a)(6))**

70.     Section 1129(a)(6) of the Bankruptcy Code permits confirmation of a chapter 11 plan only if any regulatory commission that will have jurisdiction over the debtor after confirmation has approved any rate change provided for in the plan.[50]  Section 1129(a)(6) of the Bankruptcy Code is inapplicable here because the Prepack Plan does not provide for any rate changes.

---

[47] 11 U.S.C. § 1129(a)(5)(A).

[48] *Id.* § 1129(a)(5)(B).

[49] *See, e.g.*, *Texaco*, 84 B.R. at 908 (determining that a plan satisfied 1129(a)(5) by disclosing directors and officers who would serve post-confirmation).

[50] 11 U.S.C. § 1129(a)(6).

**G.**     **The Prepack Plan Is in the Best Interests of Creditors and
Equity Interest Holders (11 U.S.C. § 1129(a)(7))**

71.     Section 1129(a)(7) of the Bankruptcy Code is often referred to as the "best
interests test" or the "liquidation test," and provides, in relevant part:  With respect to each
impaired class of claims or interests –

(A)     Each holder of a claim or interest of such class –

(i)     has accepted the plan; or

(ii)     will receive or retain under the plan on account of such
claim or interest property of a value, as of the effective date of the
plan, that is not less than the amount that such holder would so
receive or retain if the debtor were liquidated under chapter 7 of
this title on such date. . .[51]

72.     The best interests test focuses on individual creditors who voted against a
plan rather than classes of claims.[52]  Under the best interests test, the court must find that each
non-accepting creditor will receive or retain value in an amount equal to at least as much as it
would receive if the debtor were liquidated under chapter 7 of the Bankruptcy Code.[53]

73.     The best interests test is satisfied because, as discussed below, *all* Classes,
Impaired or Unimpaired, accepting or rejecting – will receive at least as much under the Prepack
Plan as they would in a chapter 7 liquidation.

74.     To determine the value that holders of Claims and Equity Interests would
receive in a hypothetical liquidation, the Debtors and their advisors analyzed the estimated dollar

---

[51] *Id.* § 1129(a)(7).

[52] *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N LaSalle St. P'ship*, 526 U.S. 434, 441 (1999).

[53] *Id.* at 441; *United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 228 (1996); *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 252 (Bankr. S.D.N.Y. 2007), *appeal dismissed*, 371 B.R. 660 (S.D.N.Y. 2007), *aff'd*, 544 F.3d 420 (2d Cir. 2008) (the "**Adelphia Confirmation Decision**") ("In determining whether the best interests standard is met, the court must measure what is to be received by rejecting creditors in the impaired classes under the plan against what would be received by them in the event of liquidation under chapter 7.").

amount that each of the Debtors' estates would have available from a liquidation of its assets under chapter 7 of the Bankruptcy Code.

75.    As described above, during the Forbearance and Marketing Period, the Formerly Owned Operating Companies were subjected to a thorough marketing process. That process demonstrated that the value of the Formerly Owned Operating Companies was insufficient to satisfy their debts, and as a result, no value was available for the satisfaction of claims at Holdings or at Parent. Thus, without the agreements in the Transaction Support Agreement, stakeholders in Holdings and Parent would not have received any value. Pursuant to the Transaction Support Agreement, however, some value, in the form of the Fixed Transaction Consideration Payment, was made available to creditors at Holdings, including an allocation by the Prepetition $20 Million Lenders to the holders of Class 5 General Unsecured Claims.  In addition, the Transaction Support Agreement made the Funded Amount available to pay the costs of administration of the Chapter 11 Cases and the payment of priority claims at Holdings and Parent.  In the absence of the Transaction Support Agreement and confirmation of the Prepack Plan, the payment of the administrative and priority claims of both Parent and Holdings and the Fixed Transaction Consideration Payment allocated to holders of Class 5 General Unsecured Claims against Holdings in accordance with their structural seniority would be eliminated, and there is a substantial likelihood that the Debtors' Chapter 11 Cases would be converted to cases under Chapter 7 of the Bankruptcy Code.

76.    Moreover, Holdings' only asset in the Chapter 11 Cases is the right to the Transaction Consideration and Parent's only asset is the equity of Holdings. Pursuant to section 5(h) of the Transaction Support Agreement, no Transaction Consideration is earned by or payable to Holdings in the event of a non-consensual bankruptcy or other insolvency proceeding

other than if the prepackaged Chapter 11 Case of Holdings is commenced. A chapter 7 liquidation of Holdings would constitute such a nonconsensual bankruptcy or insolvency proceeding. Under such circumstances, the Transaction Consideration—as Holdings' sole asset— would not be available for distribution to any holders of claims against Holdings. As a result, Holdings would have no assets to liquidate in a chapter 7 case and there would be no value in Holdings' equity, Parent's only asset. Thus, all holders of Claims against Holdings are either in the same (in the case of the secured lenders) or better (in the case of unsecured creditors) position in the Chapter 11 Cases than in a chapter 7 liquidation.

77.    Accordingly, the Prepack Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

### H.    Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(8)).

78.    Section 1129(a)(8) of the Bankruptcy Code requires that each class of claims or interests must either accept the plan or be unimpaired.[54]  Pursuant to section 1126(c) of the Bankruptcy Code, a class of *claims* accepts a plan if holders of at least two-thirds in amount and more than one-half in number of the allowed claims in that class vote to accept the plan.[55] Pursuant to section 1126(d) of the Bankruptcy Code, a class of *interests* accepts a plan if holders of at least two-thirds in amount of the allowed interests in that class vote to accept the plan.[56]  A class that is not impaired under a plan is conclusively presumed to have accepted the plan.[57]  On the other hand, a class is deemed to reject a plan if the plan provides that the claims or interests

---

[54]  11 U.S.C. § 1129(a)(8).

[55]  *Id.* § 1126(c).

[56]  *Id.* § 1126(d).

[57]  *Id.* § 1126(f); *see also SEC v. Drexel Burnham Lambert Grp., Inc.* (*In re Drexel Burnham Lambert Grp., Inc.*), 960 F.2d 285, 290 (2d Cir. 1992) (noting that an unimpaired class is presumed to have accepted plan); *see also* S. Rep. 95-989, at 123 (1978) (section 1126(f) of the Bankruptcy Code "provides that no acceptances are required from any class whose claims or interests are unimpaired under the Plan or in the order confirming the Plan.").

of that class do not receive or retain any property under the plan on account of such claims or interests.[58]

79.     Classes 1 and 2 are Unimpaired by the Prepack Plan and thus are conclusively presumed to accept the Prepack Plan. As a result, section 1129(a)(8) of the Bankruptcy Code is satisfied as to Classes 1 and 2.

80.     The Prepack Plan has been unanimously accepted by Classes 3 and 5 as evidenced by the Voting Declaration.  Accordingly, section 1129(a)(8) of the Bankruptcy Code is satisfied as to Classes 3 and 5.

81.     Classes 4, 6, 7 and 8 are deemed to reject the Prepack Plan, and therefore the requirements of section 1129(a)(8) of the Bankruptcy Code are not satisfied for Classes 4, 6, 7, and 8. However, the Prepack Plan may nevertheless be confirmed over such non-acceptance pursuant to the "cram down" provisions of section 1129(b)(1) of the Bankruptcy Code.[59]  As set forth in further detail below, the Prepack Plan satisfies the "cram down" requirements under section 1129(b), and therefore should be confirmed.

I.      **The Prepack Plan Complies with Statutorily Mandated Treatment of Administrative and Priority Tax Claims (11 U.S.C. § 1129(a)(9)).**

82.     Unless the holder of a claim entitled to priority under section 507(a) of the Bankruptcy Code – including administrative claims allowed under section 503(b) of the Bankruptcy Code pursuant to section 507(a)(2) – agrees to a different treatment with respect to such claim, section 1129(a)(9) of the Bankruptcy Code requires a plan to provide as follows:

(A)     with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the

---

[58]  11 U.S.C. § 1126(g).

[59]  The condition to confirmation contained in section 1129(a)(8) is the only condition of section 1129(a) that is not necessary for confirmation of a plan of reorganization.

plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(B)     with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) of [the Bankruptcy Code], each holder of a claim of such class will receive –

(i)     if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii)    if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;

(C)     with respect to a claim of a kind specified in section 507(a)(8) of this title, the holder of such claim will receive on account of such claim regular installment payments in cash –

(i)     of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;

(ii)    over a period ending not later than five years after the date of the order for relief under section 301, 302, or 303; and

(iii)   in a manner not less favorable than the most favored non-priority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b)).[60]

83.     The Prepack Plan provides for no less favorable treatment for Administrative Claims and Priority Tax Claims than that required by section 1129(a)(9). Specifically, the Prepack Plan provides that each holder of an Allowed Administrative Claim – except with respect to Administrative Claims that are Fee Claims and except to the extent that a holder of an Allowed Administrative Claim and the applicable Debtor agree to less favorable treatment to such holder – shall receive Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as practicable after the later of:  (a) the Effective Date; (b) thirty (30) days after the date the Administrative Claim is allowed if it is a disputed claim as of the

---

[60]  11 U.S.C. § 1129(a)(9).

Effective Date; and (c) the date the Administrative Claim becomes due and payable by its

terms.[61]

84.    In addition, the Prepack Plan provides that each holder of an Allowed

Priority Tax Claim due and payable on or before the Effective Date shall receive, on the

Effective Date, at the option of the Debtors, one of the following treatments:  (a) Cash in an

amount equal to the amount of such Allowed Priority Tax Claim plus statutory interest on any

outstanding balance from the Effective Date; (b) Cash in an aggregate amount of such Allowed

Priority Tax Claim payable in installment payments over a period of time not to exceed five

years after the Petition Date; or (c) such other treatment as may be agreed upon by such holder

and the Debtors or otherwise determined upon an order of the Bankruptcy Court.[62]

### J.    At Least One Impaired Class of Claims Has Accepted the Prepack Plan, Excluding the Acceptances of Insiders (11 U.S.C. § 1129(a)(10))

85.    Section 1129(a)(10) provides that, if a class of claims is impaired under a

plan, at least one impaired class of claims must accept the plan, excluding acceptance by any

insider.[63]  While the Prepack Plan provides that it is a joint, but not substantively consolidated,

plan for each Debtor, the Prepack Plan implements a single consensual transaction embodied in

the Transaction Support Agreement and contemplates that the sole source of funding for

Administrative Claims and Priority Claims of both Parent and Holdings would be the Funded

Amount.  Moreover, it also clearly states that "Section 1129(a)(10) of the Bankruptcy Code shall

be satisfied for the purposes of Confirmation by acceptance of the Plan by *an* Impaired Class of

---

[61] Prepack Plan, Art. II.A.1.

[62] *Id.* Art. II.C.

[63] 11 U.S.C. § 1129(a)(10).

Claims. . . ." (emphasis added).[64]  As set forth above, Class 3 and Class 5 have voted to accept

the Prepack Plan, and thus satisfy Section 1129(a)(10) because at least one impaired class has

voted to accept the Prepack Plan as contemplated under the terms of the Prepack Plan consistent

with applicable law that this is a per-plan requirement for jointly administered cases.[65]

Therefore, the Debtors have satisfied section 1129(a)(10) of the Bankruptcy Code.

**K.    The Prepack Plan is Feasible (11 U.S.C. § 1129(a)(11))**

86.    Section 1129(a)(11) of the Bankruptcy Code requires that a plan be

feasible to be confirmed.  Specifically, the Court must determine: "[c]onfirmation of the plan is

not likely to be followed by the liquidation, or the need for further financial reorganization, of

the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization

is proposed in the plan."[66]

87.    Substantially all of the Debtors' assets were liquidated to cash prior to

proposal of the Prepack Plan. As a result, the requirements of section 1129(a)(11) are not

applicable.    However, to the extent Bankruptcy Code section 1129(a)(11) applies to

implementation of the Prepack Plan, the Debtors submit that the feasibility requirement of

section 1129(a)(11) is satisfied, because the Debtors' estates have sufficient assets on hand to

implement the Prepack Plan as proposed.

---

[64] Prepack Plan, Art. III.C.

[65]  When there is a joint plan for multiple debtors (as is the case here), Courts in this District have recognized that section 1129(a)(10) is a per-plan requirement, not a per-debtor requirement. *See, e.g., JPMorgan Chase Bank, N.A. v Charter Commc'ns Operating, LLC (In re Charter Commc'ns, Inc.)*, 419 B.R. 221, 266 (Bankr. S.D.N.Y. 2009) ("[I]t is appropriate to test compliance with section 1129(a)(10) on a per-plan basis, not, as [objecting parties] argue, on a per-debtor basis."); *In re Dynegy Holdings, LLC*, No. 11-38111(CGM) (Bankr. S.D.N.Y. May 2, 2013); *In re Enron Corp.*, No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 15, 2004) (order confirming joint chapter 11 plan where each debtor did not have an impaired accepting class); *In re SGPA, Inc.*, No. 1-01-02609 (Bankr. M.D. Pa. Sept. 28, 2001) (joint chapter 11 plan complied with section 1129(a)(10) because at least one class of impaired creditors accepted plan, notwithstanding fact that each debtor entity did not have accepting impaired class).

[66]  11 U.S.C. § 1129(a)(11).

### L.      The Prepack Plan Provides for the Payment of All Fees under 28 U.S.C. § 1930 (11 U.S.C. § 1129(a)(12))

88.      Section 1129(a)(12) of the Bankruptcy Code requires that, as a condition precedent to the confirmation of a plan of reorganization, "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan."[67]   The Prepack Plan complies with section 1129(a)(12) by providing that the Debtors shall pay in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.[68]   The Prepack Plan further provides that, on and after the Effective Date, the Post-Effective Date Debtors shall pay the applicable U.S. Trustee fees for each of the Post-Effective Date Debtors when due in the ordinary course until such time as the Bankruptcy Court enters a final decree in such Post-Effective Date Debtors' Chapter 11 Case or until each Chapter 11 Case is converted or dismissed.[69]

### M.      The Prepack Plan Provides for the Payment of Retiree Benefits (11 U.S.C. § 1129(a)(13))

89.      Section 1129(a)(13) of the Bankruptcy Code requires that all retiree benefits continue to be paid post-confirmation at any levels established in accordance with section 1114 of the Bankruptcy Code.[70]   The Debtors do not have any retiree benefit obligations. As a result, the requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Prepack Plan.

---

[67]  11 U.S.C. § 1129(a)(12).

[68]  Prepack Plan, Art. II.D.

[69]  *Id.*

[70]  11 U.S.C. § 1129(a)(13).

### N. Sections 1129(a)(14) and 1129(a)(15) Do Not Apply to the Prepack Plan

90.     Section 1129(a)(14) of the Bankruptcy Code relates to the payment of domestic support obligations and section 1129(a)(15) of the Bankruptcy Code applies only in cases in which the debtor is an "individual" as defined in the Bankruptcy Code.[71]  Neither of these provisions applies to the Debtors.  The Debtors are not subject to any domestic support obligations, and therefore, the requirements of section 1129(a)(14) of the Bankruptcy Code do not apply.  Further, none of the Debtors are an "individual" and, therefore, the requirements of section 1129(a)(15) of the Bankruptcy Code do not apply.

### O. The Prepack Plan Does Not Provide for the Transfer of Property by Any Nonprofit Entities Not In Accordance with Applicable Nonbankruptcy Law (11 U.S.C. § 1129(a)(16))

91.     Section 1129(a)(16) of the Bankruptcy Code provides that applicable non-bankruptcy law will govern all transfers of property under a plan to be made by "a corporation or trust that is not a moneyed, business, or commercial corporation or trust."[72]  The legislative history of section 1129(a)(16) of the Bankruptcy Code demonstrates that this section was intended to "restrict the authority of a trustee to use, sell, or lease property by a nonprofit corporation or trust."[73]  Although the Debtors – none of which are nonprofit entities – do not believe that any transfers of property under the Prepack Plan will be made by a nonprofit corporation or trust, to the extent that any such transfers are contemplated by the Prepack Plan, such transfers will be made in accordance with applicable non-bankruptcy law.  Accordingly, the Prepack Plan satisfies the requirements of section 1129(a)(16) of the Bankruptcy Code.

---

[71]  11 U.S.C. §§ 1129(a)(14), (a)(15).

[72]  *Id.* § 1129(a)(16).

[73]  H.R. Rep. No. 109-31, at 145 (2005).

**P.    The Prepack Plan Satisfies the "Cram Down"
Requirements of 11 U.S.C. § 1129(b)**

92.    Section 1129(b) of the Bankruptcy Code provides a mechanism (referred to as "cram down") for confirmation of a plan of reorganization despite the rejection of the plan by a class or classes of claims or equity interests.[74]  Specifically, if a chapter 11 plan satisfies all applicable requirements of section 1129(a) other than section 1129(a)(8)'s requirement that all impaired classes accept the plan, the plan may be confirmed so long as it does not discriminate unfairly and is fair and equitable with respect to each class of claims and interests that is impaired and has not accepted the plan.[75]

93.    As discussed above, of the six (6) Classes that are Impaired under the Prepack Plan, two (2) have accepted the Prepack Plan, and four (4) (Class 4 General Unsecured Claims against Parent, Class 6 Intercompany Claims, Class 7 Equity Interests in Holdings, and Class 8 Equity Interests in Parent) are deemed to reject the Prepack Plan.  Thus, the requirements of section 1129(a)(8) are not met with respect to Classes 4, 6, 7 and 8.[76]  Nevertheless, the Prepack Plan is confirmable with respect to Classes 4, 6, 7 and 8 as it satisfies the requirements of section 1129(b).

**1.    The Prepack Plan Does Not Discriminate Unfairly**

94.    Section 1129(b)(1) of the Bankruptcy Code prohibits discrimination that is "unfair," based on the facts and circumstances of the case.[77]  At a minimum, the unfair discrimination standard prevents creditors and interest holders with *similar* legal rights from

---

[74]  11 U.S.C. § 1129(b)(1).

[75]  *Id.*

[76]  Prepack Plan, Art. III.D.

[77]  *See In re Freymiller Trucking, Inc.*, 190 B.R. 913, 916 (Bankr. W.D. Okla. 1996) (holding that determination of unfair discrimination requires court to "consider all aspects of the case and the totality of all the circumstances."); *In re Aztec Co.*, 107 B.R. 585, 589 (Bankr. M.D. Tenn. 1989) (noting that courts "have recognized the need to consider the facts and circumstances of each case to give meaning to the proscription against unfair discrimination").

receiving materially different treatment under a proposed plan without compelling justifications for doing so.[78]  Courts in the Second Circuit have ruled that "[u]nder section 1129(b) of the Bankruptcy Code, a plan unfairly discriminates where similarly situated classes are treated differently without a reasonable basis for the disparate treatment."[79] Here, each of the rejecting classes contains claims that are substantially different than all accepting and each of the other rejecting classes. There is therefore no discrimination between classes, much less unfair discrimination.

95.    As a result of the Debtors' capital structure, Class 4 General Unsecured Claims against Parent, Class 6 Intercompany Claims, Class 7 Equity Interests in Holdings and Class 8 Equity Interests in Parent are junior and subordinate to creditors holding claims in Class 3 and Class 6 that are receiving (or were entitled to receive) distributions under the Prepack Plan.

96.    Specifically, with respect to the Debtor Holdings, Class 6 Intercompany Claims and Class 7 Equity Interests in Holdings are structurally subordinate to the holders of Class 5 General Unsecured Claims against Holdings. Moreover, the legal rights of holders of Class 6 Intercompany Claims and Class 7 Equity Interests are significantly dissimilar than the legal rights of Class 5 General Unsecured Claims against Holdings as a result of the Debtor Holdings capital structure. Accordingly, the Plan does not discriminate against, much less unfairly discriminate against, holders of Class 6 Intercompany Claims or Class 7 Equity Interests in Holdings.

---

[78]  *See WorldCom*, 2003 Bankr. LEXIS 1401, at *174-75 (requiring a reasonable basis to justify disparate treatment).

[79]  *Id.*; *See also In re Buttonwood Partners, Ltd.*, 111 B.R. 57, 63 (Bankr. S.D.N.Y. 1990) (courts assess whether "(i) there is a reasonable basis for discriminating, (ii) the debtor cannot consummate the plan without discrimination, (iii) the discrimination is proposed in good faith, and (iv) the degree of discrimination is in direct proportion to its rationale," but also noting that second prong assessing whether the debtor cannot consummate plan without discrimination is not dispositive of question of unfair discrimination).

97.     With respect to Debtor Parent, which is the sole equity holder of Holdings, all claims and interests in Parent are structurally subordinate to Claims and Equity Interests in Holdings because of its status as the equity holder of Holdings.  As a result, the Prepack Plan, in compliance with the absolute priority rule, does not provide any distribution to holders of classified Claims against or Equity Interests in Parent. This result is solely a function of the capital structure of the Debtors.   However, unclassified Administrative Claims and Priority Claims of Parent will be satisfied through the Funded Amount per the contractual agreement set forth in the Transaction Support Agreement and the terms of Article IV.E of the Prepack Plan. Accordingly, the legal rights of holders of Claims against and Interests in the Debtor Parent are substantially different than the legal rights of holders of Claims against and Interests in the Debtor Holdings.

98.     Moreover, with respect to the holders of Claims against and Interests in the Debtor Parent, the legal rights of holders of Claims in Class 4 General Unsecured Claims against Parent, Class 6 Intercompany Claims and Class 8 Equity Interests in Parent are significantly dissimilar from one another because of the capital structure of Parent and the absolute priority rule. As a result, there is no unfair discrimination between the Classes of Claims against and Interests in Parent, nor is there unfair discrimination between classes of Claims against and Interests in Holdings and Classes of Claims against and Interests in Parent.

### 2.    The Prepack Plan Is Fair and Equitable

99.     Section 1129(b)(2)(B) of the Bankruptcy Code states that a plan is "fair and equitable" with respect to a class of unsecured claims if "the holder of any claim or interest

that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property." 11 U.S.C. § 1129(b)(2)(B)(ii).[80]

100.    For a plan to be "fair and equitable" with respect to a class of equity interests, the Debtors must satisfy the requirements of section 1129(b)(2)(C).   Section 1129(b)(2)(C)(ii) sets forth the "absolute priority rule" with respect to interests, which requires that if the holders of interests in a particular class receive less than full value for their interests, no holders of interests in a junior class may receive any property under the plan.[81]  This standard necessarily is satisfied with respect to any impaired dissenting class of interests to the extent that there is no class of claims or interest junior to such dissenting class[82].

101.    Here, with respect to the Debtor Holdings, the rejecting classes are Class 6 Intercompany Claims and Class 7 Equity Interests in Holdings. Pursuant to the Prepack Plan, no class of claims against or equity interests in Holdings that is junior to Class 6 Intercompany Claims are receiving or retaining any property. As a result, the Prepack Plan is fair and equitable as to Class 6 Intercompany Claims. In addition, there is no class of claims against or interests in Holdings that is junior to Class 7 Equity Interests in Holdings, and as a result the Prepack Plan is fair and equitable as to Class 7 Equity Interests in Holdings. Thus, the Prepack Plan is fair and equitable with respect to each rejecting class in the Debtor Holdings.

---

[80] See also JP Morgan Chase Bank, N.A. v. Charter Commc'ns (In re Charter Commc'ns, Inc.), 419 B.R. 221, 268-69 (Bankr. S.D.N.Y. 2009)(confirming plan as "fair and equitable" under section 1129(b)(2)(B)(ii) of the Bankruptcy Code where no holder of a junior claim or interest to the objecting noteholders received any recovery under the plan).

[81] 11 U.S.C. § 1129(b)(2)(C)(ii); see also Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle St. P'Ship, 526 U.S. 434, 441-42 (1999).

[82] See Westpointe, L.P. v. Franke (In re Westpointe, L.P.), 241 F.3d 1005, 1007 (8th Cir. 2001) ("[A] plan is fair and equitable as long as the holder of any interest junior to the dissenting impaired class does not receive any property under the reorganization plan, and because there are no interests junior to the [impaired class], the confirmed plan satisfies this requirement.")

102.    With respect to the Debtor Parent, the rejecting classes are Class 4 General

Unsecured Claims against Parent, Class 6 Intercompany Claims, and Class 8 Equity Interests in

Parent. Pursuant to the Prepack Plan, no class of claims against or equity interests in Parent that

is junior to Class 4 General Unsecured Claims against Parent are receiving or retaining any

property. As a result, the Prepack Plan is fair and equitable as to Class 4 General Unsecured

Claims against Parent and Class 6 Intercompany claims. In addition, there is no class of claims

against or interests in Parent that is junior to Class 8 Equity Interests in Parent, and as a result,

the Prepack Plan is fair and equitable as to Class 8 Equity Interests in Parent. Thus, the Prepack

Plan is fair and equitable with respect to each rejecting class in the Debtor Parent.

103.    Accordingly, the Prepack Plan satisfies the cramdown requirements of

section 1129(b) of the Bankruptcy Code as to all Rejecting Classes, and the Plan may be

confirmed notwithstanding non-compliance with section 1129(a)(8) of the Bankruptcy Code.

**Q.    The Principal Purpose of the Prepack Plan is
Not Avoidance of Taxes (11 U.S.C. § 1129(d))**

104.    Section 1129(d) of the Bankruptcy Code states "the court may not confirm

a plan if the principal purpose of the plan is the avoidance of taxes or the avoidance of the

application of section 5 of the Securities Act of 1933."[83]   The purpose of the Prepack Plan is not

to avoid taxes or the application of section 5 of the Securities Act of 1933.   Moreover, no

Governmental Unit, or any other entity, has raised issues with the Prepack Plan on these grounds,

and the Debtors do not anticipate any objections will be filed on these grounds, particularly as all

Administrative Claims and Priority Claims will be paid in full pursuant to the Prepack Plan.[84]

---

[83] 11 U.S.C. § 1129(d).

[84] The bar date for Governmental Units has been established for August 8, 2016 at 5:00 p.m. (prevailing New York time).

The Debtors therefore submit that the Prepack Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

## IV.    THE DISCRETIONARY CONTENTS OF
## THE PREPACK PLAN SHOULD BE APPROVED

105.    Section 1123(b) of the Bankruptcy Code identifies additional provisions that may be included in a chapter 11 plan.  For example, a plan may impair or leave unimpaired any classes of claims or interests and provide for the assumption or rejection of executory contracts and unexpired leases.  A plan may also provide for the (a) "settlement or adjustment of any claim or interest belonging to the debtor or to the estate" or (b) "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest."[85]  Lastly, a plan may "modify the rights of holders of secured claims…or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims" and may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[86]

106.    The Prepack Plan includes a number of provisions under section 1123(b) of the Bankruptcy Code.  For example, the Prepack Plan provides for a general settlement of claims and interests, as well as the assumption and rejection of certain executory contracts and unexpired leases.[87]  Furthermore, the Prepack Plan seeks to implement release, exculpation and injunction provisions.[88]  As discussed in further detail below, such provisions of the Prepack Plan are in the best interests of the Debtors and all parties in interest in these Chapter 11 Cases.

---

[85] *Id.* § 1123(b)(3)(A)-(B).

[86] *Id.* § 1123(b)(5)-(6).

[87] Prepack Plan, Art. VIII.

[88] *Id.*, Art. V.K.

A.    **The General Settlement of Claims and Interests
under the Prepack Plan is Fair and Reasonable**

107.    The Prepack Plan and the treatment of Claims and Equity Interests thereunder constitute a good faith compromise and settlement among the Debtors, the Prepetition $20 Million Facility Lenders, and the Supporting PIK Noteholders, among others, which is an essential foundation of the Prepack Plan and facilitates the payment of all Administrative Claims and Priority Claims, provides a distribution to Class 5 General Unsecured Creditors, and ensures the orderly wind down of both Debtors. The resolution of issues related to the Transaction Support Agreement (resulting in the amendment thereto), the cooperation services agreed to by the parties, and the fixing of the Transaction Consideration facilitated the formulation of the Prepack Plan which provides for the streamlined wind down of the Debtors.

108.    When evaluating plan settlements pursuant to section 1123(b) of the Bankruptcy Code, courts in the Second Circuit typically consider the standards used to evaluate settlements under Bankruptcy Rule 9019, i.e., the settlement must be "fair and equitable" and in the best interests of the estate.[89]   The benchmark is whether or not the terms of the proposed compromise "fall below the lowest point in the range of reasonableness."[90] A court may also exercise its discretion "in light of the general public policy favoring settlements."[91]

109.    Courts have set forth the list of so-called "Iridium factors" to consider in evaluating whether a settlement satisfies such standards:

---

[89]  *See Prot. Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968); *In re Best Prods. Co.*, 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994) ("[W]hether the claim is compromised as part of the plan or pursuant to a separate motion, the standards for approval of the compromise are the same.  The settlement must be 'fair and equitable,' . . . and be in the best interest of the estate.") (internal citations omitted).

[90]  *See, e.g.*, *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks omitted).

[91]  *In re Hibbard Brown & Co., Inc.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1998).

a) the balance between the litigation's possibility of success and the settlement's future benefits;

b) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;

c) the paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;

d) whether other parties-in-interest support the settlement;

e) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;

f) the nature and breadth of releases to be obtained by officers and directors; and

g) the extent to which the settlement is the product of arm's-length bargaining.[92]

110.   Application of these factors confirms that the settlements of Claims and Equity Interests under the Prepack Plan facilitated by the Transaction Support Agreement are fair and equitable, in the best interests of the Debtors' estates and should be approved:

- The settlements embodied in the Prepack Plan are in the best interests of the Debtors' creditors and estates, evidenced by support for the Prepack Plan from each of the Prepetition $20 Million Facility Lenders and the Supporting PIK Noteholders, and the 100% voting participation by holders of Class 3 and Class 5 claims, which voted unanimously to accept the Plan.

- Each of the Debtors, the Prepetition $20 Million Facility Lenders, the Prepetition $20 Million Facility Agent and the PIK Noteholder Agent, on behalf of the Supporting PIK Noteholders, among others, were advised during the negotiations by experienced and independent attorneys and financial advisors, and the negotiations leading to the Prepack Plan were conducted at arm's-length and in good faith.

- Pursuant to the Transaction Support Agreement, the parties to the Transaction Support Agreement agree to support the releases provided to the Released Parties, including the Debtors directors and officers, under the Prepack Plan.  For the reasons described herein, these releases are appropriate and justified because they

---

[92] *Motorola, Inc. v. Official Comm. Of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007); *see also Adelphia Confirmation Decision*, 368 B.R. at 251 (citing *Texaco*, 84 B.R. at 901).

were essential to the formulation of the Prepack Plan and are supported by substantial contribution.

**B.      The Assumption and Assignment or Rejection of the Executory Contracts and Unexpired Leases Under the Prepack Plan Should Be  Approved**

111.      Article VIII.A of the Prepack Plan provides for the rejection of all executory contracts and unexpired leases that exist between the Debtors and any other person or entity prior to the Petition Date except for contracts and leases that are expressly assumed pursuant to the Prepack Plan or were assumed, assumed and assigned, or rejected prior to confirmation of the Prepack Plan.

112.      Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease."[93]  Courts routinely approve motions to assume and assign or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment.[94]

113.      The Debtors reviewed and analyzed their executory contracts.  In their business judgment, the Debtors will assume the Transaction Support Agreement pursuant to the Plan. All other contracts, to the extent executory, are deemed rejected under the Prepack Plan. Neither of the Debtors have any unexpired leases.

---

[93]  11 U.S.C. § 365(a).

[94]  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098 (2d Cir. 1993) (stating that section 365 of the Bankruptcy Code "permits the trustee or debtor-in-possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); *see also NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (stating that the traditional standard applied by courts to authorize the rejection of an executory contract is that of "business judgment"); *In re Gucci*, 193 B.R. 411, 414-15 (S.D.N.Y. 1996) ("business judgment" test should be applied to assumption and rejection decisions); *Nostas Assocs. v. Costich (In re Klein Sleep Prods., Inc.)*, 78 F.3d 18, 25 (2d Cir. 1996) (same).

114.    Accordingly, for all of the foregoing reasons, the proposed assumption or rejection of executory contracts and unexpired leases should be approved in connection with confirmation.

### C.    The Prepack Plan's Release, Injunction and Exculpation Provisions Are Appropriate and Should be Approved

115.    Section 1123(b)(6) of the Bankruptcy Code provides that a plan may "include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."[95]

116.    The Prepack Plan provides for:  (a) a release by the Debtors against certain parties in interest (the "**Debtor Release**"); (b) releases by certain holders of Claims of certain parties in interest (the "**Third Party Release**"); (c) an exculpation provision for Released Parties (the "**Exculpation**"); and (d) a customary injunction provision intended to implement the Debtor Release, Third Party Release, and Exculpation provisions in the Prepack Plan (the "**Injunction**").[96]  As described below, these provisions are proper because, among other things, they are the product of arm's-length negotiations and have been critical to obtaining the support of various constituencies for the Prepack Plan.

### 1.    The Debtor Release

117.    Pursuant to the terms of the Prepack Plan, the Debtors and Post-Effective Date Debtors shall release the Released Parties from all claims the Debtors, the Post-Effective Date Debtors, their estates or affiliates would have been entitled to assert on their own or on behalf of a holder of a Claim or Equity Interest or other Entity against the Released Parties, except for claims or liabilities arising out of fraud, willful misconduct, gross negligence or

---

[95]  11 U.S.C. § 1123(b)(6).

[96]  Prepack Plan, Art. V.D and V.K.3

breach of fiduciary duty (if any).[97]   The Released Parties include the (a) the Debtors and the

Post-Effective Date Debtors, (b) the Supporting PIK Noteholders, (c) the Prepetition $20 Million

Facility Agent, (d) the Prepetition $20 Million Facility Lenders, (e) the PIK Administrative

Agent, (f) the parties to the Transaction Support Agreement, including any joinder thereto, and

(g) with respect to each of the foregoing in clauses (a) through (f), such entities' predecessors,

Professionals, successors and assigns, subsidiaries, funds, portfolio companies, and each of their

respective current and former officers, directors (including observers), employees, managers,

attorneys, financial advisors, accountants, investment bankers, consultants, management

companies or other professionals or representatives, in each case solely in their capacity as

such[98].

118.    It is well-established that debtors are authorized to settle or release their

claims in a chapter 11 plan.[99]   Section 1123(b)(3)(A) of the Bankruptcy Code specifically

provides that a chapter 11 plan may provide for "the settlement or adjustment of any claim or

interest belonging to the debtor or to the estate."[100]   A plan that proposes to release a claim or

cause of action belonging to a debtor is considered a "settlement" for purposes of satisfying

section 1123(b)(3)(A) of the Bankruptcy Code.  As discussed above, settlements pursuant to a

plan are generally subject to the same "reasonable business judgment" standard applied to

---

[97] *Id.* Art. V.K.1

[98] For the avoidance of doubt, the Released Parties that the Debtors release pursuant to Art. V.K.1 of the Prepack Plan **do not** include (a) any holder of a Parent PIK Note that is not a party to the TSA; (b) any holder of an equity interest in Class 7 (Equity Interests in Holdings) or (c) any holder of an equity interest in Class 8 (Equity Interests in Parent).

[99] *See In re DBSD N. Am., Inc.*, 419 B.R. 179, 217 (Bankr. S.D.N.Y. 2009) ("Section 1123(b)(3) permits a debtor to include a settlement of any claims it might own as a discretionary provision in its plan…"), *aff'd in part and rev'd in part*, 627 F. 3d 496 (2d Cir. 2010), *aff'd in part and rev'd in part*, 634 F. 3d 79 (2d Cir. 2011); *Adelphia Confirmation Decision*, 368 B.R. at 263 n.289 (holding that a debtor may release its own claims); *In re Oneida Ltd.*, 351 B.R. 79, 94 n.21 (Bankr. S.D.N.Y. 2006) (noting that a debtor's release of its own claims is permissible).

[100]   11 U.S.C. § 1123(b)(3)(A).

settlements under Bankruptcy Rule 9019.[101]   "In determining whether to approve a proposed

settlement, a bankruptcy court need not decide the numerous issues of law and fact raised by the

settlement, but rather, should 'canvas the issues and see whether the settlement fall[s] below the

lowest point in the range of reasonableness.'"[102]   Factors to be considered include:

> (1) the balance between the litigation's possibility of success and
> the settlement's future benefits; (2) the likelihood of complex and
> protracted litigation, "with its attendant expense, inconvenience,
> and delay," including the difficulty in collecting on the judgment;
> (3) "the paramount interests of the creditors," including each
> affected class's relative benefits "and the degree to which creditors
> either do not object to or affirmatively support the proposed
> settlement"; (4) whether other parties in interest support the
> settlement; (5) the "competency and experience of counsel"
> supporting, and "[t]he experience and knowledge of the
> bankruptcy court judge" reviewing, the settlement; (6) "the nature
> and breadth of releases to be obtained by officers and directors";
> and (7) "the extent to which the settlement is the product of arm's
> length bargaining."[103]

119.   Applying this standard here, the Debtor Releases are in the best interests

of the estates and represent an appropriate exercise of the Debtors' business judgment.  *First*, the

Debtors are not aware of any colorable estate claims or causes of action that may exist against

any of the Released Parties. Therefore, it is not possible to place any probability of success on

such litigation given that no viable litigation has even been identified.  In contrast, the Debtor

Release provisions will eliminate the costs and risks of possible litigation – along with its

attendant costs in both time and expense, as well as the distraction of litigation (either as a party

---

[101]   *See In re Charter Commc'ns*, 419 B.R. at 252 ("[W]hile the approval of a settlement rests in the Court's sound discretion, the debtor's business judgment should not be ignored.") (quotations and citations omitted); *In re Bally Total Fitness*, 2007 WL 2779438, at *12 ("To the extent that a release or other provision in the Plan constitutes a compromise of a controversy, this Confirmation Order shall constitute an order under Bankruptcy Rule 9019 approving such compromise."); *In re Spiegel, Inc.*, No. 03-11540, 2005 WL 1278094, at *11 (Bankr. S.D.N.Y. May 25, 2005) (approving releases pursuant to section 1123(b)(3) of the Bankruptcy Code and Bankruptcy Rule 9019(a)).

[102]   *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *113 (quoting *In re W.T. Grant Co.*, 699 F.2d at 608) (other quotations and citations omitted).

[103]   *In re Iridium Operating LLC*, 478 F.3d at 462 (quoting *In re WorldCom, Inc.*, 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)).

to such litigation themselves or the stakeholders who will bear the burdens of the Debtors' investigation, prosecution or participation in such litigation).

120.    *Second*, the paramount interest of creditors is best served by the approval of the Prepack Plan, including the Debtor Releases.  In the absence of any viable claims against any of the Released Parties, pursuing claims against the Released Parties would be a costly and futile exercise that would only distract the Debtors and Post-Effective Date Debtors.  Moreover, the funds available to the Debtors are limited and any such speculative litigation would deplete those resources which are otherwise available for distribution to creditors entitled to a recovery under the Prepack Plan.

121.    *Third*, the Debtor Releases have the support of the major secured and unsecured creditor constituencies in these Chapter 11 Cases and comport with the release provisions of the Transaction Support Agreement.  The Prepack Plan reflects the settlement and resolution of several complex issues, and the releases are an integral part of the consideration to be provided in exchange for the compromises and resolutions embodied therein.

122.    *Fourth*, each of the Released Parties contributed significant value to the Debtors' estates.  As discussed in further detail below, the Released Parties each played an integral role in the formulation of the Prepack Plan and the Transaction Support Agreement, including the provision of the amounts now available to fund the Debtors' administrative and priority claims and to make a distribution to Class 5 General Unsecured Claims against Holdings (none of which would have been available absent the inclusion of the releases), and expended significant time and resources analyzing and negotiating the issues involved therein and working with the Debtors through a complex debt restructuring.  When parties, such as the Released Parties, constructively participate in a debtors' chapter 11 process, it is appropriate to offer

protection in the form of a release.[104]  Importantly, parties often participate in the creation of a debtor's plan with the understanding that "they would receive some limited protection for participating" in the debtor's restructuring process.[105]

123.    *Finally*, the Debtor Releases are similar in scope to those approved by this Court and courts in this and other districts and include a carve-out for fraud, willful misconduct, gross negligence and breach of fiduciary duty (if any).[106]

124.    Accordingly, the Debtor Releases are consistent with applicable law, represent a valid settlement of whatever Claims the Debtors may have against the Released Parties pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, represent a valid exercise of the Debtors' business judgment, and should be approved.

---

[104] *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *84 (finding that "[t]he inclusion of the [release provisions] was an essential element of the [p]lan formulation process and negotiations with respect to each of the settlements contained in the [p]lan [and] . . . [t]he inclusion of the [release provisions] were vital to the successful negotiation of the terms of [p]lan in that without such provisions, the [released parties] would have been less likely to negotiate the terms of the settlements and the [p]lan.").

[105] *Upstream Energy Servs. v. Enron Corp. (In re Enron Corp.)*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (stating that "[p]arties participated in the creation of the [p]lan under the guarantee that they would receive some limited protection for participating in one of the largest and most complex bankruptcy filings in history . . . To pull away this string would thus tend to unravel the entire fabric of the [p]lan, and would be inequitable to all those who participated in good faith to bring it to fruition.").

[106] *See, e.g.*, *In re Jobson Med. Info. Holdings LLC*, No. 12-10434 (SHL) (Bankr. S.D.N.Y. Mar. 5, 2012) (confirming a prepackaged chapter 11 plan containing releases of members, directors, officers and employees of the debtors as well as prepetition lenders that were party to a restructuring support agreement); *In re AMR Corp.*, 11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013) (confirming chapter 11 plan containing releases of directors and officers of the debtors as well as general unsecured creditors that were party to a support and settlement agreement); *In re Almatis*, No. 10-12308 (MG) (Bankr. S.D.N.Y. Sept. 20, 2010) (chapter 11 plan contained estate releases for directors, officers and employees as well as prepetition and postpetition lenders, committee members, and noteholders); *In re Uno Rest. Holdings Corp.*, No. 10-10209 (MG) (Bankr. S.D.N.Y. July 6, 2010) (same); *In re Ion Media Networks, Inc.*, No. 09-13125 (Bankr. S.D.N.Y. 2009) (confirming plan that provided for releases by the debtor of the debtors' directors and officers in addition to parties to a global settlement, including the creditors' committee and certain consenting first lien lenders); *In re DJK Residential LLC*, No. 08-10375 (JMP) (Bankr. S.D.N.Y. May 7, 2008) (finding that releases and discharges of claims and causes of action by the Debtors were a valid exercise of the Debtors' business judgment); *In re Calpine Corp.*, No. 05-60200 (Bankr. S.D.N.Y. Dec. 19, 2007) (same); *In re Tower Auto., Inc.*, No. 05-10578 (ALG) (Bankr. S.D.N.Y. July 12, 2007) (finding that debtor releases represented a valid settlement of whatever claims Debtors may have against the Debtor Releasees); *see also In re Washington Mutual, Inc.*, No. 08-12229 (MFW) (Bankr. D. Del. Feb. 24, 2012) (confirming plan premised on global settlement that provided for a debtor release of plan supporters).

2.    **Third Party Releases**

125.    In addition to the Debtor Releases, the Prepack Plan also provides for a release of certain claims and causes of action against the Released Parties held by the Releasing Parties.[107]  The Releasing Parties include (a) the Supporting PIK Noteholders, (b) the Prepetition $20 Million Facility Agent, (c) the Prepetition $20 Million Facility Lenders, (d) the PIK Administrative Agent, (e) the parties to the Transaction Support Agreement, including any joinder thereto, (f) any holder of a Claim that either is deemed to accept the Plan or votes to accept the Plan, and (g) with respect to each of the foregoing in clauses (a) through (f), such entities' predecessors, Professionals, successors and assigns, subsidiaries, funds, portfolio companies, and each of their respective current and former officers, directors (including observers), employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives, in each case solely in their capacity as such.[108][109] The Third Party Releases do ***not*** release claims by governmental agencies.

126.    The Second Circuit has held that a bankruptcy court may enjoin claims against non-debtors in certain circumstances where the injunction "plays an important part in the debtor's reorganization plan."[110]  Two considerations generally apply:  whether a bankruptcy court has subject matter jurisdiction over the claims to be released, which turns on whether the

---

[107] Prepack Plan, Art. VI.K.2.

[108] *Id.*, Art. I.A.89.

[109] For the avoidance of doubt, the Releasing Parties pursuant to Art. V.K.2 of the Prepack Plan **do not** include (a) any holder of a Parent PIK Note in Class 4 that is not a party to the Transaction Support Agreement; (b) any holder of a Claim in the Voting Classes that (i) voted to reject the Prepack Plan; or (ii) abstained from voting on the Prepack Plan; or (c) any holder of an equity interest deemed to reject the Prepack Plan in (i) Class 7 (Equity Interests in Holdings) or (ii) Class 8 (Equity Interests in Parent).

[110] *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d at 293.

claims might have "any conceivable effect" on the bankruptcy estate;[111] and whether the release

is "important" to the success of the chapter 11 plan due to "unusual circumstances."[112]  While the

requisite circumstances are not defined by a fixed test of "factors and prongs," the Second

Circuit has observed that third party releases have been approved where one or more of the

following applied:

- the estate received substantial consideration;

- the enjoined claims were channeled to a settlement fund rather than extinguished;

- the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution;

- the plan otherwise provided for the full payment of the enjoined claims; or

- the affected creditors consented.[113]

127.    Here, jurisdiction exists because the claims covered by the Third Party

Release could affect the bankruptcy estate, if permitted to proceed, through indemnity and/or

contribution claims that could be asserted by the Released Parties.[114]  The Third Party Releases

---

[111] *Pfizer Inc. v. Law Offices of Peter G. Angelos (In re Quigley Co.)*, 676 F.3d 45, 57 (2d Cir. 2012) ("[T]he touchstone for bankruptcy jurisdiction remains 'whether [a third party action] might have any 'conceivable effect' on the bankruptcy estate.'") (citations omitted), *cert. denied sub nom. Pfizer, Inc. v. Law Offices of Peter G. Angelos*, 133 S. Ct. 2849 (2013); *Johns-Manville Corp. v. Chubb Indem. Ins. Co. (In re Johns-Manville Corp.)*, 517 F.3d 52, 66 (2d Cir. 2008) ("[A] bankruptcy court only has jurisdiction to enjoin third party non-debtor claims that directly affect the res of the bankruptcy estate.").

[112] *Deutsche Bank AG, London Branch v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 141-43 (2d Cir. 2005).

[113] *See Metromedia*, 416 F.3d at 142-43.

[114] *See, e.g., In re FairPoint Commc'ns, Inc.*, 452 B.R. 21, 29 (S.D.N.Y. 2011) ("[A] bankruptcy court has 'related to' jurisdiction to enjoin non-debtor litigation if the bankruptcy estate may be obligated to indemnify or contribute to the losing party."); *N.Y.C. Emps. Ret. Sys. V. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308, 318-19 (S.D.N.Y. 2003) (collecting cases); *IIG Capital LLC v. Wollmuth Maher & Deutsch, LLP (In re Amanat)*, 338 B.R. 574, 579 (Bankr. S.D.N.Y. 2005) (jurisdiction over third party actions may be based on implied indemnity or contribution claim); *Blackacre Bridge Capital LLC v. Korff (In re River Center Holdings, LLC)*, 288 B.R. 59, 63-65 (Bankr. S.D.N.Y. 2003) (jurisdiction existed because debtor was contractually obligated to indemnify guarantor who was third party defendant); *see also Mich. Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*,

are also important to the Chapter 11 Cases and satisfy *Metromedia* as they are *completely* consensual, and the estates have received full and fair consideration from the Released Parties for the releases that has benefitted *all* stakeholders and would not be available absent the release.

> (a)    **The Third Party Releases as to the Voting Classes are Completely Consensual**

128.    As noted above, the Second Circuit has held that third-party releases are permissible under certain circumstances, including where the affected creditors consent.[115]  If a third party release is adequately disclosed, a vote in favor of the plan may constitute consent to the release.[116]  Courts inferring consent have focused on the highlighting of a release provision in the disclosure statement, ballot, and plan itself; where the release is properly disclosed courts have approved such releases on a consensual basis.[117]

129.    Here, in conformity with the law in the Second Circuit, the Third Party Releases are consensual.  Each of the Releasing Parties in the Voting Classes voted to accept the Plan and the releases, were conspicuously disclosed on the Ballots and in the Prepack Plan and Disclosure Statement. Additional Releasing Parties expressly consented to the third party releases as parties to the Transaction Support Agreement.  In addition, the Third Party Release was extensively disclosed, given that the Prepack Plan, Disclosure Statement, Ballots, and the Combined Notice contained conspicuous language discussing the third party release to ensure

---

930 F.2d 1132, 1143 (6th Cir. 1991) (indemnification provision supported jurisdiction even though debtor "would not be affected until and unless [the third party] invoked the indemnification").

[115] *Adelphia Confirmation Decision*, 368 B.R. at 268 (finding that third-party releases are permissible if affected creditors consent) (citing *Metromedia,* 416 F.3d at 142).

[116] *See Adelphia Confirmation Decision*, 368 B.R. at 268 (applying consensual third party release to creditors that voted to support plan); *In re Oldco M Corp. (f/k/a Metaldyne Corp.)*, No. 09-13412 (MG) (Bankr. S.D.N.Y. Feb. 23, 2010) (same).

[117] *See DBSD*, 419 B.R. at 218-19 (Bankr. S.D.N.Y. 2009) ("[A]dequate notice [of the third party release] is provided in this case, as both the Plan and Disclosure Statement have the third party release provision set off in bold font, and the ballots set forth in both capitalized and bold text the effect of consenting to the Plan or abstaining without opting out of the release."), *aff'd*, No. 09-13061, 2010 WL 1223109 (S.D.N.Y. Mar. 24, 2010), *rev'd on other grounds*, 627 F.3d 496 (2d Cir. 2010).

that all parties voting on the Prepack Plan were adequately informed of their ability to reject the Prepack Plan and opt out of the third party release.  In addition, as stated at footnote 108, *supra*, the Releasing Parties granting the Third Party Releases **do not** include (a) any holder of a Parent PIK Note in Class 4 that is not a party to the Transaction Support Agreement; (b) any holder of a Claim in the Voting Classes that (i) voted to reject the Prepack Plan; or (ii) abstained from voting on the Prepack Plan; or (c) any holder of an equity interest deemed to reject the Prepack Plan in (i) Class 7 (Equity Interests in Holdings) or (ii) in Class 8 (Equity Interests in Parent)[118]. As such all Releasing Parties granting the Third Party Releases affirmatively elected to grant such Third Party Release either through the Transaction Support Agreement and/or the Ballot they cast in connection with the Prepack Plan.

130.    The solicitation and disclosure process, therefore, has featured all of the hallmarks of adequate disclosure, and the Court may regard all votes in favor of the Prepack Plan as consent to the Third Party Release.  In response to this notification, creditors overwhelmingly voted to support the Prepack Plan. Of those classes entitled to vote, 100% of the creditors in Class 3 and 100% of the creditors in Class 5 voted to accept the Prepack Plan. No creditor voted against the Prepack Plan, and no creditor entitled to vote failed to return a Ballot.

**(b)    The Third Party Releases by Unimpaired Claims are Appropriate Under the Circumstances and Should be <u>Approved</u>**

131.    The Prepack Plan also provides for a release of the Released Parties by holders of Unimpaired Claims, to the fullest extent permitted by applicable law.

132.    *First*, with respect to holders of Unimpaired Claims, one of the enumerated circumstances in *Metromedia* under which third party releases are appropriate is

---

[118] Only the two unimpaired classes of Claims against Parent are giving releases.

where the plan "otherwise provides for the full payment of the enjoined claims."[119]  Thus, deeming holders of Unimpaired Claims to accept the Third Party Release is appropriate and consistent with the Second Circuit case law.

133.    *Second*, the Released Parties' contributions to these Chapter 11 Cases provide a compelling justification for the Third Party Releases.  Courts in this district have repeatedly approved third party releases in favor of a non-debtor whose contributions to the case were "important" to its success, as contemplated by *Metromedia*.  For example, in *JPMorgan Chase Bank, N.A. v Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns, Inc.*), 419 B.R. 221 (Bankr. S.D.N.Y. 2009), the court approved a release where the third party had contributed "substantial financial and non-financial consideration" that "no other party could have done."[120]  And the court in *Rosenberg v. XO Commc'ns, Inc.* (*In re XO Commc'ns, Inc.*), 330 B.R. 394 (Bankr. S.D.N.Y. 2005), granted a release to third parties whose "contributions will provide for certain distributions that would not have been made available but for these nondebtor parties' contributions."[121]

134.    The Third Party Releases provided for in the Prepack Plan are a vital part of the Prepack Plan, the Debtors' ability to provide a distribution, and the Debtors' ability to emerge from bankruptcy.  Each of the Released Parties has provided substantial contributions to the Chapter 11 Cases, without which the distributions to be made under the Prepack Plan would not be possible.  In addition, the Released Parties made the substantial contributions in

---

[119]  *See Metromedia* at 142; *see also In re Indianapolis Downs LLC*, 486 B.R. 286, 304 (Bankr. D. Del. 2013) (deemed acceptance by holders of unimpaired claims is permissible because such creditors were being paid in full and therefore were receiving consideration in exchange for granting the release).

[120]  *In re Charter Commc'ns, Inc.*, 419 B.R. at 258-59.

[121]  *Rosenberg v. XO Commc'ns, Inc.* (*In re XO Commc'ns, Inc.*), 330 B.R. 394, 438 (Bankr. S.D.N.Y. 2005); *see also Cartalemi v. Karta Corp.* (*In re Karta Corp.*), 342 B.R. 45, 54-55 (S.D.N.Y. 2006) (approving a release where the third parties' operational support was necessary for the debtors to "fund the Plan [and] comply with other Plan obligations.").

contemplation of the releases provided for in the Prepack Plan, and absent these contributions, the Debtors would have been unable to propose the Prepack Plan or in fact, any other plan.

135.    The Prepetition $20 Million Facility Lenders and the Prepetition $20 Million Facility Agent made substantial contributions to the Chapter 11 Cases, including, without limitation, by allocating the right of the Prepetition $20 Million Facility Lenders to receive a distribution of the Transaction Consideration and any Distributable Holdings Assets to the holders of Allowed Class 5 Claims against Holdings, without which the holders of Allowed Class 5 Claims would not be entitled to receive any distribution under the Prepack Plan (or any other plan).  The Prepetition $20 Million Facility Lenders also provided $20 million to the Debtors and the Formerly Owned Operating Businesses to facilitate the Forbearance and Marketing Period, which provided the Debtors and their Formerly Owned Operating Businesses with time to attempt to maximize the value to all holders of claims and equity interests (including those at Holdings and Parent) and avoid a bankruptcy filing.  Moreover, the Prepetition $20 Million Facility Lenders and the Prepetition $20 Million Facility Agent were substantially involved in the negotiation of the Transaction Support Agreement and the Prepack Plan. The Debtors believe that these contributions were important, and indeed integral, to the successful negotiation of the Transaction Support Agreement and the Prepack Plan, and the subsequent filing of and consummation of the Prepack Plan.

136.    The Supporting PIK Noteholders and the PIK Notes Administrative Agent also made substantial contributions in their respective active involvement in the negotiation and implementation of the Transaction Support Agreement and the Prepack Plan. Without the involvement of the Supporting PIK Noteholders and the PIK Notes Administrative Agent, the Prepack Plan would not have been possible.  The Supporting PIK Noteholders (a significant

number of which hold both Holdings PIK Notes and Parent PIK Notes) and the PIK Notes Administrative Agent sought to maximize the recoveries available to creditors of Holdings and Parent taking into consideration the relative rights due to the organizational and capital structure. These parties were able to ensure that Administrative and Priority Claims of both Debtors would be satisfied from the Funded Amount and then the Fixed Transaction Consideration Payment and the Residual Funded Amount would be made available to the Class 5 General Unsecured Claims of Holdings.[122]

137.    Moreover, the Debtors, and the Debtors' officers, directors and observers made invaluable substantial contributions both prior to and during these Chapter 11 Cases.  The Debtors' officers, directors and observers were instrumental in navigating the Debtors through prepetition negotiations and the commencement of the Chapter 11 Cases, and have continued to play an integral role in the Debtors' restructuring efforts by working towards consensual confirmation process and orderly wind down and dissolution of the Debtors. Their efforts in formulating and negotiating the Transaction Support Agreement, the Prepack Plan, Disclosure Statement, and all plan-related documents have enabled the Debtors to achieve consensus and to efficiently resolve these Chapter 11 Cases.

138.    In addition, those officers and directors remaining with the Debtors post-emergence will have indemnity rights against the Debtors for lawsuits by third parties for pre- or post-petition acts. The Debtors are required to maintain insurance coverage for the directors and officers through the dissolution of the entities. Pursuant to the express terms of the Prepack Plan and the Transaction Support Agreement, the Debtors are assuming the obligations to indemnify

---

[122] There are other parties to the Transaction Support Agreement that, as of the Petition Date, no longer held claims against the Debtors.  These parties have received consensual contractual releases pursuant to the Transaction Support Agreement.

the officers and directors with any recovery on claims asserted limited to insurance coverage. While the Debtors do not believe any material claims exist against such parties, the release of claims held by third parties will not only reduce the Debtors' obligations following the Effective Date, but will prevent any frivolous litigation from being brought against directors and officers that would deplete the Funded Amount (and possibly the Fixed Transaction Consideration Payment) from being distributed to creditors entitled to such distributions.

139.     The importance of these contributions to the Debtors' Chapter 11 Cases is confirmed by the creditors' reaction to the Prepack Plan.[123] As stated above, there was 100% voting participation by holders of Claims in the Voting Classes, and each such holder voted to accept the Plan and the Third Party Releases. Further, all known holders of claims and equity interests were provided sufficient notice and no party in interest objected to confirmation of the Plan.

140.     Accordingly, the Third Party Releases are appropriate and consistent with prior case law in this district.

### 3.    The Exculpation Provision

141.     Pursuant to the terms of the Prepack Plan, the Released Parties are protected from liability for, among other things, actions taken or omitted in connection with, arising out of, or related to the Chapter 11 Cases or the preparation and filing of the Chapter 11 Cases (collectively, the "**Exculpation Provision**").[124] The scope of the Exculpation Provision is limited to the Released Parties' participation in these Chapter 11 Cases or matters relating to

---

[123]   In addition, the third party release by holders of Unimpaired Claims is qualified by the phrase "to the fullest extent permissible under applicable law" Prepack Plan Art. V.K.2. Thus, any release granted by these parties will only be enforced where a Court finds such a release complies with applicable law. *See In re XO Commc'ns, Inc.*, 330 B.R. at 441-42 (applying "fullest extent permissible under applicable law" limitation post-confirmation in determining permissibility of non-consensual, non-debtor release under *Metromedia*).

[124]   Prepack Plan, Art. VI.K.3.

these Chapter 11 Cases or the preparation and filing of the Chapter 11 Cases and related documents and has no effect on liability that results from fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any).

142.    Courts in the Second Circuit evaluate the appropriateness of exculpation provisions based upon a number of factors, including whether the plan was proposed in good faith, whether the provision is integral to the plan, and whether the exculpation provision was necessary for plan negotiations.[125]   In general, the effect of an appropriate exculpation provision is to set a standard of care of gross negligence or willful misconduct in future litigation by a non-releasing party against an "Exculpated Party" for acts arising out of the Debtors' restructuring.[126] Exculpated parties may include fiduciaries of the estate and entities that provide substantial contributions to the Chapter 11 Cases.[127]

143.    In addition, courts have found that exculpation for participating in the plan process and chapter 11 cases is appropriate where the plan has been proposed in good faith and

---

[125]   *See, e.g.*, *In re Bally Total Fitness*, 2007 WL 2779438, at *8 (finding exculpation, release, and injunction provisions appropriate because they were necessary to successful reorganization, and integral to the plan); *In re Enron Corp.*, 326 B.R. at 501, 503-04 (affirming approval of an exculpation provision where it was necessary to effectuate the plan and excluded gross negligence and willful misconduct; also noting that excising similar exculpation provisions would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition"); *WorldCom*, 2003 Bankr. LEXIS 1401, at *85 (approving an exculpation provision where it "was an essential element of the Plan formulation process and negotiations"); *see also In re Drexel Burnham Lambert Grp.*, 960 F.2d at 293; *In re Winn-Dixie Stores*, 356 B.R. 239, 260-61 (Bankr. M.D. Fla. 2006) (approving an exculpation provision where beneficiaries made significant contributions and expected that an exculpation provision would be included in plan).

[126]   *See In re PWS Holding Corp.*, 228 F.3d 224, 245 (3d Cir. 2000) (holding that an exculpation provision is "apparently a commonplace provision in Chapter 11 plan, [and] does not affect the liability of these parties, but rather states the standard of liability under the Code"); *see also In re Enron Corp.*, 326 B.R. at 501 (finding that exculpation provision was appropriate where such provision excluded gross negligence and willful misconduct); *In re Granite Broad. Corp.*, 369 B.R. 120, 139 (Bankr. S.D.N.Y. 2007) (approving exculpation provision that excluded gross negligence and intentional misconduct); *In re Bally Total Fitness*, 2007 WL 2779438, at *8 (approving an exculpation provision that excluded gross negligence and willful misconduct and exculpated, among others, prepetition noteholders and new investors). In this regard, exculpation provisions are unlike third-party releases because they do not affect the liability of third parties *per se* but merely set the standard of liability for future litigation by a non-releasing party against an exculpated party for acts arising out of the restructuring.

[127]   *See, e.g.*, *In re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. May 7, 2012) (approving releases, exculpations and related injunctions based on, among other things, certain released parties' substantial contributions to the debtors).

otherwise meets the requirements for plan confirmation, and plan negotiations could not have

occurred without protection from liability for parties involved in those negotiations.[128]  Indeed,

failing to include an exculpation clause in a  chapter 11 plan could chill the critical participation

of the debtor's management and advisors, as well as essential creditor groups, in the process of

formulating and negotiating consensual chapter 11 plans.[129]  Accordingly, exculpation provisions

appropriately prevent collateral attacks against parties that have made substantial contributions to

a debtor's chapter 11 case and have negotiated a plan that is ultimately confirmed by the court.

Parties to be exculpated from liability may include those that are indemnified by a debtor or that

provide substantial contributions to the debtor and the reorganization.[130]

144.    Here, the Exculpation Provision is appropriate under applicable law

because it is part of the Prepack Plan which was proposed in good faith, is vital to the Chapter 11

Cases and Prepack Plan formulation process, and is appropriately limited in scope.  As discussed

above, negotiation and compromise were crucial to the formulation of a feasible and consensual

Prepack Plan, and could not have occurred without the protection from liability that the

Exculpation Provision provides to the Released Parties.  Moreover, each of the Released Parties

covered under the Exculpation Provision is either entitled to be indemnified by the Debtors or

has made substantial contributions to the Debtors' Chapter 11 Cases.  Finally, the Exculpation

Provision, including its carve-out for fraud, willful misconduct, gross negligence and breach of

---

[128]    *See In re Drexel Burnham Lambert Grp.*, 960 F.2d at 293 (finding that where a debtor's plan of reorganization requires the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement).

[129]    *See, e.g.*, *id.*; *In re Enron Corp.*, 326 B.R. at 503 (finding that without such protection from liability, key constituents might not actively participate in plan process or abandon efforts to help a debtor follow through on plan and wind up its affairs).

[130] *See, e.g.*, *In re Almatis, B.V.*, No. 10-12308 (MG) (Bankr. S.D.N.Y. Sept. 20, 2010); *In re Uno Rest. Holdings Corp.*, No. 10-10209 (MG) (Bankr. S.D.N.Y. July 6, 2010); *In re Borders Grp.*, No. 11-10614 (MG) (Bankr. S.D.N.Y. Dec. 21, 2011); *In re AMR Corp.*, 11-15463 (SHL) (Bankr. S.D.N.Y. Oct. 22, 2013).

fiduciary duty (if any), is entirely consistent with established practice in this jurisdiction.[131] Accordingly, the Exculpation Provision is reasonable, consistent with prior case law in this district, and should be approved.

### 4.    Injunction

145.    Article V of the Prepack Plan includes a provision enjoining parties from pursuing Claims released under the Prepack Plan (the "**Injunction Provision**").[132] The Injunction Provision is necessary to preserve and enforce the Debtor Releases, the Third Party Releases and the Exculpation Provision, and is narrowly tailored to achieve that purpose. Further, the Injunction Provision is a key component of the ultimate reorganization,[133] and is similar to those previously approved by this Court.[134] Thus, this Court should approve the Injunction Provision together with the Estate Releases, the Third Party Releases and the Exculpation Provision.

### D.    The Technical Modifications to the Plan Comply with Section 1127 of the Bankruptcy Code.

146.    In the interest of clarifying certain provision of the Prepack Plan, the Debtors have made certain non-material modifications to the Plan (the "**Technical Modifications**"). Concurrently with the filing of this memorandum, the Debtors are filing a

---

[131] *See, e.g.*, *DBSD*, 419 B.R. at 217-18 ("[E]xculpation provisions . . . may be used . . . where . . . the enjoined claims would indirectly impact the debtor's reorganization by way of indemnity or contribution; [and where] the released party provides substantial consideration . . . "); *Adelphia Confirmation Decision*, 368 B.R. at 267 (same).

[132] Prepack Plan, Art. VI.D.

[133] *See In re Bally Total Fitness*, 2007 WL 2779438, at *8 (finding that exculpation, release, and injunction provisions appropriate because they were fair and equitable, necessary to successful reorganization, and integral to the plan); *In re Drexel Burnham Lambert Grp.*, 960 F.2d at 293 (finding that bankruptcy court has jurisdiction and power to approve release and injunction in a plan, where such releases and injunction play an important part in plan of reorganization); *Abel v. Shugrue (In re Ionosphere Clubs, Inc.)*, 184 B.R. 648, 655 (S.D.N.Y. 1995) ("[C]ourts may issue injunctions enjoining creditors from suing third parties . . . in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan.").

[134] *See, e.g.*, *In re Gen. Mar. Corp.*, No. 11-15285 (MG) (Bankr. S.D.N.Y. May 7, 2012); *In re Mesa Air Grp.*, No. 10-10018 (MG) (Bankr. S.D.N.Y. Jan. 20, 2011); *In re Almatis, B.V.*, No. 10-12308 (MG) (Bankr. S.D.N.Y. Sept. 20, 2010); *In re Oldco M Corp. (f/k/a Metaldyne Corp.)*, No. 09-13412 (MG) (Bankr. S.D.N.Y. Jan. 10, 2010).

revised version of the Prepack Plan to reflect certain non-material and technical changes that do

not materially or adversely affect the treatment of any holder of a Claim under the Plan. In

addition, the Debtors are filing an electronic comparison of the Plan incorporating the Technical

Modifications to the prior version of the Plan.

147.    Section 1127 of the Bankruptcy Code allows a plan proponent to modify

the plan "at any time" before confirmation. Specifically, section 1127 of the Bankruptcy Code

provides:

> (a) The proponent of a plan may modify such plan at any time
> before confirmation, but may not modify such plan so that such
> plan as modified fails to meet the requirements of sections 1122
> and 1123 of the title. After the proponent of a plan files a
> modification of such plan with the court, the plan as modified
> becomes the plan . . . .
>
> (d) Any holder of a claim or interest that has accepted or rejected a
> plan is deemed to have accepted or rejected, as the case may be,
> such plan as modified, unless, within the time fixed by the court,
> such holder changes such holder's previous acceptance or
> rejection.[135]

Accordingly, bankruptcy courts have typically allowed a plan proponent to make non-material

changes to a plan without any special procedures or vote resolicitation.[136]

148.    In addition, Bankruptcy Rule 3019, designed to implement section

1127(d) of the Bankruptcy Code, in turn, provides in relevant part that:

---

[135] 11 U.S.C. §§ 1127(a), (d).

[136] See, e.g., *Enron Corp. v. New Power Co. (In re New Power Co.),* 438 F.3d 1113, 1117-18 (11th Cir. 2006) ("[T]he bankruptcy court may deem a claim or interest holder's vote for or against a plan as a corresponding vote in relation to a modified plan unless the modification materially and adversely changes the way that claim or interest holder is treated."); *In re Am. Solar King Corp.,* 90 B.R. 808, 826 (Bankr. W.D. Tex. 1988) (stating that "if a modification does not 'materially' impact a claimant's treatment, the change is not adverse and the court may deem that prior acceptances apply to the amended plan as well.") (citation omitted); *In re Mt. Vernon Plaza Cmty. Urban Redevelopment Corp. I,* 79 B.R. 305, 306 (Bankr. S.D. Ohio 1987) (all creditors were deemed to have accepted plan as modified because "[n]one of the changes negatively affects the repayment of creditors, the length of the [p]lan, or the protected property interests of parties in interest.").

> In a . . . chapter 11 case, after a plan has been accepted and before
> its confirmation, the proponent may file a modification of the plan.
> If the court finds after hearing on notice to the trustee, any
> committee appointed under the Code, and any other entity
> designated by the court that the proposed modification does not
> adversely change the treatment of the claim of any creditor or the
> interest of any equity security holder who has not accepted in
> writing the modification, it shall be deemed accepted by all
> creditors and equity security holders who have previously accepted
> the plan.[137]

149.    While the Debtors have not received any objection nor comments to the

Prepack Plan, the Debtors have determined that certain clarifying revisions would be beneficial

to the Debtors and their stakeholders.   The Technical Modifications primarily consist of the

following changes: (i) explicit inclusion of board observers in the Released Parties and Releasing

Parties; (ii) clarification of the identity of the Supporting PIK Noteholders; (iii) clarification that

the Prepack Plan constitutes a joint plan that does not substantively consolidate the estates; (iv)

refinement of the description of the Funded Amount and clarification of its uses; (v) explicit

inclusion of the passage of the government bar date prior as a condition to effectiveness; and (vi)

minor other revisions.

150.    Because all creditors in these Chapter 11 Cases have notice of the

Confirmation Hearing, and will have an opportunity to object to the Technical Modifications at

that time, the requirements of section 1127(d) of the Bankruptcy Code have been satisfied.[138]

Moreover, the Debtors have obtained the requisite consent, as necessary, from the Prepetition

$20 Million Facility Lenders, Prepetition $20 Million Facility Agent, the Supporting PIK

---

[137] Fed. R. Bankr. P. 3019.

[138] *See Citicorp Acceptance Co., Inc. v. Ruti-Sweetwater (In re Sweetwater)*, 57 B.R. 354, 358 (D. Utah 1985)
(creditors who had knowledge of pending confirmation hearing had sufficient opportunity to raise objections to
modification of the plan).

Noteholders party to the Transaction Support Agreement, the PIK Notes Administrative Agent and the U.S. Trustee.

151.   Accordingly, because the Technical Modifications (and those that may be made prior to or at the Confirmation Hearing), are non-material and do not materially or adversely affect the treatment of any creditor that has previously accepted the Plan, and the Plan, as modified, continues to comply with the requirements of sections 1122 and 1123 of the Bankruptcy Code, no further solicitation is required.

[remainder of page intentionally blank]

## CONCLUSION

For the reasons set forth herein, the Solicitation Procedures and Disclosure Statement satisfy the applicable requirements of the Bankruptcy Code and Bankruptcy Rules, and the Prepack Plan fully satisfies all applicable requirements of the Bankruptcy Code.  Therefore this Court should approve the Solicitation Procedures and Disclosure Statement and confirm the Prepack Plan pursuant to section 1129 of the Bankruptcy Code.


Dated:   New York, New York
         April 15, 2016

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**

By:   *Tracy L. Klestadt*
      Tracy L. Klestadt
      Joseph C. Corneau
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email:  tklestadt@klestadt.com
              jcorneau@klestadt.com

      *Counsel for the Debtors*
      *and Debtors in Possession*