KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel for the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                                :
In re:                                                          :    Chapter 11
                                                                :
TGHI, INC., et al.,                                             :    Case No. 16-10300(MEW)
                                                                :
                          Debtors.[1]                           :    Jointly Administered
                                                                :
----------------------------------------------------------- X

**NOTICE OF FILING OF PROPOSED FINDINGS OF FACT, CONCLUSIONS OF
LAW, AND ORDER (I) APPROVING THE DEBTORS' (A) DISCLOSURE
STATEMENT PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY
CODE AND (B) SOLICITATION OF VOTES AND SOLICITATION PROCEDURES
AND (II) CONFIRMING THE FIRST AMENDED JOINT PREPACKAGED PLAN OF
LIQUIDATION OF THE DEBTORS PURSUANT TO CHAPTER 11 OF THE
<u>BANKRUPTCY CODE</u>**

    **PLEASE TAKE NOTICE,** that on February 9, 2016, TGHI, Inc. and Parent THI, Inc.

(together, the "<u>Debtors</u>") filed their *Prepackaged Plan of Liquidation of the Debtors Pursuant to*

*Chapter 11 of the Bankruptcy Code* (the "<u>Prepack Plan</u>") [Docket No. 6] and the *Disclosure*

*Statement for the Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the*

*Bankruptcy Code* (the "<u>Disclosure Statement</u>") [Docket No. 7].

_____

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521) and TGHI, Inc. (3814).

PLEASE TAKE FURTHER NOTICE that on April 15, 2016, the Debtors filed their

*First Amended Joint Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of*

*the Bankruptcy Code* [Docket No. 42].

PLEASE TAKE FURTHER NOTICE, that a combined hearing on (a) approval of

Disclosure Statement pursuant to 11 U.S.C. § 1125 and 1126(b); (b) approval of the solicitation of

votes and solicitation procedures; and (c) confirmation of the Prepack Plan pursuant to 11 U.S.C. §

1129 is scheduled for April 20, 2016 at 10:00 a.m. (the "Confirmation Hearing").

PLEASE TAKE FURTHER NOTICE, that in advance of the Confirmation Hearing, the

Debtors are filing their proposed *Findings of Fact, Conclusions of Law, and Order (I) Approving*

*the Debtors' (A) Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy*

*Code and (B) Solicitation of Votes and Solicitation Procedures and (II) Confirming the First*

*Amended Joint Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the*

*Bankruptcy Code,* attached hereto as **Exhibit A**.

Dated:   New York, New York
         April 15, 2016

                                        **KLESTADT WINTERS JURELLER**
                                        **SOUTHARD & STEVENS, LLP**


                                 By:   */s/ Tracy L. Klestadt*_____
                                        Tracy L. Klestadt
                                        Joseph C. Corneau
                                        200 West 41st Street, 17th Floor
                                        New York, New York 10036
                                        Tel: (212) 972-3000
                                        Fax: (212) 972-2245
                                        Email: tklestadt@klestadt.com
                                               jcorneau@klestadt.com

                                        *Counsel for the Debtors*
                                        *and Debtors in Possession*

# **EXHIBIT A**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------X
:
In re:                                                          :    Chapter 11
                                                                :
TGHI, INC., et al.,                                             :    Case No. 16-10300(MEW)
                                                                :
                                    Debtors.[1]                 :    Jointly Administered
                                                                :
------------------------------------------------------------------ X

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER**
**(I) APPROVING THE DEBTORS' (A) DISCLOSURE STATEMENT**
**PURSUANT TO SECTIONS 1125 AND 1126(B) OF THE BANKRUPTCY**
**CODE AND (B) SOLICITATION OF VOTES AND SOLICITATION**
**PROCEDURES AND (II) CONFIRMING THE FIRST AMENDED JOINT**
**PREPACKAGED PLAN OF LIQUIDATION OF THE DEBTORS PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE**

TGHI, Inc. ("**Holdings**") and Parent THI, Inc. ("**Parent**"), as chapter 11 debtors

and debtors-in-possession (each a "**Debtor**" and, together, the "**Debtors**") in the above-

referenced chapter 11 cases having proposed (A) the *Prepackaged Plan Of Liquidation Of The*

*Debtors Pursuant To Chapter 11 Of The Bankruptcy Code,* dated February 3, 2016 (as amended

by the *First Amended Joint Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter*

*11 of the Bankruptcy Code,* dated April 15, 2016, the "**Prepack Plan**") [Docket No. 6, as

amended, Docket No. 42], a copy of which is annexed hereto as **Exhibit A**, and (B) the

Disclosure Statement for the Prepack Plan, dated February 3, 2016, and filed with the Court on

February 9, 2016 (the "**Disclosure Statement**") [Docket No. 7]; and the Court on February 11,

2016 having entered the Order (A) Scheduling a Combined Hearing on Disclosure Statement and

Plan Confirmation, (B) Approving Form of and Manner of Notice Thereof; and (C) Granting

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521) and TGHI, Inc. (3814).

Related Relief Hearing (the "**Scheduling Order**") [Docket No. 13] granting the underlying

motion, the "**Scheduling Motion**")[2] which, among other things, (i) scheduled a combined

hearing (the "**Combined Hearing**") on and objection deadline for (a) approval of (x) the

adequacy of the solicitation procedures used in connection with the prepetition solicitation of

votes to accept or reject the Prepack Plan (the "**Solicitation Procedures**") and (y) the Disclosure

Statement and (b) confirmation of the Prepack Plan; (ii) approved the form and manner of the

notice of the Combined Hearing (the "**Combined Notice**"), and commencement of the Chapter

11 Cases (as defined below); and the Prepack Plan, Disclosure Statement and appropriate ballots

for voting on the Prepack Plan (the "**Ballots**"), in the forms attached as Exhibit B to the

Scheduling Motion having been duly transmitted to holders of Claims in Classes 3 and 5; and the

Court having conducted the Combined Hearing on April 20, 2016; and the Court having

considered the *Declaration of James Lee of Kurtzman Carson Consultants LLC Regarding the*

*Transmission of Solicitation Packages, Voting, and Tabulation of Ballots Accepting the*

*Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code*

(the "**Voting Declaration**") [Docket No. 44]; the *Declaration of John James O'Connell III in*

*Support of Confirmation of the Prepackaged Plan of Liquidation of the Debtors Under Chapter*

*11 of the Bankruptcy Code* (the "**O'Connell Declaration**") [Docket No. 45]; the *Declaration of*

*Christopher Layden in Support of Confirmation of the Debtors' Prepackaged Plan of Liquidation*

*Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Layden Declaration**") [Docket No. 46],

each admitted into evidence at the Combined Hearing; and the *Debtors' Memorandum of Law in*

*Support of Entry of an Order (I) Approving (A) the Debtors' Disclosure Statement Pursuant to*

---

[2] Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Prepack Plan or the Scheduling Order, as applicable. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

*Sections 1125 and 1126(B) of the Bankruptcy Code, and (B) the Solicitation Procedures, and (II)*
*Confirming the First Amended Joint Prepackaged Plan of Liquidation of the Debtors Pursuant*
*to Chapter 11 of the Bankruptcy C*ode [Docket No. 47]; and the arguments of counsel, testimony

and evidence presented at the Combined Hearing; and the Court having reviewed the Prepack

Plan, the Disclosure Statement and other relevant factors affecting these Chapter 11 Cases; and

the Court having taken judicial notice of the entire docket of the Chapter 11 Cases maintained by

the Clerk of the Court and/or its duly appointed agent, and all pleadings and other documents

filed, all orders entered, and evidence and arguments made, proffered, or adduced at the hearings

held before the Court during the pendency of the Chapter 11 Cases; and the Court having found

that due and proper notice has been given with respect to the Combined Hearing and the

deadlines and procedures for filing objections to the Disclosure Statement and confirmation of

the Prepack Plan in accordance with the Scheduling Order, the Amended Procedural Guidelines

for Prepackaged Chapter 11 Cases in the United States Bankruptcy Court for the Southern

District of New York, as amended, effective June 27, 2013 (as incorporated by Local Rule 3018-

2 and General Order M-454) (the "**Guidelines**"), title 11 of the United States Code, 11 U.S.C. §§

101 *et seq.* (as amended, the "**Bankruptcy Code**"), the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Local Bankruptcy Rules for the Southern District of New York

(the "**Local Rules**"), and all other applicable laws, rules, and regulations, in each case as

established by the affidavits of service, mailing, and/or publication filed with this Court prior to

the Combined Hearing (collectively, the "**Notice Affidavits**"); and the Court having heard the

statements and arguments made by counsel with respect to approval of the Disclosure Statement

and confirmation of the Prepack Plan; and  no objections to the Prepack Plan or its confirmation,

the Disclosure Statement, or the Solicitation (as defined below) having been filed; and the

appearance of all interested parties having been duly noted in the record of the Combined

Hearing; and upon the record of the Combined Hearing, and after due deliberation thereon and

good and sufficient cause appearing therefor,

## I.    **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

IT IS DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

A.    <u>Findings and Conclusions</u>. The findings and conclusions set forth herein and in

the record of the Combined Hearing constitute the Court's findings of fact and conclusions of

law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by

Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute

conclusions of law, they are adopted as such.  To the extent any of the following conclusions of

law constitute findings of fact, they are adopted as such.

B.    <u>Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))</u>.  The

Court has jurisdiction over this matter and these Chapter 11 Cases pursuant to 28 U.S.C. § 1334.

Approval of the Disclosure Statement and Solicitation and confirmation of the Prepack Plan are

core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L).  This Court has jurisdiction to enter a

final order with respect thereto, and this Court's exercise of such jurisdiction is constitutional in

all respects.  The Court has exclusive jurisdiction to determine whether the Prepack Plan

complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The Debtors are proper

debtors under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the

Prepack Plan under section 1121(a) of the Bankruptcy Code.

C.    <u>Chapter 11 Petitions</u>.  On February 9, 2016 (the "**Petition Date**"), each Debtor

commenced a voluntary case under chapter 11 of the Bankruptcy Code in this Court (the

"**Chapter 11 Cases**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. No statutory committee of unsecured creditors has been appointed pursuant to section 1102 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered pursuant to Bankruptcy Rule 1015(b).

D.     <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, or adduced at the hearings held before the Court during the pendency of the Chapter 11 Cases.

E.     <u>Burden of Proof</u>. The Debtors have the burden of proving all elements of (x) section 1129(a) of the Bankruptcy Code or (y) sections 1129(a) (other than 1129(a)(8)) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence. Each Debtor has met such burden.

F.     <u>Adequacy of Disclosure Statement</u>. The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of all applicable non-bankruptcy law, (b) contains "adequate information" as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code with respect to the Debtors, the Prepack Plan, and the transactions contemplated therein, and (c) is approved in all respects. The filing of the Disclosure Statement with the Clerk of the Court satisfied Bankruptcy Rule 3016(b).

G.     <u>Ballots</u>. The Classes of Claims entitled to vote to accept or reject the Prepack Plan (the "**Voting Classes**") are as follows:

| Class | Designation |
|-------|-------------|
| 3 | Prepetition $20 Million Facility Claims |
| 5 | General Unsecured Claims against Holdings |

The Ballots[3] the Debtors used to solicit votes to accept or reject the Prepack Plan from the holders in the Voting Classes adequately addressed the particular needs of the Chapter 11 Cases and were appropriate for the holders of Claims in the Voting Classes to use to vote to accept or reject the Prepack Plan. No other or further ballots were required.

H.    Prepetition Solicitation.    Prior to the Petition Date, on February 3, 2016, the Debtors, through their solicitation agent, Kurtzman Carson Consultants LLC ("**KCC**" or "**Voting Agent**") caused the Prepack Plan, the Disclosure Statement, and the applicable Ballots (collectively, the "**Solicitation Packages**"), to be transmitted and served in compliance with sections 1125 and 1126 of the Bankruptcy Code, the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Local Rules, the Guidelines, the Scheduling Order, all other applicable provisions of the Bankruptcy Code, and all other applicable rules, laws and regulations applicable to such solicitation. The Solicitation Packages were transmitted to holders of Claims in the Voting Classes. The instructions on the respective Ballots advised parties that (i) for a Ballot to be counted with respect to Claims in Voting Classes 3 or 5, such Ballot would have to be properly completed, signed, and returned so that it was actually received by the Voting Agent by no later than 4:00 p.m. (prevailing New York time) on February 5, 2016 (the "**Voting Deadlines**"). The period of time in which the Debtors solicited acceptances to the Prepack Plan was a reasonable period of time for holders of Claims in the Voting Classes to make an informed decision to accept or reject the Prepack Plan. The Debtors were not required

---

[3] Each Voting Class received different Ballots based upon their respective classification.

to solicit votes from the holders of Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) as such Classes are Unimpaired under the Prepack Plan.  The Debtors were also not required to solicit votes from the holders of Claims and Equity Interests in Class 4 (General Unsecured Claims Against Parent), Class 6 (Intercompany Claims), Class 7 (Equity Interests in Parent) or Class 8 (Equity Interests in Holdings), as those Classes are deemed to reject the Prepack Plan.  Classes 1, 2, 4, 6, 7 and 8 are collectively referred to as the "**Non-Voting Classes**."  As described in, and as evidenced by, the Voting Declaration, the transmittal and service of the Solicitation Packages (the "**Solicitation**") on the Voting Classes was timely, adequate and sufficient under the circumstances and no other or further notice was or shall be required.  The Solicitation of votes on the Prepack Plan complied with the Solicitation Procedures, was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, was conducted in good faith, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and any other applicable rules, laws, and regulations.  The Debtors, the Post-Confirmation Debtors, the Released Parties, and each of their respective affiliates, officers, directors, counsel, advisors, and agents are entitled to the protection of section 1125(e) of the Bankruptcy Code.

I.    Tabulation Results.  On April 15, 2016, the Debtors filed the Voting Declaration, certifying that 100% in amount and 100% in number of holders of Allowed Claims in Class 3 (Prepetition $20 Million Facility Claims) and Class 5 (General Unsecured Claims against Holdings) voted to accept the Prepack Plan.  All procedures used to tabulate the Ballots were fair, reasonable, and complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, and all other

applicable rules, laws, and regulations.    As described below, those that vote to accept the Prepack Plan are automatically deemed to accept the Releases.

J.    <u>Voting</u>.    As evidenced by the Voting Declaration, votes to accept or reject the Prepack Plan have been solicited and tabulated fairly, in good faith, and in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Scheduling Order, the Disclosure Statement, the Guidelines and all applicable non-bankruptcy laws, rules, or regulations.

K.    <u>Compliance with Bankruptcy Rule 3016</u>.    The Prepack Plan is dated and identifies the Entities submitting and filing it, thereby complying with Bankruptcy Rule 3016(a).    The filing of the Disclosure Statement complies with Bankruptcy Rule 3016(b).

L.    <u>Notice</u>.    As evidenced by the Notice Affidavits, due, adequate, and sufficient notice of the Disclosure Statement, the Prepack Plan, the Combined Hearing, the Voting Deadline, and all deadlines for objecting to the Disclosure Statement and the Prepack Plan, has been provided to: (a) the Office of the U.S. Trustee for the Southern District of New York; (b) the Prepetition $20 Million Facility Lenders; (c) counsel to the Prepetition $20 Million Facility Lenders; (d) the Prepetition $20 Million Facility Agent; (e) counsel to the Prepetition $20 Million Facility Agent; (f) the PIK Note Administrative Agent; (g) counsel to the PIK Note Administrative Agent; (h) the Internal Revenue Service; (i) the United States Attorney for the Southern District of New York; and (j) any such other party entitled to notice pursuant to Local Rule 9013-1(b).    Notice of the Combined Hearing was mailed to all known holders of Claims and Equity Interests as of the Petition Date, and was also published in the National Edition of *The New York Times* on February 16, 2016. *See* Notice Affidavits [Docket Nos. 18, 23, 41]. Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code,

Bankruptcy Rules 2002(b) and 3020, the Guidelines and other applicable law and rules, and no other or further notice is or shall be required.

## STANDARDS FOR CONFIRMATION
## UNDER SECTION 1129 OF THE BANKRUPTCY CODE

M.    The Debtors, as proponents of the Prepack Plan, have met their burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for confirmation of the Prepack Plan. The evidentiary record of the Combined Hearing supports the findings of fact and conclusions of law set forth in the following paragraphs.

N.    **Prepack Plan's Compliance with Bankruptcy Code (11 U.S.C. §1129(a)(1)).**    The Prepack Plan complies with each applicable provision of the Bankruptcy Code.  Pursuant to sections 1122(a) and 1123(a)(1) of the Bankruptcy Code, Article III of the Prepack Plan provides for the separate classification of Claims and Equity Interests (other than Administrative Claims, Fee Claims, Priority Tax Claims and statutory fees, which are addressed in Article II of the Prepack Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code) into eight (8) Classes, based on differences in the legal nature or priority of such Claims and Equity Interests.  In particular, the Prepack Plan complies with the requirements of sections 1122 and 1123 of the Bankruptcy Code as follows:

> 1.    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)).  Article III of the Prepack Plan provides for the separate classification of Claims and Equity Interests into eight (8) Classes.  Valid business, factual, and legal reasons exist for the separate classification of such Classes of Claims and Equity Interests.  The classifications reflect no improper purpose and do not unfairly discriminate between, or among, holders of Claims and Equity Interests, respectively.  Each Class of Claims and Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class.  The Prepack Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.       Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Article III of the Prepack Plan specifies that Claims in Class 1 (Other Priority Claims) and Class 2 (Other Secured Claims) are unimpaired under the Prepack Plan within the meaning of section 1123 of the Bankruptcy Code, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.  Additionally, Article II of the Prepack Plan specifies that Allowed Administrative Claims, Fee Claims, Priority Tax Claims and U.S. Trustee fees will be paid in full in accordance with the terms of the Prepack Plan, although these Claims are not classified under the Prepack Plan.

3.       Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Prepack Plan designates Claims in Class 3 (Prepetition $20 Million Facility Claims), Class 4 (General Unsecured Claims Against Parent), Class 5 (General Unsecured Claims Against Holdings), Class 6 (Intercompany Claims), and Equity Interests in Class 7 (Equity Interests in Holdings) and Class 8 (Equity Interests in Parent) as impaired within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

4.       No Discrimination (11 U.S.C. § 1123(a)(4)).  In accordance with section 1123(a)(4) of the Bankruptcy Code, the Prepack Plan provides the same treatment for each Claim or Equity Interest within a particular Class unless the holder of such a Claim or Equity Interest has agreed to less favorable treatment.

5.       Implementation of the Prepack Plan (11 U.S.C. § 1123(a)(5)). In accordance with section 1123(a)(5) of the Bankruptcy Code, the Prepack Plan provides detailed, adequate and proper means for its implementation.

6.       Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)).  The Prepack Plan does not contemplate the issuance of any voting or non-voting equity securities. As a result, section 1123(a)(6) of the Bankruptcy Code is not applicable.

7.       Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). The Prepack Plan does not contemplate the designation of any new directors or officers. The Debtors' current directors and officers will retain their respective roles until the Effective Date of the Plan, at which time the Debtors will be automatically dissolved. As a result, section 1123(a)(7) of the Bankruptcy Code is satisfied.

8.       Impairment/Non-Impairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)).  In accordance with section 1123(b)(1) of the Bankruptcy Code, Article III of the Prepack Plan impairs or leaves Unimpaired, as the case may be, each Class of Claims and Equity Interests.

9.       Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)).  In accordance with section 1123(b)(2) of the Bankruptcy Code, Article VIII of the Prepack Plan provides for the rejection of all Executory Contracts and Unexpired Leases of the Debtors that are not expressly assumed

- 10 -

pursuant to the Prepack Plan or have not been previously assumed, assumed and assigned or rejected pursuant to section 365 of the Bankruptcy Code.

10.      Settlement and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)). In accordance with section 1123(b)(3) of the Bankruptcy Code and pursuant to Bankruptcy Rule 9019, the Prepack Plan provides for the good faith compromise and settlement of all claims by and among the (a) Debtors and the Post-Effective Date Debtors, (b) the Supporting PIK Noteholders, (c) the Prepetition $20 Million Facility Agent, (d) the Prepetition $20 Million Facility Lenders, (e) the PIK Administrative Agent, and (f) the parties to the Transaction Support Agreement, including any joinder thereto, in any way relating to the Debtors or their business and affairs, the Formerly Owned Operating Businesses or their businesses and affairs, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Disclosure Statement, the Transaction Support Agreement, the Transactions (as defined in the Transaction Support Agreement), including, without limitation actions taken during the Forbearance and Marketing Period and/or in connection with the Collateral Agent Stock Turnover, the Escrow Agreement, the PIK Notes Agency Agreements, the Prepack Plan or agreements, instruments, or other documents related to any of the foregoing. Article VI.E of the Prepack Plan further provides, in accordance with section 1123(b)(3) of the Bankruptcy Code, that the Post-Effective Date Debtors will, except as expressly provided in the Prepack Plan, retain all Causes of Action, and have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Cause of Action or to decline to do any of the foregoing without further notice to or action, order or approval of the Court.

11.      Modification of Rights (11 U.S.C. § 1123(b)(5)). In accordance with section 1123(b)(5) of the Bankruptcy Code, Article III of the Prepack Plan modifies or leaves unaffected, as the case may be, the rights of certain holders of Claims and Equity Interests in Classes 1 through 8.

12.      Additional Prepack Plan Provisions (11 U.S.C. § 1123(b)(6)). In accordance with section 1123(b)(6) of the Bankruptcy Code, the Prepack Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code.

13.      Debtors Are Not Individuals (11 U.S.C. § 1123(c)). The Debtors are not individuals and section 1123(c) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

14.      Cure of Defaults (11 U.S.C. § 1123(d)). In accordance with section 1123(d) of the Bankruptcy Code, Article VIII of the Prepack Plan provides for the satisfaction of Cure Claims associated with each Executory Contract or Unexpired Lease to be assumed pursuant to the Prepack Plan in accordance with section 365(b)(1) of the Bankruptcy Code. All Cure Claims will be determined in accordance with the underlying agreements and applicable law.

O.    **Prepack Plan Proponents Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**  The Debtors, as plan proponents, have complied with all applicable provisions of the Bankruptcy Code.  Specifically:

1.     Each of the Debtors is an eligible debtor under section 109 of the Bankruptcy Code;

2.     The Debtors have complied with the applicable provisions of the Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local Rules, the Guidelines, the Scheduling Order, applicable non-bankruptcy law, and all other applicable laws, rules, and regulations in transmitting the Solicitation Packages, and related documents and notices and in soliciting and tabulating the votes on the Prepack Plan; and

3.     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Court.

P.    **Prepack Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**  The Prepack Plan has been proposed in good faith and not by any means forbidden by law.  The Prepack Plan is based upon the Transaction Support Agreement entered into by the Debtors and the parties signatory thereto on May 21, 2015, as amended on December 31, 2015, and the Court approves the assumption of the Transaction Support Agreement as being within the Debtors' reasonable business judgment.  To implement the terms of the Transaction Support Agreement and the Prepack Plan, the Debtors filed the Chapter 11 Cases with the honest belief that the consensual process set forth in the Transaction Support Agreement and the Prepack Plan was the best mechanism available to the Debtors to effect the terms of the Transaction Support Agreement, to distribute the Transaction Consideration, and to wind down and dissolve the Debtors.  The Debtors' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Prepack Plan, the record of the Combined Hearing and the other proceedings in these Chapter 11 Cases.  The Prepack Plan fairly achieves a result consistent with

- 12 -

the objectives and purposes of the Bankruptcy Code, including the provisions of the Bankruptcy

Code favoring consensual restructuring such as "prepackaged" chapter 11 cases.  In so finding,

the Court has considered the totality of the circumstances in these Chapter 11 Cases.   The

Prepack Plan is the result of extensive good faith, arm's-length negotiations between the Debtors

and certain of their principal constituencies, including the Prepetition $20 Million Facility

Lenders, the Prepetition $20 Million Facility Agent, and the PIK Note Administrative Agent,

among others, and, as evidenced by the unanimous acceptance of the Prepack Plan by the Voting

Classes, achieves the goal of consensual restructuring embodied by the Bankruptcy Code.   The

Debtors and each of their respective officers, directors, employees, advisors and professionals (i)

acted in good faith in negotiating, formulating, and proposing, where applicable, the Prepack

Plan and the agreements, compromises, settlements, and transactions contemplated thereby, and

(ii) will be acting in good faith in proceeding to (a) consummate the Prepack Plan and the

agreements, compromises, settlements, and transactions contemplated by the Prepack Plan, and

(b) take any actions authorized and directed or contemplated by this Confirmation Order.  Thus,

the Prepack Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

Q.    **Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

The procedures set forth in the Prepack Plan for the Court's review and ultimate determination

of the fees and expenses to be paid by the Debtors in connection with the Chapter 11 Cases, or

in connection with the Prepack Plan and incident to the Chapter 11 Cases, including but not

limited to Fee Claims satisfy the objectives of, and are in compliance with, section 1129(a)(4)

of the Bankruptcy Code.

R.    **Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**        The

Prepack Plan does not contemplate the appointment of any new directors or officers for the

Debtors. The Debtors' current directors and officers, who are each serving without compensation, will retain their respective roles until the Effective Date, upon which the Debtors will be deemed dissolved pursuant to the Prepack Plan. Accordingly, the Debtors have complied with section 1129(a)(5) of the Bankruptcy Code to the extent applicable.

S. **No Rate Changes (11 U.S.C. § 1129(a)(6)).** Bankruptcy Code section 1129(a)(6) is not applicable to these Chapter 11 Cases. The Prepack Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

T. **Best Interest of Creditors (11 U.S.C. § 1129(a)(7)).** As more fully described in the the Disclosure Statement and established by the O'Connell Declaration, each holder of an Allowed Claim or Equity Interest in an Impaired Class either (a) has accepted the Prepack Plan or (b) will receive or retain under the Prepack Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date of the Prepack Plan, that is not less than the amount that it would have received if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date. The O'Connell Declaration filed and received into the evidentiary record of the Combined Hearing is reasonable, persuasive, accurate and credible, and has not been controverted by any other evidence.

U. **Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).** Classes 1 (Other Priority Claims) and 2 (Other Secured Claims) are Unimpaired and are conclusively presumed to have accepted the Prepack Plan under section 1126(f) of the Bankruptcy Code. As set forth in the Voting Declaration, Classes 3 (Prepetition $20 Million Facility Claims) and 5 (General Unsecured Claims against Holdings) have voted unanimously to accept the Prepack Plan. The Prepack Plan has not been accepted by all Impaired Classes because the holders of Claims in Classes 4 (General Unsecured Claims against Parent) and 6 (Intercompany Claims),

and Equity Interests in Classes 7 (Equity Interests in Holdings) and 8 (Equity Interests in Parent) are deemed to have rejected the Prepack Plan. Nevertheless, the Prepack Plan is confirmable because it does not discriminate unfairly and is fair and equitable with respect to Classes 4, 6, 7 and 8 and thus satisfies section 1129(b)(1) of the Bankruptcy Code (as set forth in paragraph BB below).

V. **Treatment of Administrative Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)).** The Prepack Plan provides treatment for Administrative Claims, Priority Tax Claims and Other Priority Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

W. **Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).** As evidenced by the Voting Declaration, the Prepack Plan has been accepted by two (2) classes of Impaired Claims that are entitled to vote on the Prepack Plan (i.e., Classes 3 (Prepetition $20 Million Facility Claims), and 5 (General Unsecured Claims against Holdings)), determined without including any acceptance of the Prepack Plan by any "insider" (as that term is defined in section 101(31) of the Bankruptcy Code).

X. **Feasibility (11 U.S.C. § 1129(a)(11)).** The Prepack Plan is feasible, within the meaning of section 1129(a)(11) of the Bankruptcy Code. Confirmation of the Prepack Plan is not likely to be followed by the liquidation or further financial reorganization of the Post-Effective Date Debtors or any successor to the Post-Effective Date Debtors under the Prepack Plan because substantially all of the assets of the Debtors have already been liquidated and reduced to Cash pursuant to the Transaction Support Agreement and the Prepack Plan.

Y.   **Payment of Certain Fees (11 U.S.C. § 1129(a)(12)).** The Prepack Plan

provides that fees payable pursuant to 28 U.S.C. § 1930 plus interest pursuant to 31 U.S.C. §

3717 and due and owing to the U.S. Trustee at the time of the Combined Hearing will be paid

by the Debtors on or before the Effective Date. After the Effective Date, the Post-Effective

Date Debtors will pay the quarterly fees plus interest pursuant to 31 U.S.C. § 3717 due to the

U.S. Trustee for the Debtors and Post-Effective Date Debtors until the entry of a final decree in

the Chapter 11 Cases or until the Chapter 11 Cases are converted or dismissed.

Z.   **Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).**   The

Debtors have no obligations to provide retiree benefits to any persons. As a result, section

1129(a)(13) of the Bankruptcy Code is not applicable.

AA.   **Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(14), (15)**

**and (16).**   Sections 1129(a)(14), (15) and (16) of the Bankruptcy Code do not apply to the

Chapter 11 Cases as the Debtors owe no domestic support obligations, are not individuals and

are not nonprofit corporations.

BB.   **No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).**

The Prepack Plan satisfies section 1129(b) of the Bankruptcy Code with respect to each of the

non-accepting Impaired Classes.   The evidence proffered or adduced at, or prior to, the

Combined Hearing is persuasive and credible, has not been controverted by other credible

evidence, and establishes that the Prepack Plan does not discriminate unfairly and is fair and

equitable with respect to each Class of Claims and Equity Interests that are deemed to reject

the Plan.

First, the Prepack Plan does not discriminate unfairly with respect to any class of Claims

or Equity Interests. Each Class of Claims and Equity Interests is treated substantially equally

with respect to similarly situated classes under the Prepack Plan, and no class is receiving more than it is legally entitled to receive for its Claims or Interests.

Second, in the case of Holdings, section 1129(b)(2)(B) of the Bankruptcy Code is satisfied with respect to Class 6 Intercompany Claims because no holder of any claim or interest that is junior to Class 6 Intercompany Claims at Holdings will receive or retain any property on account of such junior claim. Section 1129(b)(2)(C) of the Bankruptcy Code is satisfied with respect to Class 7 Equity Interests in Holdings because there is no holder of any interest in Holdings that is junior to Class 7.

Third, in the case of Parent, all holders of claims and interests are structurally subordinate to the holders of claims and interests in Holdings as a result of the Debtors' capital structure. Section 1129(b)(2)(B) of the Bankruptcy Code is satisfied with respect to Class 4 General Unsecured Claims against Parent because no holder of a claim or interest that is junior to Class 4 General Unsecured Claims against Parent will receive or retain any property under the Prepack Plan. Section 1129(b)(2)(B) of the Bankruptcy Code is satisfied with respect to Class 6 Intercompany Claims at Parent because no holder of any claim or interest that is junior to Class 6 Intercompany Claims at Parent will receive or retain any property under the Prepack Plan. Section 1129(b)(2)(C) of the Bankruptcy Code is satisfied as to Class 8 Equity Interests in Parent because there is no holder of any interest in Parent that is junior to Class 8.

Thus, the Prepack Plan may be confirmed notwithstanding the deemed rejection of the Prepack Plan with respect to the Debtor Holdings by Class 6 Intercompany Claims at Holdings and Class 7 Equity Interests in Holdings, and with respect to the Debtor Parent, the deemed rejection of the Prepack Plan by Class 4 General Unsecured Claims against Parent, Class 6 Intercompany Claims at Parent, and Class 8 Equity Interests in Parent.

CC. **Only One Plan (11 U.S.C. § 1129(c)).** The Prepack Plan is the only chapter 11 plan filed in the Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code has been satisfied.

DD. **Principal Purpose of the Prepack Plan (11 U.S.C. § 1129(d)).** No party in interest has requested that the Court deny Confirmation of the Prepack Plan on the grounds that the principal purpose of the Prepack Plan is the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and the principal purpose of the Prepack Plan is not such avoidance. Accordingly, the Prepack Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

EE. **Small Business Case (11 U.S.C. § 1129(e)).** Neither of the Chapter 11 Cases is a small business case within the meaning of the Bankruptcy Code. Accordingly, section 1129(e) of the Bankruptcy Code is inapplicable to these Chapter 11 Cases.

FF. **Good Faith Solicitation (11 U.S.C. § 1125(e)).** Based on the record before the Court in these Chapter 11 Cases, including evidence presented at the Combined Hearing, the Debtors and the other Released Parties in each case in their capacities as such, have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Guidelines, and any applicable non-bankruptcy law, rule, or regulation in connection with all of their respective activities relating to the Prepack Plan, including, as may be applicable to them, the execution, delivery and performance of the Transaction Support Agreement and solicitation of acceptances of the Prepack Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

GG.  **Modification of the Prepack Plan (11 U.S.C. § 1127(a))**.  Pursuant to and in compliance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3018, the Debtors proposed certain modifications to the Prepack Plan as reflected in the amended version of the Prepack Plan filed with the Court prior to entry of this Confirmation Order (the "**Prepack Plan Modifications**").  In accordance with Bankruptcy Rule 3019, the Prepack Plan Modifications do not (1) affect the classification of Claims or Equity Interests, (2) constitute material modifications of the Prepack Plan under section 1127 of the Bankruptcy Code, (3) cause the Prepack Plan to fail to meet the requirements of sections 1122 or 1123 of the Bankruptcy Code, (4) materially and adversely change the treatment of any Claims or Equity Interests, (5) require resolicitation of any holders of Claims or Equity Interests, or (6) require that any such holders be afforded an opportunity to change previously cast acceptances or rejections of the Prepack Plan.  Under the circumstances, no other or further notice of the proposed Prepack Plan Modifications is necessary or required.

HH.  **Satisfaction of Confirmation Requirements**.  Based upon the foregoing and all other pleadings and evidence proffered or adduced at or prior to the Combined Hearing, the Prepack Plan and the Debtors as proponents of the Prepack Plan satisfy the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

II.  **Retention of Jurisdiction**.  Subject to the terms of Article VII of the Prepack Plan, upon the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases, including the matters set forth in Article VII of the Prepack Plan and section 1142 of the Bankruptcy Code.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

JJ.    Article VIII of the Prepack Plan provides, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, for the rejection of all Executory Contracts and Unexpired Leases not expressly assumed pursuant to the Prepack Plan or previously assumed, assumed and assigned, or rejected.  The Debtors' determinations regarding the assumption and rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Prepack Plan and are in the best interests of the Debtors, their Estates, holders of Claims and other parties in interest in the Chapter 11 Cases.

## GLOBAL SETTLEMENT UNDER THE PLAN

KK.  The provisions of the Prepack Plan, as discussed in detail in the Disclosure Statement, constitute a good-faith compromise and settlement pursuant to Bankruptcy Rule 9019 and section 1123 of the Bankruptcy Code, among the (a) Debtors and the Post-Effective Date Debtors, (b) the Supporting PIK Noteholders, (c) the Prepetition $20 Million Facility Agent, (d) the Prepetition $20 Million Facility Lenders, (e) the PIK Administrative Agent, and (f) the parties to the Transaction Support Agreement, including any joinder thereto, of all claims in any way relating to the Debtors or their business and affairs, the Formerly Owned Operating Businesses or their businesses and affairs, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Disclosure Statement, the Transaction Support Agreement, the Transactions (as defined in the Transaction Support Agreement), including, without limitation actions taken during the Forbearance and Marketing Period and/or in connection with the Collateral Agent Stock Turnover, the Escrow Agreement, the PIK Notes Agency Agreements, the Plan or agreements, instruments, or other documents

- 20 -

related to any of the foregoing.  The entry of this Confirmation Order constitutes the Court's approval of all of the foregoing compromises and settlements embodied in the Prepack Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, their Estates, creditors, and other parties-in-interest, and are fair, equitable, and within the range of reasonableness.  The provisions of the Prepack Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  In the event that, for any reason, the Effective Date does not occur, the Debtors and the other Released Parties reserve all of their respective rights with respect to any and all disputes resolved and settled under the Prepack Plan.

LL.    In reaching its decision on the substantive fairness of the compromises and settlements contained in the Prepack Plan, the Court considered the following factors:  (i) the balance between the probability of success of potential litigations and the future benefits of such compromises and settlements; (ii) the likelihood of complex and protracted litigation and the risk and difficulty of collecting on the judgment; (iii) the proportion of creditors and parties in interest that support the compromises and settlements; (iv) the competency of counsel; (v) the nature and breadth of releases to be granted to officers and directors; and (vi) the extent to which the compromises and settlements are the product of arm's-length bargaining.  The Court finds that these factors each weigh in favor of approving the compromises and settlements embodied in the Prepack Plan.  The Court also considered the purposes of a "prepackaged" chapter 11 case and the negative impact and disruption upon the Debtors' Estates arising from a nonconsensual bankruptcy.

## RELEASES, EXCULPATIONS AND INJUNCTIONS OF RELEASED PARTIES

MM. The release, injunction and exculpation provisions contained in the Prepack Plan (collectively, the "**Releases**") constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for consideration and (i) are in the best interests of the Debtors, their Estates and holders of Claims and Equity Interests; (ii) are fair, equitable, and reasonable; and (iii) are integral elements of the resolution of the Chapter 11 Cases in accordance with the Prepack Plan.  The failure to approve the Releases would seriously impair the Debtors' ability to confirm the Prepack Plan. Each provision of the Releases (i) is within the jurisdiction of the Court under 28 U.S.C. § 1334; (ii) is an essential means of implementing the Prepack Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; (iii) is an integral element of the settlements and transactions incorporated into the Prepack Plan; (iv) confers a material benefit on, and is in the best interests of, the Debtors, their estates, and holders of Claims and Equity Interests; (v) is important to the overall objectives of the Prepack Plan to finally resolve all Claims and Equity Interests among or against the parties in interest in the Chapter 11 Cases; and (vi) is consistent with sections 105, 1123 and 1129 of the Bankruptcy Code and all other applicable law.

NN.  Each non-Debtor Released Party that will benefit from the Releases either shares an identity of interest with the Debtors, was instrumental to the successful prosecution of the Chapter 11 Cases, and/or provided a substantial contribution to the Debtors, which value provided a significant benefit to the Debtors' Estates, and which will allow for distributions that would not otherwise be available to the Debtors' creditors but for the contributions made by such non-Debtor parties.

OO.  The Releases are, individually and collectively, integral to, and necessary for the successful implementation of, the Prepack Plan, essential to the Debtors' restructuring and supported by substantial consideration.  Releases of non-Debtor parties pursuant to Article V.K of the Prepack Plan are subject to the terms of the Prepack Plan.  Such Releases are binding upon (a) each of the Released Parties; (b) holders of Unimpaired Claims; (c), holders of Impaired Claims that voted to accept the Plan; and (d) with respect to the foregoing Persons in (a) through (c), such Person's current subsidiaries, officers, directors, principals, members, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, equity holders, partners, and other professionals, in each case solely in their capacity as such.  The Ballots explicitly stated the following: (a) those that vote to accept the Prepack Plan are automatically deemed to accept the Releases; (b) those who submit a Ballot voting to reject the Prepack Plan will be deemed not to have accepted the Releases; and (c) those that elect not to return a Ballot will be deemed not to have accepted the Releases.

PP.    Those holders of Claims submitting a Ballot voting to accept the Prepack Plan were given due and adequate notice that they would be consenting to the Prepack Plan Releases by acting in such a manner.  The Releases were also disclosed and explained on the Ballots, in the Disclosure Statement and Prepack Plan, and in the Combined Hearing Notice. Accordingly, in light of all of the circumstances, the Releases satisfy the applicable standards contained in In re Metromedia Fiber Network, Inc., 416 F.3d 136 (2d Cir. 2005), are fair to the releasing parties, and are otherwise appropriate under In re Johns-Manville Corp., 600 F.3d 135 (2d Cir. 2010).

## II.    ORDER

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.    **Solicitation.**    The Solicitation Procedures, Solicitation Packages, and the Solicitation were appropriate and satisfactory and were in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines.

2.    **Ballots.**    The forms of Ballots annexed to the Scheduling Motion are adequate and appropriate, are in compliance with Bankruptcy Rule 3018(c) and the Guidelines, conform to Official Form No. B 314, and are approved in all respects.  No other ballots are or were required.

3.    **Notice to Non-Voting Classes.**    The transmittal of the Combined Notice to all known members of the Non-Voting Classes was appropriate and satisfactory and was in compliance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the Guidelines.  No further notice to, or solicitation of votes to accept or reject the Prepack Plan from, the Non-Voting Classes was necessary.

4.    **The Disclosure Statement.**    The Disclosure Statement (a) contains adequate information of a kind generally consistent with the disclosure requirements of applicable non-bankruptcy law, (b) contains "adequate information" (as such term is defined in section 1125(a)(1) and used in section 1126(b)(2) of the Bankruptcy Code) with respect to the Debtors, the Prepack Plan, and the transactions contemplated therein, and (c) is approved in all respects.

5.    **Confirmation of the Prepack Plan.**    The Prepack Plan and each of its provisions (whether or not specifically approved herein) is and are CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code, and the terms of the Prepack

Plan are incorporated by reference into, and are an integral part of, this Confirmation Order. The Effective Date of the Prepack Plan shall occur on the date determined by the Debtors when the conditions set forth in Article IX.A of the Prepack Plan have been satisfied or, if applicable, have been waived in accordance with Article IX.B of the Prepack Plan.  The failure to specifically include or refer to any particular article, section or provision of the Prepack Plan in this Confirmation Order shall not diminish or impair the effectiveness of such article, section or provision, it being the intent of the Court that this Confirmation Order confirms the Prepack Plan in its entirety.

6. **No Action Required.**  Under the provisions of applicable non-bankruptcy law and section 1142(b) of the Bankruptcy Code, no action of the respective directors, stockholders, managers, or members of the Debtors is required to authorize the Debtors to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Prepack Plan and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Prepack Plan.

7. **Prepack Plan Classification Controlling.**  The terms of the Prepack Plan shall govern the classification of Claims and Equity Interests for purposes of the distributions to be made thereunder.

8. **Order Binding on All Parties.**  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Prepack Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Prepack Plan), all Persons that are parties to or are subject to the

settlements, compromises, releases, and injunctions described in the Prepack Plan, each

Person acquiring property under the Prepack Plan, and any and all non-Debtor parties to

Executory Contracts and Unexpired Leases with any Debtor, and the respective heirs,

executors, administrators, trustees, affiliates, officers, directors, agents, representatives,

attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.  On the

Effective Date, all settlements, compromises, releases (including, without limitation, the

Releases), waivers, exculpations, and injunctions set forth in the Prepack Plan shall be effective

and binding on all Persons.

9.    **Other Essential Documents and Agreements.**  The Debtors, and after

the Effective Date, the Post-Effective Date Debtors, are authorized, without further approval of

this Court or any other party, to execute and deliver all agreements, documents, or instruments

necessary to effectuate the Prepack Plan, including, without limitation, any amendment or

modification of such documents in accordance with their terms and applicable non-bankruptcy

law and the payment of all fees due thereunder or in connection therewith.

10.    **Automatic Dissolution Upon Effective Date.**  Except as otherwise

provided in the Prepack Plan or herein, on the Effective Date, the Debtors shall be deemed

dissolved and shall not be required to take any further steps with respect to such dissolution.

The Post-Effective Date Debtors may, but shall not be required to, take steps as deemed

desirable to wind up the Debtors' affairs and prepare appropriate dissolution filings, and file all

appropriate tax returns.

11.    **General Settlement of Claims and Equity Interests.**  As an element of,

and in consideration for, an overall negotiated settlement of all Claims and issues embodied in

the Prepack Plan, the provisions of the Prepack Plan shall, upon consummation, constitute a

good-faith compromise and settlement, pursuant to Bankruptcy Rule 9019 and section 1123 of

the Bankruptcy Code, among (a) Debtors and the Post-Effective Date Debtors, (b) the

Supporting PIK Noteholders, (c) the Prepetition $20 Million Facility Agent, (d) the Prepetition

$20 Million Facility Lenders, (e) the PIK Administrative Agent, and (f) the parties to the

Transaction Support Agreement, including any joinder thereto, of all claims in any way relating

to the Debtors or their business and affairs, the Formerly Owned Operating Businesses or their

businesses and affairs, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or

sale of any security of the Debtors, the Disclosure Statement, the Transaction Support

Agreement, the Transactions (as defined in the Transaction Support Agreement), including,

without limitation actions taken during the Forbearance and Marketing Period and/or in

connection with the Collateral Agent Stock Turnover, the Escrow Agreement, the PIK Notes

Agency Agreements, the Plan or agreements, instruments, or other documents related to any of

the foregoing.  In the event that, for any reason, the Effective Date does not occur, the Debtors

and the Post-Effective Date Debtors, the Supporting PIK Noteholders, the Prepetition $20

Million Facility Agent, the Prepetition $20 Million Facility Lenders, the PIK Administrative

Agent, and the parties to the Transaction Support Agreement shall retain all of their respective

rights with respect to any and all disputes resolved and settled under the Prepack Plan.

12.    Pursuant to section 1141(d) of the Bankruptcy Code, and except as

otherwise specifically provided in the Prepack Plan, or in any contract, instrument or other

agreement or document created pursuant to the Prepack Plan, the distributions, rights and

treatment that are provided in the Prepack Plan shall be in complete satisfaction and release of

Claims, Equity Interests and Causes of Action of any nature whatsoever, including any interest

accrued on Claims or Equity Interests from and after the Petition Date, whether known or

unknown, against, liabilities of, Liens on, obligations of, rights against and Equity Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Prepack Plan on account of such Claims and Equity Interests, including demands, liabilities and Causes of Action that arose before the Effective Date, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the Bankruptcy Code, in each case whether or not: (i) a Proof of Claim based upon such debt, right or Equity Interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code; (ii) a Claim or Equity Interest based upon such debt, right or Equity Interest is Allowed; or (iii) the holder of such a Claim or Equity Interest has accepted the Prepack Plan or is entitled to receive a distribution hereunder. Any default by the Debtors or their affiliates with respect to any Claim or Equity Interest that existed immediately before or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.

13. **Injunction.** The Prepack Plan injunction provisions set forth in Article V.D of the Prepack Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Prepack Plan without further order or action on the part of the Court or any other party.

14. From and after the Effective Date, all persons are permanently enjoined from commencing or continuing in any manner, any Cause of Action released pursuant to the Prepack Plan or this Confirmation Order.

15. From and after the Effective Date, to the extent of the Releases and Exculpation granted in Article V of the Prepack Plan, the Releasing Parties shall be permanently enjoined from commencing or continuing in any manner against the Released

- 28 -

Parties and their assets and properties, as the case may be, any suit, Cause of Action, or other

proceeding, on account of or respecting any Claim, demand, liability, obligation, debt, right,

Cause of Action, Equity Interest or remedy released or to be released pursuant to Article V of

the Prepack Plan or this Confirmation Order.

16.    Except as otherwise expressly provided in the Prepack Plan, all Persons

who have held, hold or may hold Claims or Equity Interests that have been released pursuant to

Article V.K.1 and Article V.K.2 or are subject to exculpation pursuant to Article V.K.3 are

permanently enjoined, from and after the Effective Date, from taking any of the following

actions: (i) commencing or continuing in any manner any action or other proceeding of any kind

on account of or in connection with or with respect to any such Claims or Equity Interests; (ii)

enforcing, attaching, collecting, or recovering by any manner or means any judgment, award,

decree or order against such Released Parties on account of or in connection with or with

respect to any such Claims or Equity Interests; (iii) creating, perfecting, or enforcing any

encumbrance of any kind against such Released Parties or the property or estate of such

Released Parties on account of or in connection with or with respect to any such Claims or

Equity Interests; (iv) asserting any right of setoff or subrogation of any kind against any

obligations due from the Debtors or the Post-Effective Date Debtors or against the property or

interests in property of the Debtors on account of any such Claim; and (v) commencing or

continuing in any manner any action or other proceeding of any kind on account of or in

connection with or with respect to any such Claims or Equity Interests released, settled or

discharged pursuant to the Prepack Plan.

17.    The rights afforded in the Prepack Plan and the treatment of all Claims

and Equity Interests therein shall be in exchange for and in complete satisfaction of all Claims

and Equity Interests of any nature whatsoever, including any interest accrued on Claims from and after the Petition Date, against the Debtors or any of their assets, property or Estates. On the Effective Date, all such Claims against the Debtors shall be fully released except as otherwise expressly provided for in the Prepack Plan.

18.    Except as otherwise expressly provided for herein or in the Prepack Plan, all Claims against the Debtors shall be fully released, and all Equity Interests shall be cancelled, and the Debtors' liability with respect thereto shall be extinguished completely, including any liability of the kind specified under section 502(g) of the Bankruptcy Code.

19.    Except as otherwise expressly provided herein or in the Prepack Plan, all persons shall be precluded from asserting against the Debtors, the Debtors' Estates, the Post-Effective Date Debtors, each of their respective successors and assigns, and each of their assets and properties, and each of the Released Parties, any other Claims or Equity Interests based upon any documents, or instruments or any act or omission, transaction or other activity of any kind or nature that occurred before the Effective Date.

20.    **Releases and Exculpations of Released Parties.**

(a)    The Releases set forth in Article V of the Prepack Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date of the Prepack Plan without further order or action on the part of the Court, any of the parties to such Releases or any other party.

(b)    **Releases by the Debtors.**    On the Effective Date, and notwithstanding any other provisions of the Prepack Plan, the Debtors and the Post-Effective Date Debtors, on behalf of themselves and their Estates, shall be deemed to unconditionally release the Released Parties from any and all claims, obligations, suits, judgments, damages,

rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, assertable on behalf of or derivative from the Debtors, based in whole or in part upon actions taken <u>solely</u> in their respective capacities described herein or any omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtors or their business and affairs, the Formerly Owned Operating Businesses or their businesses and affairs, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Disclosure Statement, the Transaction Support Agreement, the Transactions (as defined in the Transaction Support Agreement), including, without limitation actions taken during the Forbearance and Marketing Period and/or in connection with the Collateral Agent Stock Turnover, the Escrow Agreement, the PIK Notes Agency Agreements, the Prepack Plan or agreements, instruments, or other documents related to any of the foregoing, <u>provided</u>, <u>however</u>, that (a) no individual shall be released from any act or omission that constitutes fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any) as determined by a Final Order, (b) the Post-Effective Date Debtors shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any Claims of any such persons asserted against the Debtors, (c) nothing herein shall operate as a waiver or release of any claims held by the Debtors against the Released Parties for the enforcement of the Transaction Support Agreement and any subordination provisions therein; <u>provided</u>, <u>however</u>, that any claims for actions or inactions taken by the Released Parties relating to the marketing of the Debtors, the Formerly Owned Operating Businesses and/or their respective assets during the Forbearance and Marketing Period and for the Collateral Agent Stock Turnover are released as set forth in this section; and (d) the

foregoing release applies to the Released Parties solely in their respective capacities described herein.

(c)    **Releases by Holders of Claims.**  To the fullest extent permissible under applicable law, and except as otherwise provided in the Prepack Plan or the Confirmation Order, on and after the Effective Date, the Releasing Parties shall be deemed to unconditionally release the Released Parties and their respective property from any and all Claims, debts, obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, at law, in equity, or otherwise, they hold that are in connection with any of the Debtors and their business and affairs, the Formerly Owned Operating Businesses and their business and affairs, the  Debtors' respective Estates, Assets or properties, the Transactions (as defined in the Transaction Support Agreement), the Prepack Plan, or these Chapter 11 Cases; provided, however, that the foregoing releases by the Releasing Parties shall not operate to waive or release any Released Party on account of liability that is judicially determined pursuant to a Final Order to have resulted from such Released Party's fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any).

(d)    **Exculpation.**  The Debtors and the other Released Parties (i) shall have no liability whatsoever to any holder or purported holder of an Administrative Claim, Claim, or Equity Interest for any act or omission that occurred prior to, during and/or in connection with the Chapter 11 Cases and/or in connection with, or arising out of the preparation and filing of the Chapter 11 Cases, the events and circumstances leading up to the Chapter 11 Cases, the Transaction Support Agreement (including without limitation, negotiation and implementation thereof), the Transactions (as defined in the Transaction Support Agreement),

16-10300-mew    Doc 48    Filed 04/15/16    Entered 04/15/16 13:47:13    Main Document
Pg 36 of 99


including, but not limited to, the prepetition marketing of the Debtors and the Formerly Owned

Operating Businesses and/or the Collateral Agent Stock Turnover, and the Escrow Agreement,

the PIK Notes Agency Agreements, the preparation, negotiation, and filing of the Prepack Plan,

the Disclosure Statement, the pursuit of approval of the Disclosure Statement or the solicitation

of votes for confirmation of the Prepack Plan, the Chapter 11 Cases, the consummation of the

Prepack Plan, the administration of the Prepack Plan or the property to be distributed under the

Prepack Plan, or any transaction contemplated by the Prepack Plan, the Disclosure Statement, the

Transaction Support Agreement, or the Escrow Agreement, and any agreements, instruments or

other documents related to any of the foregoing, or in furtherance thereof, except for any act or

omission that constitutes fraud, willful misconduct, gross negligence or breach of fiduciary duty

(if any) as determined by a Final Order, and (ii) in all respects, shall be entitled to rely upon the

advice of counsel with respect to their duties and responsibilities under the Prepack Plan.  For the

avoidance of doubt, nothing herein shall operate as a waiver or release of any claims held by the

Debtors against the Released Parties for the enforcement of the Transaction Support Agreement

and any subordination provisions therein; provided, however, that any claims for actions or

inactions taken by the Released Parties relating to the marketing of the Debtors, the Formerly

Owned Operating Businesses and/or their respective assets during the Forbearance and

Marketing Period and for the Collateral Agent Stock Turnover are released as set forth in this

section. This exculpation shall be in addition to, and not in limitation of, all other releases,

indemnities, exculpations and any other applicable law or rules protecting such Released Parties

from liability.  Without limiting the generality of the foregoing, the Released Parties shall be

entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.

Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an

Administrative Claim, Claim or Equity Interest shall be permitted to commence or continue any

Cause of Action, employment of process, or any act to collect, offset, or recover any Claim

against a Released Party that accrued on or before the Effective Date and that has been released

or waived pursuant to the Prepack Plan.  Notwithstanding anything herein to the contrary, no

Released Party shall be exculpated from any liability resulting from any act or omission that

limits the liability of any Person pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.8 Rule

1.8(h)(1) (2009) as determined by Final Order and any other statutes, rules or regulations dealing

with professional conduct to which such professionals are subject; provided that each Released

Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant

to, or in connection with, the Prepack Plan or any other related document, instrument, or

agreement; provided, however, that any party seeking to assert such a claim against any such

attorney must first seek relief, on proper notice, from the Bankruptcy Court.

       (e)       **Liabilities to, and Rights of, Governmental Units.**  As to the

United States of America, its agencies, departments, or agents (collectively, the "**United

States**"), nothing in the Prepack Plan or this Confirmation Order shall limit or expand the scope

of the release or injunction to which the Debtors or Post-Effective Date Debtors are entitled to

under the Bankruptcy Code.  The release, injunction and exculpation provisions contained in the

Prepack Plan and this Confirmation Order are not intended and shall not be construed to bar the

United States from, subsequent to entry of this Confirmation Order, pursuing any police or

regulatory action, except to the extent those release and injunctive provisions bar a

Governmental Unit from pursuing Claims.

       Notwithstanding anything contained in the Prepack Plan or this Confirmation

Order to the contrary, nothing in the Prepack Plan or this Confirmation Order shall discharge,

release, impair or otherwise preclude: (1) any liability to a Governmental Unit under environmental law that is not a Claim; (2) any Claim of a Governmental Unit arising on or after the Effective Date; (3) any valid right of set-off or recoupment of the United States against a Debtor; or (4) any liability of the Debtors or Post-Effective Date Debtors under environmental law to any Governmental Unit as the owner or operator of property that such Entity owns or operates after the Effective Date, except those obligations to reimburse costs expended or paid by a Governmental Unit before the Effective Date or to pay penalties owing to a Governmental Unit for violations of environmental laws or regulations that occurred before the Effective Date; provided that the Debtors and Post-Effective Date Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities.  Nor shall anything in the Prepack Plan or this Confirmation Order: (i) enjoin or otherwise bar the United States or any Governmental Unit from asserting or enforcing, outside the Court, any liability described as not discharged in the preceding sentence, provided that the Debtors and Post-Effective Date Debtors reserve all of their rights and defenses under applicable law with respect to any such Claims or Liabilities; or (ii) divest any court of jurisdiction to determine whether any liabilities asserted by the United States or any Governmental Unit are discharged or otherwise barred by the Prepack Plan, this Confirmation Order, or the Bankruptcy Code.

Moreover, nothing in the Prepack Plan or this Confirmation Order shall release or exculpate any non-Debtor, including any Released Parties, from any liability to the United States, including but not limited to any liabilities arising under the Internal Revenue Code, the environmental laws, or the criminal laws against the Released Parties, nor shall anything in the Prepack Plan or this Confirmation Order enjoin the United States from bringing any claim, suit, action or other proceeding against the Released Parties for any liability whatsoever.

21. **Indemnification Obligations.**    Subject to Article IV(J) of the Prepack Plan, on and after the Effective Date, the Debtors and Post-Effective Date Debtors shall assume all indemnification obligations in place as of the Effective Date (whether in bylaws, certificates of incorporation, board resolutions, contracts, or otherwise) for the current directors, officers, managers, employees, attorneys, other professionals and agents of the Debtors who served in those capacities on or after the Petition Date.  All such indemnification obligations shall survive confirmation of the Prepack Plan, remain unaffected thereby, and not be discharged or released, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with any event occurring before, on or after the Petition Date.

22. **Preservation of Insurance.**    The Debtors' release from all Claims as provided herein and in the Prepack Plan shall not diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Debtors, the Post-Effective Date Debtors, their current and former directors and officers, or any other Person. Notwithstanding the foregoing, the preservation of insurance shall not impair nor diminish any Releases under the Prepack Plan.

23. **Claims Record Date.**    The Claims Record Date shall be the Effective Date.  For purposes of the Prepack Plan, the Debtors or the Post-Effective Date Debtors shall have no obligation to recognize the transfer of any of the Claims or Equity Interests occurring after the Claims Record Date.  The Debtors and the Post-Effective Debtors shall instead be entitled to recognize and deal only with those record holders stated on the claims register (for Claims) and the transfer ledgers (for Equity Interests) as of the close of business on the Claims Record Date.

- 36 -

24.    **Executory Contracts and Unexpired Leases.**

(a)    The Executory Contract and Unexpired Lease provisions of Article VIII of the Prepack Plan are specifically approved in all respects, are incorporated herein in their entirety and are so ordered.

(b)    <u>Rejection of Executory Contracts and Unexpired Leases</u>.  Pursuant to Article VIII of the Prepack Plan, on the Effective Date each Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such Executory Contract or Unexpired Lease: (i) has been previously assumed by the Debtors by Final Order; or (ii) is otherwise assumed pursuant to the Prepack Plan or herein.  This Confirmation Order constitutes an order approving such assumptions and rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

(c)    <u>Cure Claims</u>.  At the election of the Debtors or the Post-Effective Date Debtors, as applicable, any monetary defaults, other than a default which is not required to be cured under sections 365(b)(2) and 365(e) of the Bankruptcy Code, under each Executory Contract and Unexpired Lease to be assumed under the Prepack Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the two following ways: (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable to upon the later of (A) thirty (30) days after the determination of the Cure Claim, (B) the Effective Date or (C) such other date as may be set by the Court; or (ii) on such other terms as agreed to by the Debtors or Post-Effective Debtors and the non-Debtor counterparty to such Executory Contract or Unexpired Lease.  In the event of a dispute pertaining to the assumption or assignment, the Cure Claim payments required

by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of the dispute in accordance with Article VII.A of the Prepack Plan.

(d)    <u>Adequate Assurance of Future Performance</u>.  The only adequate assurance of future performance required for each assumed Executory Contract or Unexpired Lease shall be the promise of the applicable Post-Effective Date Debtor to perform all obligations under such Executory Contract or Unexpired Lease under this Prepack Plan. Sufficient adequate assurance of future performance has been provided for each assumed Executory Contract or Unexpired Lease.

(e)    <u>Release Upon Assumption of Executory Contract or Unexpired Lease</u>.  Assumption of any Executory Contract or Unexpired Lease pursuant to the Prepack Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date the Debtors or Post-Effective Date Debtors assume such Executory Contract or Unexpired Lease.  Any Proofs of Claim filed with respect to an Executory Contract or Unexpired Lease that has been assumed shall be deemed disallowed and expunged, without further notice to or action, order or approval of the Court.

(f)    <u>Bar Date for Rejection Claims</u>. Rejection Damage Claims must be filed with the Debtors' notice and claims agent, KCC, no later than thirty (30) days after notice of entry of the Confirmation Order (the "**<u>Rejection Bar Date</u>**").  For the avoidance of doubt, all Allowed Rejection Damage Claims shall be treated as General Unsecured Claims.  Any Rejection Damage Claims that are not timely filed shall be disallowed automatically, forever

barred from assertion, and shall not be enforceable against any Post-Effective Date Debtor
without the need for any objection by the Post-Effective Date Debtors or further notice to or
action, order, or approval of the Court, and any Rejection Damage Claim shall be deemed fully
satisfied, released and discharged, notwithstanding anything in the Schedules or a Proof of Claim
to the contrary.

25.    **Prepack Plan Distributions**.    On and after the Effective Date,
distributions on account of Allowed Claims and the resolution and treatment of Disputed
Claims shall be effectuated pursuant to Article VI of the Prepack Plan.

26.    **Preservation of Causes of Action**.    In accordance with section 1123(b)
of the Bankruptcy Code, and except as expressly provided for in the Prepack Plan (including
Article VI.J.1), the Post-Effective Date Debtors shall retain all Causes of Action.  Nothing
contained in the Prepack Plan or this Confirmation Order shall be deemed a waiver or
relinquishment of any Claim, Cause of Action, right of set-off, or other legal or equitable
defense of the Debtors that is not specifically waived, released or relinquished by the Prepack
Plan.  Subject to the releases in the Prepack Plan, the Post-Effective Date Debtors shall have,
retain, reserve and be entitled to assert all such Claims, Causes of Action, rights of set-off and
other legal or equitable defenses that the Debtors had immediately before the Petition Date as
fully as if the Chapter 11 Cases had not been commenced, and all of the Post-Effective Date
Debtors' legal and equitable rights respecting any Claim that is not specifically waived, released
or relinquished by the Prepack Plan may be asserted after the Effective Date to the same extent
as if the Chapter 11 Case had not been commenced.  No Person may rely on the absence of a
specific reference in the Prepack Plan or the Disclosure Statement to any Cause of Action
against them as any indication that the Debtors or Post-Effective Date Debtors, as applicable,

will not pursue any and all available Causes of Action against such Person.  The Debtors or

Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all

Causes of Action against any Person, in accordance with and subject to the Prepack Plan.  From

and after the Effective Date, the Debtors or Post-Effective Date Debtors, as applicable, shall

have the exclusive right, authority and discretion to determine and to initiate, file, prosecute,

enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Cause of

Action and to decline to do any of the foregoing without further notice to or action, order or

approval of the Court.  The Post-Effective Date Debtors are deemed representatives of the

Estates for the purpose of prosecuting any Claim or Cause of Action and any objections to

Claims pursuant to 11 U.S.C. § 1123(b)(3)(B).

27.    **Fee Claims.**    All requests for compensation or reimbursement of Fee

Claims shall be filed and served on the Post-Effective Date Debtors, counsel to the Post-

Effective Date Debtors, the U.S. Trustee, and such other entities who are designated by the

Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30)

days after the Effective Date.  Holders of Fee Claims that are required to file and serve

applications for final allowance of their Fee Claims and that do not file and serve such

applications by the required deadline shall be forever barred from asserting such Claims against

the Debtors, Post-Effective Date Debtors or their respective properties, and such Fee Claims

shall be deemed discharged as of the Effective Date.  Notwithstanding anything to the contrary

in the Prepack Plan or this Confirmation Order, each Post-Effective Date Debtor is authorized

to pay the charges that it incurs on or after the Effective Date for Professionals' fees,

disbursements, expenses or related support services (including fees relating to the preparation of

Professional fee applications) without application to the Court.

28.     **Statutory Fees.**   Notwithstanding anything to the contrary contained in the Prepack Plan, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee pursuant to 28 U.S.C. § 1930 and any interest due and owing pursuant to 31 U.S.C. § 3717 from any of the Debtors at the time of Confirmation.  On and after the Effective Date, the Post-Effective Date Debtors shall be responsible for filing required post-confirmation reports and paying such quarterly fees and interest due to the U.S. Trustee for each Debtor and Post-Effective Date Debtor until the earlier of the entry of a final decree in such Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

29.     **Prepack Plan Implementation.**

(a)     In accordance with section 1142 of the Bankruptcy Code and any provisions of the business corporation law of any applicable jurisdiction (collectively, the "**Implementation Statutes**"), without further action by the Court or the stockholders, members, managers or directors of any Debtor or Post-Effective Date Debtor, the Debtors, the Post-Effective Date Debtors, as well as the officers of the appropriate Debtor or Post-Effective Date Debtor, are authorized to: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Prepack Plan, this Confirmation Order and the transactions contemplated thereby or hereby; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Prepack Plan.

(b)     Except as set forth in the Prepack Plan, all actions authorized to be taken pursuant to the Prepack Plan shall be effective prior to, on, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of this Court, or

further action by the respective officers, directors, members or stockholders of the Post-Effective Date Debtors.

(c)     To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of any of the Debtors or Post-Effective Date Debtors, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and the Implementation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action of the directors and stockholders of the appropriate Debtor or Post-Effective Date Debtor.

(d)     All transactions effected by the Debtors during the pendency of the Chapter 11 Cases from the Petition Date through the Confirmation Date are approved and ratified, subject to the satisfaction of any applicable terms and conditions to effectiveness of such transactions.

(e)     The Debtors and the Post-Effective Date Debtors are entitled to transfer funds between and among themselves as they determine to be necessary or appropriate to enable the Post-Effective Date Debtors to satisfy their obligations under the Prepack Plan.

30.     **Binding Effect of Prior Orders.**   Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date and subject to the terms of the Prepack Plan and this Confirmation Order, all prior orders entered in the Chapter 11 Cases, all documents and agreements executed by the Debtors as authorized and directed thereunder and all motions or requests for relief by the Debtors pending before the Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtors, the Post-Effective Date Debtors and their respective successors and assigns.

31.     **Reversal.**  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Prepack Plan prior to the Debtors' receipt of written notice of such order.  Notwithstanding any such reversal, modification or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Prepack Plan and all related documents or any amendments or modifications thereto.

32.     **Notice of Confirmation of the Plan and Occurrence of the Effective Date.**  Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtors or the Post-Effective Date Debtors, as applicable, are directed to serve a (i) notice of the entry of this Confirmation Order, substantially in the form annexed hereto as **Exhibit B** (the "**Confirmation Notice**") within seven (7) days of its entry; and (ii) notice of the occurrence of the Effective Date, substantially in the form annexed hereto as **Exhibit C** (the "**Effective Date Notice**"), no later than seven (7) days after the Effective Date, each upon (a) all parties listed in the creditor matrix maintained by KCC, (b) all holders of Equity Interests, and (c) such additional Persons as deemed appropriate by the Debtors or the Post-Effective Date Debtors.

33.     **Modification of the Prepack Plan.**  Subject to the limitations contained in the Prepack Plan, and subject to the required consents set forth in the Prepack Plan and the Transaction Support Agreement, as applicable, the Debtors or the Post-Effective Date Debtors, as the case may be, may, after entry of this Confirmation Order, amend or modify the Prepack

Plan at any time prior to the substantial consummation of the Prepack Plan in accordance with its terms without further order of the Court, or if requested by the Debtors, pursuant to a subsequent order of the Court.

34.    **Substantial Consummation.**    On the Effective Date, the Prepack Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

35.    **Governing Law.**    Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Prepack Plan and any agreements, documents, and instruments executed in connection with the Prepack Plan, unless otherwise specified.

36.    **Miscellaneous Provisions.**

(a)    Except as otherwise provided in the Prepack Plan and this Confirmation Order, all service of pleadings in the Chapter 11 Cases filed after the Effective Date shall be limited to counsel to the Debtors, counsel to the Prepetition $20 Million Facility Agent, counsel to the Prepetition $20 Million Facility Lenders, the U.S. Trustee and any party known to be directly affected by the relief sought.

(b)    The Debtors or Post-Effective Date Debtors, as applicable, and all holders of Claims or Equity Interests receiving distributions pursuant to the Prepack Plan and all other parties in interest shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be reasonably necessary or advisable to effectuate the provisions and intent of the Prepack Plan.

(c)    Without intending to modify any prior order of this Court (or any agreement, instrument or document addressed by any prior order), in the event of an inconsistency between the Prepack Plan, on the one hand, and any other agreement, instrument, or document intended to implement the provisions of the Prepack Plan, on the other, the provisions of the Prepack Plan shall govern (unless otherwise expressly provided for in such agreement, instrument, or document).  In the event of any inconsistency between the Prepack Plan or any agreement, instrument, or document intended to implement the Prepack Plan, on the one hand, and this Confirmation Order, on the other, the provisions of this Confirmation Order shall govern.

(d)    Unless otherwise provided in the Prepack Plan or in this Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Confirmation Order (excluding any injunctions or stays contained in the Prepack Plan or this Confirmation Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Prepack Plan or this Confirmation Order shall remain in full force and effect in accordance with their terms.

(e)    Each term and provision of the Prepack Plan, as it may have been altered or interpreted in accordance with the foregoing, is (a) valid and enforceable pursuant to its terms and (b) integral to the Prepack Plan and may not be deleted or modified without the consent of the Debtors.

37.    **Retention of Jurisdiction.**    Notwithstanding the entry of this Confirmation Order, from and after the Effective Date, the Court shall retain such jurisdiction

- 45 -

over the Chapter 11 Cases as is legally permissible, including jurisdiction over those matters and issues described in Article VII of the Prepack Plan.

38.    **Authority to Consummate.**  The Debtors are authorized to consummate the Prepack Plan and the transactions contemplated thereby after entry of this Confirmation Order and upon, or concurrently with, satisfaction of the conditions set forth in the Prepack Plan.

Dated: _____2016
      New York, New York

                                _____
                                THE HONORABLE MICHAEL E. WILES
                                UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit A</u>**

First Amended Joint Prepackaged Plan of Liquidation of the Debtors
Pursuant to Chapter 11 of the Bankruptcy Code dated April 15, 2016

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

KRAMER LEVIN NAFTALIS & FRANKEL LLP
Adam C. Rogoff
Anupama Yerramalli
Rachael L. Ringer
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Counsel for the Debtors*
*and Debtors in Possession*

*Special Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------X
                                                                    :
In re:                                                              :    Chapter 11
                                                                    :
TGHI, INC., et al.,                                                 :    Case No. 16-10300 (MEW)
                                                                    :
                                Debtors.[1]                         :    Jointly Administered
                                                                    :
-------------------------------------------------------------------X

**FIRST AMENDED JOINT PREPACKAGED PLAN OF LIQUIDATION OF THE
DEBTORS PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE**

---

**THE SOLICITATION MATERIALS ACCOMPANYING THIS
PREPACKAGED PLAN OF LIQUIDATION HAVE NOT BEEN APPROVED
BY THE COURT.  THE COMBINED HEARING SEEKING AN ORDER ON
THE ADEQUACY OF THE DISCLOSURE STATEMENT AND
SOLICITATION PROCEDURES AND CONFIRMATION OF THE PLAN HAS
BEEN SCHEDUELD FOR APRIL 20, 2016.**

---

Dated: April 15, 2016
         New York, New York

---

[1] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521), and TGHI, Inc. (3814).

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................3

Article I. DEFINITIONS AND CONSTRUCTION OF TERMS ...................................................3
    A.    Definitions.................................................................................................3
    B.    Interpretation, Application of Definitions and Rules of Construction..................13
    C.    Computation of Time....................................................................................14

Article II. ADMINISTRATIVE AND PRIORITY CLAIMS ........................................................14
    A.    Administrative Claims (Other Than Fee Claims). ....................................................14
    B.    Fee Claims. .....................................................................................................15
    C.    Priority Tax Claims..........................................................................................15
    D.    U.S. Trustee Fees. ...........................................................................................16

Article III. CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY
        INTERESTS ...................................................................................................16
    A.    Classification of Claims and Equity Interests....................................................16
    B.    Claims Record Date. .......................................................................................16
    C.    Summary of Classification and Class Identification..............................................17
    D.    Treatment of Classified Claims and Equity Interests. ...........................................18
    E.    Special Provision Regarding Unimpaired Claims. ..............................................20

Article IV. MEANS FOR IMPLEMENTATION OF THE PLAN ...............................................21
    A.    Effectuating Transaction Support Agreement and Subordination .........................21
    B.    Dissolution of the Debtors ................................................................................21
    C.    Liquidation of Assets .......................................................................................21
    D.    Post-Confirmation Reports and Fees .................................................................21
    E.    Funded Amount and Wind-Down Reserve..........................................................22
    F.    Release of Liens...............................................................................................22
    G.    Voting of Claims..............................................................................................22
    H.    Treatment of Intercreditor Agreements ..............................................................22
    I.    Nonconsensual Confirmation............................................................................23
    J.    Indemnification of Directors, Officers and Employees. .......................................23

Article V. CONFIRMATION OF THE PLAN......................................................................23
    A.    Conditions to Confirmation. .............................................................................23
    B.    Waiver of Conditions Precedent to Confirmation. ...............................................24
    C.    Compromise and Settlement of Claims and Controversies ..................................24
    D.    Injunction. ......................................................................................................24
    E.    Preservation of Causes of Action.......................................................................26
    F.    Release of Avoidance Actions ...........................................................................26
    G.    Votes Solicited in Good Faith. ..........................................................................27
    H.    Payment of PIK Notes Administrative Agent Fees ...............................................27
    I.    Cancellation of Certain Indebtedness and Existing Securities. ............................27
    J.    Claims Incurred After the Effective Date. ..........................................................28

K.    Releases, Exculpations and Injunctions of Released Parties. ...............................28
L.    Satisfaction and Release of Claims and Equity Interests......................................30
M.    Preservation of Insurance.....................................................................................30

Article VI. DISTRIBUTIONS UNDER THE PLAN ........................................................30
A.    Procedures for Treating Disputed Claims.............................................................30
B.    Allowed Claims. ....................................................................................................31
C.    Allocation of Consideration..................................................................................32
D.    Estimation. ............................................................................................................32
E.    Claims Paid by Third Parties ...............................................................................32
F.    Insured Claims. .....................................................................................................33

Article VII. RETENTION OF JURISDICTION ..............................................................33

Article VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES................................35
A.    Assumption of Executory Contracts and Unexpired Leases...................................35
B.    Cure Claims. ..........................................................................................................35
C.    Reservation of Rights.............................................................................................36
D.    Rejection of Executory Contracts and Unexpired Leases....................................36
E.    Assignment. ...........................................................................................................36
F.    Insurance Policies. ................................................................................................37
G.    Benefit Plans and Indemnification Agreements ...................................................37

Article IX. EFFECTIVENESS OF THE PLAN .................................................................37
A.    Conditions Precedent to Effectiveness..................................................................37
B.    Waiver of Conditions Precedent to Effectiveness. ...............................................38
C.    Effect of Failure of Conditions. ...........................................................................38
D.    Vacatur of Confirmation Order.............................................................................38
E.    Modification of the Plan. ......................................................................................38
F.    Revocation, Withdrawal, or Non-Consummation. ...............................................38

Article X. MISCELLANEOUS PROVISIONS...................................................................39
A.    Immediate Binding Effect......................................................................................39
B.    Governing Law. .....................................................................................................39
C.    Filing or Execution of Additional Documents......................................................39
D.    Term of Injunctions of Stays.................................................................................39
E.    Withholding and Reporting Requirements. ..........................................................40
F.    Notices. ..................................................................................................................40
G.    Conflicts.................................................................................................................41

## INTRODUCTION

The Debtors propose the following prepackaged plan of liquidation under section 1121(a) of chapter 11 of title 11 of the United States Code.  Capitalized terms used in the Plan and not otherwise defined shall have the meaning ascribed to such terms in Article I.

Claims against, and Equity Interests in, the Debtors will be treated as set forth herein.  Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, forbearance negotiations and agreements with lenders, a best interest analysis, and projections for future operations and risk factors, together with a summary and analysis of the Plan.

THIS PLAN SHOULD BE CONSIDERED ONLY IN CONJUNCTION WITH THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED HEREWITH. THE DISCLOSURE STATEMENT IS INTENDED TO PROVIDE YOU WITH THE INFORMATION THAT YOU NEED TO MAKE AN INFORMED JUDGMENT WHETHER TO ACCEPT OR REJECT THIS PLAN.

## ARTICLE I.
## DEFINITIONS AND CONSTRUCTION OF TERMS

### A.    Definitions.

Unless otherwise defined herein the following terms shall have the respective meanings set forth below:

1.    "*Accrued Professional Compensation*" means, at any given time, and regardless of whether such amounts are billed or unbilled, all accrued, contingent and/or unpaid fees and expenses (including success fees) for legal, financial advisory, accounting and other services and reimbursement of expenses by any Professional, except such fees and expenses that are reasonably incurred by the Prepetition Agents, or that are awardable and allowable under section 503 of the Bankruptcy Code, that the Court has not, as of the Effective Date, denied by Final Order (i) all to the extent that any such fees and expenses have not been previously paid (regardless of whether a fee application has been filed for any such amount) and (ii) after applying the remaining balance of any retainer that has been provided by the Debtors to such Professional.  To the extent the Court denies or reduces by a Final Order any amount of a Professional's fees or expenses, then those reduced or denied amounts shall no longer constitute Accrued Professional Compensation.

2.    "*Administrative Claim*" means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases of a kind specified under section 503(b) of the Bankruptcy Code and entitled to priority under sections 507(a)(2), 507(b) or 1114(e)(2) of the Bankruptcy Code, including (i) any actual and necessary costs and expenses of preserving the Estate, (ii) any actual and necessary costs and expenses of operating the Debtors' businesses, (iii) any indebtedness or obligations assumed by the Debtors in connection with the conduct of its

businesses, (iv) all compensation and reimbursement of expenses of Professionals to the extent awarded by the Court under sections 330, 331 or 503 of the Bankruptcy Code, (v) any fees or charges assessed against the Estate under section 1930 of title 28 of the United States Code, and (vi) any Claim for goods delivered to the Debtors within twenty (20) days of the Petition Date and entitled to administrative priority pursuant to section 503(b)(9) of the Bankruptcy Code.

3.    "*Allowed*" means, with reference to any Claim, (i) following the Claims Objection Deadline, any Claim as to which no objection or request for estimation has been Filed prior to the Claims Objection Deadline, (ii) a Claim that has been expressly allowed by Final Order, (iii) a Claim as to which the Debtors agree to the amount and/or priority thereof in writing, (iv) a Claim that is expressly allowed pursuant to the terms of this Plan, or (v) a Claim that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Cases) as liquidated, non-contingent, and undisputed. If a Claim is Allowed only in part, any provisions hereunder with respect to Allowed Claims are applicable solely to the Allowed portion of such Claim.

4.    "*Assumption Schedule*" means the schedule of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan and the effective date of such assumption, which shall be included as an exhibit to this Plan and shall be filed with the Bankruptcy Court on notice to parties-in-interest no later than five (5) Business Days before the deadline to object to confirmation of the Plan.

5.    "*Avoidance Actions*" means any cause of action assertable under sections 510, 542, 543,544, 545,547, 548, 549, 550, or 553 of the Bankruptcy Code, or any under any non-bankruptcy law, including any state law avoidance actions; *provided, however*, that Avoidance Actions shall not include any cause of action for subordination pursuant to paragraph 5(f) of the Transaction Support Agreement.

6.    "*Ballots*" means each of the ballots distributed with the Disclosure Statement to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan.

7.    "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532, as in effect with respect to the Chapter 11 Cases.

8.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, and local rules of the Court, as the context may require, as in effect with respect to the Chapter 11 Cases.

9.    "*Bar Date*" means the date fixed by the Bankruptcy Court as the last date by which all Creditors must have filed proofs of Claim against the Debtors, unless the Bankruptcy Court has set a different date by which a specific Creditor must file a proof of Claim, in which case it means, for the specific Creditor, such different date set by the Bankruptcy Court in the Plan Scheduling Order or otherwise.

10.    "*Business Day*" means any day on which commercial banks are open for business, and not authorized to close, in New York, New York, except any day designated as a legal holiday by Bankruptcy Rule 9006(a).

11.    "*Cash*" means legal tender of the United States of America.

12.    "*Causes of Action*" means any and all claims, causes of actions, cross-claims, counterclaims, third-party claims, indemnity claims, contribution claims, defenses, demands, rights, actions, debts, damages, judgments, remedies, Liens, indemnities, guaranties, suits, obligations, liabilities, accounts, offsets, recoupments, powers, privileges, licenses, and franchises of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, whether arising before, on or after the Petition Date, including through the Effective Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law.   For the avoidance of doubt, the term "Causes of Action" shall include: (i) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims; (iii) all claims pursuant to section 362 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

13.    "*Chapter 11 Cases*"  means the chapter 11 cases commenced by the Debtors.

14.    "*Claim*" means a "claim" against a Debtor, as such term is defined in section 101(5) of the Bankruptcy Code.

15.    "*Claims Objection Deadline*"  means the first Business Day that is the later of (i) one-hundred eighty (180) days after the Effective Date, (ii) ninety (90) days from the date by which a holder of a Claim is required to file a Proof of Claim pursuant to an order of the Court, or (iii) such other later date the Court may establish upon a motion by the Debtors, which motion may be approved without a hearing and without notice to any party.

16.    "*Claims Record Date*" means, for purposes of making distributions under the Plan on account of Allowed Claims, the Effective Date.

17.    "*Class*" means a group of Claims or Equity Interests classified under the Plan.

18.    "*Collateral*" means any property or interest in property of an Estate subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or is otherwise invalid under the Bankruptcy Code or applicable law.

19.    "*Collateral Agent Stock Turnover*"  has the meaning ascribed to such term in the Transaction Support Agreement.

20.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21.    "*Confirmation Date*"  means the date of Confirmation.

22. "*Confirmation Hearing*" means the confirmation hearing held by the Court pursuant to Bankruptcy Rule 3020(b)(2) and section 1128 of the Bankruptcy Code, including any adjournments thereof, at which the Court will consider confirmation of the Plan.

23. "*Confirmation Order*" means the order entered by the Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

24. "*Court*" means (i) the United States Bankruptcy Court for the Southern District of New York, (ii) to the extent there is no reference pursuant to section 157 of title 28 of the United States Code, the United States District Court for the Southern District of New York and (iii) any other court having jurisdiction over the Chapter 11 Cases or proceedings arising therein.

25. "*Cure Claim*" means a Claim in an amount equal to all unpaid monetary obligations under an Executory Contract or Unexpired Lease assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law. Any Cure Claim to which the holder thereof disagrees with the priority and/or amount thereof as determined by the Debtors shall be deemed a Disputed Claim under this Plan.

26. "*Debtors*" means Holdings and Parent.

27. "*Disbursing Agent*" means the Post-Effective Date Debtors or their claims agent, Kurtzman Carson Consultants LLC.

28. "*Disclosure Statement*" means the *Disclosure Statement for the Plan of Liquidation of the Debtors Under Chapter 11 of the Bankruptcy Code*, in furtherance of this Plan.

29. "*Disputed*" means, with reference to any Claim, other than a Claim that has been Allowed pursuant to the Plan or a Final Order, a Claim (i) that is listed in the Schedules (to the extent the Debtors file Schedules in the Chapter 11 Case) as unliquidated, contingent, or disputed, and as to which no request for payment or Proof of Claim has been filed, (ii) as to which a proper and timely request for payment or Proof of Claim has been filed, but with respect to which an objection or request for estimation has been filed and has not been withdrawn or determined by a Final Order, (iii) as to which a request for payment was required to be filed but as to which a request for payment was not properly filed, (iv) that is disputed in accordance with the provisions of the Plan, or (v) that is otherwise disputed by the Debtors upon notice to the holder of such Claim prior to the Claims Objection Deadline.

30. "*Distributable Holdings Assets*" means all Assets of Holdings available for distribution to holders of Allowed Claims, including: (i) any Cash or Cash-equivalents held by Holdings, (ii) any receivables that are due and owing to Holdings, (iii) insurance proceeds (other than directors' and officers' insurance proceeds) relating to assets or property of Holdings, (iv) the portion of tax refunds allocable to Holdings relating to any taxable year during which Parent, Holdings, the TGII and its subsidiaries were part of a consolidated tax filing group, (v) any other amounts or assets of Holdings subject to turnover from TGII or its subsidiaries

pursuant to the Transaction Support Agreement, and (vi) proceeds of any Causes of Action belonging to Holdings.

31.    "*Distributable Parent Assets*" means all Assets of Parent available for distribution to holders of Allowed Claims, including: (i) any Cash or Cash-equivalents held by Parent, (ii) any receivables that are due and owing to Parent, (iii) insurance proceeds (other than directors' and officers' insurance proceeds) relating to assets or property of Parent, (iv) the portion of tax refunds allocable to Parent relating to any taxable year during which Parent, Holdings, the TGII and its subsidiaries were part of a consolidated tax filing group, if any, and (v) proceeds of any Causes of Action belonging to Parent.

32.    "*Distribution*" means any distribution provided for in this Plan to Holders of Allowed Claims in full or partial satisfaction of such Allowed Claims.

33.    "*Effective Date*" means the date which is the first Business Day selected by the Debtors on which (a) all of the conditions to the occurrence of the Effective Date specified in Article IX.A have been satisfied or waived in accordance with Article IX.B and (b) no stay of the Confirmation Order is in effect.

34.    "*Entity*" means an "entity" as such term is defined in section 101(15) of the Bankruptcy Code.

35.    "*Equity Interest*" means any "equity security" as such term is defined in section 101(16) of the Bankruptcy Code, or any other instrument evidencing an ownership interest in the Debtors, whether or not transferable.

36.    "*Escrow Agreement*" means the Escrow Agreement, dated May 21, 2015, between Holdings, TGII, the Supplemental Agent, and U.S. Bank, National Association, as escrow agent.

37.    "*Estates*"   means the estates of the Debtors created in the Chapter 11 Cases pursuant to section 541 of the Bankruptcy Code.

38.     "*Executory Contract*" means a contract to which one or more Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

39.    "*Fee Claim*"  means a Claim for Accrued Professional Compensation.

40.    "*Final Order*"   means an order or judgment of the Court which has not been modified, amended, reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or motion for new trial, stay, reargument, or rehearing shall then be pending or (b) if an appeal, writ of certiorari, new trial, stay, reargument, or rehearing thereof has been sought, such order or judgment of the Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, stay, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, stay, reargument, or rehearing shall have expired, as a result of which such order shall have

become final in accordance with Bankruptcy Rule 8002; <u>provided</u>, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order, shall not cause an order not to be a Final Order.

41.     "*Fixed Transaction Consideration Payment*" means the $750,000 in cash paid to Holdings as set forth in  section 5(c) of the Transaction Support Agreement.

42.     "*Forbearance and Marketing Period*" means the 210-day marketing period and the forbearance periods provided for under the Transaction Support Agreement.

43.     "*Formerly Owned Operating Businesses*" means the direct and indirect subsidiaries of TGII that were formerly indirect subsidiaries of Parent and Holdings.

44.     "*Funded Amount*" means the $700,000 deposited into a segregated account at Holdings, which shall include the $200,000 funded to the Wind-Down Reserve.

45.     "*General Unsecured Claims*" means the PIK Note Claims and the Other General Unsecured Claims.

46.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

47.     "*Holdings*" means TGHI, Inc., a Delaware corporation, and any successor thereto.

48.     "*Holdings PIK Note Agency Agreement*" that means that certain Agency Agreement dated March 27, 2015 among Holdings, Law Debenture Trust Company of New York and the Holdings PIK Note Holders.

49.     "*Holdings PIK Note Claims*"  means the Claims under or evidenced by the Holdings PIK Notes, which shall be Allowed in the principal amount of $8,323,000, plus interest that accrued but remains unpaid as of the Petition Date.

50.     "*Holdings PIK Noteholders*" means the holders of the Holdings PIK Note Claims.

51.     "*Holdings PIK Notes*"  means the 16% Senior Unsecured Notes due October 26, 2018, issued pursuant to the Holdings Note Purchase Agreement.

52.     "*Holdings PIK Note Purchase Agreement*" means that certain Note Purchase Agreement, dated as of October 16, 2012, among Holdings and the purchasers signatory thereto, pursuant to which the Holdings PIK Notes were issued.

53.     "*Impaired*"  means, when used with reference to Claims or Equity Interests, Claims or Equity Interests that are "impaired" within the meaning of section 1124 of the Bankruptcy Code.

54.    "*Insured Claim*" means any Claim or portion of a Claim that is or may be insured under any of the Debtor's insurance policies.

55.    "*Intercompany Claims*" means any Claim held by a Debtor against another Debtor.

56.    "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

57.    "*Note Purchase Agreements*" means, collectively, the Parent PIK Note Purchase Agreements and the Holdings Note Purchase Agreement.

58.    "*Other General Unsecured Claims*" means any Unsecured Claim that is not (i) a PIK Note Claim, or (ii) an Intercompany Claim.

59.    "*Other Priority Claim*" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than (i) an Administrative Claim or (ii) a Priority Tax Claim.

60.    "*Other Secured Claim*" means any Claim that is Secured, other than a Prepetition $20 Million Facility Claim.

61.    "*Parent*" means Parent THI, Inc., a Delaware corporation, and any successor thereto.

62.    "*Parent PIK Note Agency Agreement*" means that certain Agency Agreement dated March 27, 2015, among Parent, Law Debenture Trust Company of New York and the holders of the Parent PIK Notes issued under the Parent Note Purchase Agreement dated as of May 24, 2011, and that certain Agency Agreement dated March 27, 2015, among Parent, Law Debenture Trust Company of New York and the holders of the Parent PIK Notes issued under the Parent Note Purchase Agreement dated as of October 26, 2014.

63.    "*Parent PIK Note Claims*" means the Claims under or evidenced by the Parent PIK Notes, which shall be Allowed in the principal amount of $52,733,000 plus interest that accrued but remains unpaid as of the Petition Date.

64.    "*Parent PIK Noteholders*" means the holders of the Parent PIK Note Claims.

65.    "*Parent PIK Notes*" means the two series of 10% Senior Unsecured Notes due January 14, 2019 issued pursuant to the Parent Note Purchase Agreements.

66.    "*Parent PIK Note Purchase Agreements*"  means, collectively: (i) that certain Amended and Restated Note Purchase Agreement, dated as of May 24, 2011, among Parent and the purchasers signatory thereto and (ii) that certain Note Purchase Agreement, dated as of October 26, 2014, by and among Parent and the purchasers signatory thereto, pursuant to which the Parent PIK Notes were issued.

67.    "*Person*" means any individual, corporation, partnership, limited liability company, association, indenture trustee, organization, joint stock company, joint venture, estate, trust, Governmental Unit or any political subdivision thereof, or any other Entity.

68.    "*Petition Date*" means the date on which each of the Debtors commenced the Chapter 11 Cases.

69.    "*PIK Notes*" means, collectively, the Parent PIK Notes and the Holdings PIK Notes.

70.    "*PIK Notes Administrative Agent*" means Law Debenture Trust Company of New York, as administrative agent for (i) the Parent PIK Note Holders pursuant to the Parent PIK Note Agency Agreement, and (ii) the Holdings PIK Note Holders pursuant to the Holdings PIK Note Agency Agreement.

71.    "*PIK Notes Administrative Agent Expenses*" means any reasonable and documented fees and out-of-pocket costs and expenses, incurred prior to or after the Petition Date by the PIK Notes Administrative Agent that are required to be paid under the PIK Notes Agency Agreements.    Such amounts shall include, without limitation: (i) any extraordinary expenses incurred by the PIK Notes Administrative Agent that are required to be paid under the PIK Notes Agency Agreements, and (ii) the reasonable, documented, out-of-pocket costs and expenses of, and reasonable, documented unpaid legal fees actually incurred by, counsel to the PIK Notes Administrative Agent in connection with the Chapter 11 Cases and the distributions to the PIK Noteholders.

72.    "*PIK Notes Agency Agreements*" means the Parent PIK Note Agency Agreement or the Holdings PIK Note Agency Agreement.

73.    "*Plan*" means this *Plan of Liquidation of the Debtor Under Chapter 11 of the Bankruptcy Code*, together with all addenda, exhibits, schedules or other attachments, if any, each of which is incorporated herein by reference, and as may be amended, modified, or supplemented from time to time in accordance with the terms herein.

74.    "*Plan Scheduling Motion*" means the motion filed by the Debtors, substantially contemporaneously with the filing of the Chapter 11 Cases, seeking entry of an order (a) scheduling an objection deadline and combined hearing on the Debtors' Disclosure Statement and Plan Confirmation, (b) approving the form and notice of the Confirmation Hearing, (c) establishing procedures for objections to the Disclosure Statement and the Plan, (d) approving Solicitation Procedures, (e) establishing the Bar Date, and (f) granting related relief.

75.    "*Plan Scheduling Order*" means the order granting the Plan Scheduling Motion, including establishing the Bar Dates.

76.    "*Post-Effective Date Debtors*" means the Debtors, from and after the Effective Date.

77.    "*Prepetition $20 Million Facility*" means the term loan facility under the Prepetition $20 Million Term Loan Agreement in an original principal amount of $20 million.

78.    "_Prepetition $20 Million Facility Agent_" means Wilmington Savings Fund Society, FSB, as administrative agent and collateral agent under the Prepetition $20 Million Term Loan Agreement, and any successor administrative agent or collateral agent from time to time.

79.    "_Prepetition $20 Million Facility Claims_" means the Claims evidenced by, derived from, based upon, relating to, or arising from Holdings' guaranty of the obligations under the Prepetition $20 Million Facility.

80.    "_Prepetition $20 Million Facility Lenders_" means the lenders under the Prepetition $20 Million Term Loan Agreement.

81.    "_Prepetition $20 Million Term Loan Agreement_" means the term loan agreement entered into on May 21, 2015, with respect to the Prepetition $20 Million Facility among TGII and Holdings, as borrowers, certain subsidiaries of TGII, as guarantors, and the Prepetition $20 Million Facility Agent, and the Prepetition $20 Million Facility Lenders, as may be amended, restated, supplemented or otherwise modified from time to time.

82.    "_Priority Tax Claim_" means any Claim that is entitled to a priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

83.    "_Professional_" means any professional employed or retained in the Chapter 11 Cases pursuant to sections 327 or 328 of the Bankruptcy Code.

84.    "_Proof of Claim_" means a written proof of Claim filed in the Chapter 11 Case.

85.    "_Pro Rata_" means, with respect to any Claim, the proportion that the amount of such Claim bears to the aggregate amount of all Claims (including Disputed Claims) in the applicable Class or group of Classes, unless the Plan provides otherwise.

86.    "_Rejection Damage Claims_" means Claims for damages arising from the rejection of Executory Contracts or Unexpired Leases.  Unless otherwise agreed to in writing by the Debtors, all Rejection Damage Claims shall be deemed Disputed Claims.

87.    "_Rejection Notice_" means a notice of an Executory Contract or Unexpired Lease to be rejected under the Plan pursuant to section 365 of the Bankruptcy Code which notice shall include (i) the procedures for objecting to proposed rejection of Executory Contracts and Unexpired Leases, (ii) the procedures for filing Rejection Damage Claims, and (iii) the procedures for resolution by the Court of any related disputes.

88.    "_Released Parties_" means each of: (a) the Debtors and the Post-Effective Date Debtors, (b) the Supporting PIK Noteholders, (c) the Prepetition $20 Million Facility Agent, (d) the Prepetition $20 Million Facility Lenders, (e) the PIK Administrative Agent, (f) the parties to the Transaction Support Agreement, including any joinder thereto, and (g) with respect to each of the foregoing in clauses (a) through (f), such entities' predecessors, Professionals, successors and assigns, subsidiaries, funds, portfolio companies, and each of their respective current and former officers, directors (including observers), employees, managers, attorneys,

financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives, in each case solely in their capacity as such.

89.    "*Releasing Parties*" means each of: (a) the Supporting PIK Noteholders, (b) the Prepetition $20 Million Facility Agent, (c) the Prepetition $20 Million Facility Lenders, (d) the PIK Administrative Agent, (e) the parties to the Transaction Support Agreement, including any joinder thereto, (f) any holder of a Claim that either is deemed to accept the Plan or votes to accept the Plan, and (g) with respect to each of the foregoing in clauses (a) through (f), such entities' predecessors, Professionals, successors and assigns, subsidiaries, funds, portfolio companies, and each of their respective current and former officers, directors (including observers), employees, managers, attorneys, financial advisors, accountants, investment bankers, consultants, management companies or other professionals or representatives, in each case solely in their capacity as such.

90.    "*Residual Funded Amount*" means any portion of the Funded Amount, including the Wind-Down Reserve, that remains after the payment of all fees, expenses, and other payments described in Article IV.E of this Plan.

91.    "*Schedules*"  means, to the extent the requirement to file the Schedules is not waived by the Court, the schedules of assets and liabilities, statements of financial affairs, and lists of holders of Claims and Equity Interests, filed with the Court by the Debtors, including any amendments or supplements thereto.

92.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on property in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, in each case, to the extent determined pursuant to section 506(a) of the Bankruptcy Code or (b) otherwise Allowed pursuant to the Plan as a Claim that is Secured.

93.    "*Securities Act*" means the Securities Act of 1933, as amended.

94.    "*Supporting Holdings PIK Noteholders*" has the meaning ascribed to such term in the Transaction Support Agreement.

95.    "*Supporting Parent PIK Noteholders*" has the meaning ascribed to such term in the Transaction Support Agreement.

96.    "*Supporting PIK Noteholders*" has the meaning ascribed to such term in the Transaction Support Agreement.  For the avoidance of doubt, the Supporting PIK Noteholders are comprised of the parties holding PIK Notes that are signatories to the Transaction Support Agreement.

97.    "*TGII*" means Targus Group International, Inc., a Delaware corporation, and any successor thereto.

98.    "*Transaction Consideration*" means the Fixed Transaction Consideration Payment and the Residual Funded Amount.

99. "*Transaction Support Agreement*" means the Global Forbearance and Transaction Support Agreement, dated as of May 21, 2015, and amended as of December 31, 2015, among the Debtors, TGII, and the additional parties signatory thereto, as it may be amended, modified or supplemented from time to time by the parties thereto in accordance with the terms of such agreement.

100. "*Unexpired Lease*" means a lease to which any Debtor is a party that is subject to assumption or rejection under section 365 of the Bankruptcy Code.

101. "*Unimpaired*" means any Class of Claims or Equity Interests that is not Impaired under the Plan within the meaning of section 1124 of the Bankruptcy Code.

102. "*Unsecured Claim*" means any Claim that is not Secured or entitled to priority under the Bankruptcy Code or an order of the Court, including any Claim arising from the rejection of an Executory Contract or Unexpired Lease under section 365 of the Bankruptcy Code.

103. "*U.S. Trustee*" means the United States Trustee for the Southern District of New York.

104. "*Voting Deadline*" means February 5, 2016, which shall be the deadline for submitting Ballots to either accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code.

105. "*Voting Record Date*" means February 1, 2016.

106. "*Wind-Down Reserve*" means a reserve to be established, maintained, and withheld from the Distribution, to be used to fund (a) the effectuation and consummation of the Plan, (b) the investigation and prosecution of Causes of Action (including any Avoidance Actions) not otherwise released pursuant to the Plan, (c) the payment of court fees and the fees of the United States Trustee for the Southern District of New York under 28 U.S.C. §1930 and (d) the payment of the fees and expenses incurred in connection with the wind-down of the Debtors' businesses.

## B.    Interpretation, Application of Definitions and Rules of Construction.

Capitalized terms that are not defined herein shall have the same meanings assigned to such terms by the Bankruptcy Code or Bankruptcy Rules, as the case may be. Meanings of capitalized terms shall be equally applicable to both the singular and plural forms of such terms. The words "herein," "hereof," and "hereunder" and other words of similar import refer to the Plan as a whole (and, for the avoidance of doubt, all exhibits thereto) and not to any particular section or subsection in the Plan unless expressly provided otherwise. The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included. Captions and headings to articles, sections and exhibits are inserted for convenience of reference only, are not a part of this Plan, and shall not be used to interpret this Plan. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply to this Plan.

C.      **Computation of Time.**

Except as otherwise specifically provided in the Plan, in computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

### ARTICLE II.
### ADMINISTRATIVE AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Priority Tax Claims, and Fee Claims, as described below, have not been classified and thus are excluded from the classes of Claims and Equity Interests set forth in Article III.

A.      **Administrative Claims (Other Than Fee Claims).**

1.      *General*

Each holder of an Allowed Administrative Claim (other than an Administrative Claim that is a Fee Claim) as of the Effective Date shall receive from the applicable Debtor (i) Cash in an amount equal to the amount of such Allowed Administrative Claim as soon as practicable after the later of (a) the Effective Date if such Administrative Claim is Allowed as of the Effective Date, (b) thirty (30) days after the date such Administrative Claim becomes an Allowed Administrative Claim if such Administrative Claim is Disputed as of or following the Effective Date, or (c) the date such Allowed Administrative Claim becomes due and payable by its terms, or as soon thereafter as is practicable or (ii) such other treatment as the Debtor and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Claims (other than Fee Claims) that arise in the ordinary course of the Debtors' business shall be paid in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing or other documents relating to such transactions.

2.      *Bar Date for Administrative Claims*

Except as otherwise provided herein or in the Plan Scheduling Order or other order of the Bankruptcy Court, unless previously filed or Allowed, each holder of an Administrative Claim (other than a Fee Claim) that arose (or, only in the case of unexpired leases of real or personal property, accrued) on or after the Petition Date through the Effective Date must file a request for payment of such Administrative Claim pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than thirty (30) days after the Confirmation Hearing.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Post-Effective Date Debtors, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released as of the Effective Date.  Objections to requests for payment of Administrative Claims must be filed and served on the requesting party by no later than 150 days after the Effective Date, subject to further order of the Bankruptcy Court.  For the avoidance of doubt, nothing herein modifies any requirement to file any Administrative Claim as set forth in any other order of the

Court including the Plan Scheduling Order, and any holder of such Administrative Claim that failed to comply with the requirements of such other order or the Plan Scheduling Order shall be forever barred from asserting such Administrative Claims against the Debtors, the Post-Effective Date Debtors, the Estates or their respective property, and such Administrative Claims shall be deemed waived and released.

**B.    Fee Claims.**

       1.    *Final Fee Applications*.

All requests for compensation or reimbursement of Fee Claims shall be filed and served on the Debtors, counsel to the Debtors, the Post-Effective Date Debtors, the U.S. Trustee, and such other entities who are designated by the Bankruptcy Rules, the Confirmation Order or other order of the Court, no later than thirty (30) days after the Effective Date.  Holders of Fee Claims that are required to file and serve applications for final allowance of their Fee Claims and that do not file and serve such applications by the required deadline shall be forever barred from asserting such Claims against the Debtors or their respective properties, and such Fee Claims shall be deemed released as of the Effective Date.  Objections to any Fee Claims must be filed and served on the Debtors, counsel for the Debtors, and the requesting party no later than thirty (30) days after the filing of the final applications for compensation or reimbursement (unless otherwise agreed by the party requesting compensation of a Fee Claim).

The amount of Fee Claims owing to the Professionals will be paid in Cash to such Professionals by the Post-Effective Date Debtors, or at the Post-Effective Date Debtors' direction, without interest or other earnings therefrom, when such Claims are approved by the Bankruptcy Court.

       2.    *Post-Effective Date Fees and Expenses*.

The Post-Effective Date Debtors shall pay in Cash the reasonable legal, professional, or other fees and expenses incurred by the Professionals on and after the Effective Date, in the ordinary course of business and without any further notice to or action, order or approval of the Court.  Upon the Effective Date, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and Professionals may be employed and paid in the ordinary course of business without any further notice to or action, order, or approval of the Court.

**C.    Priority Tax Claims.**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive, at the option of the applicable Debtor, in full satisfaction, settlement and release of and in exchange for such Priority Tax Claim one of the following treatments: (i) payment in full in Cash as soon as practicable after the Effective Date in an amount equal to the amount of such Allowed Priority Tax Claim, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored non-priority Unsecured Claim provided for

by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); (ii) payment in full in Cash payable in equal Cash installments made on a quarterly basis in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, over a period not to exceed five (5) years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored non-priority Unsecured Claim provided for by the Plan (other than cash payments made to a class of creditors pursuant to section 1122(b) of the Bankruptcy Code); or (iii) such other treatment as may be agreed upon by such holder and the Debtors or otherwise determined upon a Final Order of the Court.

### D.    U.S. Trustee Fees.

Notwithstanding anything to the contrary contained herein, on the Effective Date, the Debtors shall pay, in full, in Cash, any fees due and owing to the U.S. Trustee at the time of Confirmation.    On and after the Effective Date, the Post-Effective Date Debtors shall be responsible for filing required post-confirmation reports and paying quarterly fees due to the U.S. Trustee until the entry of a final decree in such Debtor's Chapter 11 Case or until such Chapter 11 Case is converted or dismissed.

### ARTICLE III.
### CLASSIFICATION AND TREATMENT OF
### CLAIMS AND EQUITY INTERESTS

### A.    Classification of Claims and Equity Interests.

Except for those Claims addressed in Article II, all Claims and Equity Interests are placed in the Classes set forth below.    A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class, and is classified in other Classes to the extent that any portion of the Claim or Equity Interest falls within the description of such other Classes.    A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled before the Effective Date.

### B.    Claims Record Date.

As of the close of business on the Claims Record Date, the claims register (for Claims) and transfer ledger (for Equity Interests) shall be closed, and there shall be no further changes in the record holders of any Claims or Equity Interests.    The Debtors shall have no obligation to recognize any transfer of any Claims or Equity Interests occurring after the Claims Record Date.    The Debtors shall instead be entitled to recognize and deal for purposes under the Plan with only those record holders stated on the claims register (for Claims) and transfer ledgers (for Equity Interests) as of the close of business on the Claims Record Date.

### C.     Summary of Classification and Class Identification.

Although the Plan is a single, joint plan for both Debtors, the Plan does not substantively consolidate the estates.     All of the potential Classes for the Debtors are set forth herein. Subject to the following paragraph, for all purposes under the Plan, each Class will contain sub-Classes for each of the Debtors (i.e., there will be two (2) sub-Classes in each Class and many of such sub-Classes may be vacant).  Notwithstanding the foregoing, the Debtors reserve the right to seek approval of the Bankruptcy Court to consolidate the Debtors for purposes of administrative convenience, provided that such consolidation does not materially and adversely impact the amount of distributions to any Person under the Plan.

Below is a chart identifying Classes of Claims and Equity Interests, a description of whether each Class is Impaired, and each Class's voting rights.  Holdings is the only Debtor with Class 3 because only Holdings is obligated under the Prepetition $20 Million Facility.  Parent is the only Debtor that has a Class 4 with respect to General Unsecured Claims against Parent, and Holdings is the only Debtor that has a Class 5 with respect to General Unsecured Claims against Holdings. Holdings is the only Debtor that has Class 7 with respect to Equity Interests and Parent is the only Debtor that has a Class 8 with respect to Equity Interests in Parent.  If there are no creditors in one (1) or more Classes, then such Class will not apply to that Debtor.

| Class | Claim or Equity Interest | Status | Voting Rights |
|-------|--------------------------|--------|---------------|
| 1 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 2 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 3 | Prepetition $20 Million Facility Claims | Impaired | Entitled to Vote |
| 4 | General Unsecured Claims against Parent | Impaired | Deemed to Reject |
| 5 | General Unsecured Claims against Holdings | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Impaired | Deemed to Reject |
| 7 | Equity Interests in Holdings | Impaired | Deemed to Reject |
| 8 | Equity Interests in Parent | Impaired | Deemed to Reject |

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for the purposes of Confirmation by acceptance of the Plan by an Impaired Class of Claims; provided, however, that in the event no holder of a Claim with respect to a specific voting Class for a Debtor timely submits a Ballot indicating acceptance or rejection of the Plan, such Class (with respect to such Debtor) will be deemed to have accepted the Plan.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Equity Interests.  The Debtors reserve the right to modify the Plan in accordance with Article IX.F hereof, including the right to withdraw the Plan at any time before the Effective Date.

D.      **Treatment of Classified Claims and Equity Interests**.

1.      *Class 1 – Other Priority Claims*.

(a)      <u>Classification</u>:  Class 1 consists of Other Priority Claims.

(b)      <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Priority Claim agrees in writing to less favorable treatment, in full and final satisfaction, settlement and release and in exchange for each Allowed Other Priority Claim, each holder of an Allowed Other Priority Claim shall receive payment in Cash in an amount equal to such Allowed Other Priority Claim as soon as practicable after the later of (i) the Effective Date and (ii) thirty (30) days after the date when such Other Priority Claim becomes an Allowed Other Priority Claim.

(c)      <u>Voting</u>:  Class 1 is Unimpaired by the Plan, and each holder of a Class 1 Other Priority Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 1 Other Priority Claims are not entitled to vote to accept or reject the Plan.

2.      *Class 2 – Other Secured Claims*.

(a)      <u>Classification</u>:  Class 2 consists of Other Secured Claims.

(b)      <u>Treatment</u>:  Except to the extent that a holder of an Allowed Other Secured Claim agrees in writing to less favorable treatment, at the option of the Debtors, in full and final satisfaction, settlement and release of and in exchange for such Other Secured Claim, each holder of an Allowed Other Secured Claim shall either: (i) receive Cash in an amount equal to such Allowed Other Secured Claim, including any interest on such Allowed Other Secured Claim, if such interest is required to be paid pursuant to sections 506(b) and/or 1129(a)(9) of the Bankruptcy Code, as soon as practicable after the later of (a) the Effective Date, and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim, or (ii) receive the Collateral securing its Allowed Other Secured Claim as soon as practicable after the later of (a) the Effective Date and (b) thirty (30) days after the date such Other Secured Claim becomes an Allowed Other Secured Claim.

(c)      <u>Voting</u>:  Class 2 is Unimpaired by the Plan, and each holder of a Class 2 Other Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Class 2 Other Secured Claims are not entitled to vote to accept or reject the Plan.

3.      *Class 3 – Prepetition $20 Million Facility Claims*.

(a)      <u>Classification</u>:  Class 3 consists of Prepetition $20 Million Facility Claims.

(b)      <u>Allowance</u>: The Prepetition $20 Million Facility Claims shall be Allowed on the Effective Date for all purposes in an amount of no less than $21 million, *plus* accrued and unpaid interest calculated in accordance with the Prepetition $20 Million Facility.

(c)    <u>Treatment</u>:  In exchange for each Prepetition $20 Million Facility Claim, each holder of an Allowed Prepetition $20 Million Facility Claim shall, on the Effective Date, allocate its right to receive a distribution of the Transaction Consideration and any Distributable Holdings Assets to the holders of Allowed Class 5 Unsecured Claims against Holdings, <u>provided</u>, however, that for the avoidance of doubt the treatment of the Prepetition $20 Million Facility Claims pursuant to this Plan shall not constitute a release of any Prepetition $20 Million Facility Claims held by holders of Allowed Prepetition $20 Million Claims against any entity other than the Debtors.

(d)    <u>Voting</u>:  Class 3 is Impaired.  Therefore, holders of Class 3 Prepetition $20 Million Facility Claims are entitled to vote to accept or reject the Plan.

4.    <u>*Class 4 – General Unsecured Claims against Parent*</u>

(a)    <u>Classification</u>:  Class 4 consists of General Unsecured Claims against Parent.

(b)    <u>Treatment</u>:  In full and final satisfaction, settlement and release of and in exchange for each Allowed General Unsecured Claim against Parent, each holder of an Allowed General Unsecured Claim against Parent shall receive its pro rata share of any Distributable Parent Assets.

(c)    <u>Voting</u>:  Class 4 is Impaired.  Because the Debtors believe there will be no Distributable Parent Assets to be distributed to holders of Class 4 General Unsecured Claims against Parent, holders of Claims in Class 4 are deemed to reject the Plan, and are not entitled to vote to accept or reject the Plan.

5.    <u>*Class 5 – General Unsecured Claims against Holdings*</u>

(a)    <u>Classification</u>:  Class 5 consists of General Unsecured Claims against Holdings.

(b)    <u>Treatment</u>:  In full and final satisfaction, settlement and release of and in exchange for each Allowed General Unsecured Claim against Holdings, on or as soon as practicable after the Effective Date, (i) each holder of an Allowed Class 6 Claim that votes to accept the Plan by the Voting Deadline shall receive its pro rata share of: (x) the Fixed Transaction Consideration Payment, (y) any Distributable Holdings Assets, and (z) the Residual Funded Amount; and (ii) alternatively, each holder of an Allowed Class 5 Claim that either votes to reject the Plan or does not vote on the Plan by the Voting Deadline shall receive its pro rata share of (a) the Fixed Transaction Consideration Payment, and (b) any Distributable Holdings Assets.

(c)    <u>Voting</u>:  Class 5 is Impaired.  Therefore, holders of Class 5 General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.    <u>*Class 6 – Intercompany Claims*</u>.

(a)    <u>Classification</u>: Class 6 consists of Intercompany Claims.

(a)  <u>Treatment</u>:  On the Effective Date or as soon thereafter as is practicable, the Intercompany Claims shall be deemed extinguished and released, and shall not receive any distributions under the Plan.

(b)  <u>Voting</u>:  Class 6 is Impaired.  Holders of Class 6 Intercompany Claims are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code, as applicable.  Therefore, holders of Class 6 Intercompany Claims are not entitled to vote to accept or reject the Plan.

7.    <u>*Class 7 – Equity Interests in Holdings*</u>.

(a)  <u>Classification</u>:  Class 7 consists of Equity Interests in Holdings.

(b)  <u>Treatment</u>:  On the Effective Date, Equity Interests in Holdings shall be cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise and holders of Equity Interests shall not receive or retain any property under the Plan on account of such Equity Interests in Holdings.

(c)  <u>Voting</u>:  Class 7 is Impaired.  Holders of Class 7 Equity Interests in Holdings are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 7 Equity Interests in Holdings are not entitled to vote to accept or reject the Plan.

8.    <u>*Class 8 – Equity Interests in Parent*</u>.

(a)  <u>Classification</u>:  Class 8 consists of Equity Interests in Parent.

(b)  <u>Treatment</u>:  On the Effective Date, Equity Interests in Parent shall be cancelled and shall be of no further force and effect, whether surrendered for cancellation or otherwise and holders of Equity Interests shall not receive or retain any property under the Plan on account of such Equity Interests in Parent.

(c)  <u>Voting</u>:  Class 8 is Impaired.  Holders of Class 8 Equity Interests in Parent are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Class 8 Equity Interests in Parent are not entitled to vote to accept or reject the Plan.

**E.    <u>Special Provision Regarding Unimpaired Claims</u>.**

Except as otherwise specifically provided in this Plan, nothing herein shall be deemed to affect, diminish, or impair the Debtors' or the Post-Effective Date Debtors' rights and defenses, both legal and equitable, with respect to any Unimpaired Claim, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Unimpaired Claims; and, except as otherwise specifically provided in this Plan, nothing herein shall be deemed to be a waiver or relinquishment of any Claim, Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired by this Plan.  Except as otherwise specifically provided in this Plan, the Post-Effective Date Debtors shall have, retain, reserve, and be entitled to assert all

such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses which the Debtors had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced, and all of the Post-Effective Date Debtors' legal and equitable rights with respect to any Claim left Unimpaired by this Plan may be asserted after the Confirmation Date and the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

# ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

### A.    Effectuating Transaction Support Agreement and Subordination

Through the Effective Date, the Debtors shall perform all respective obligations under the Transaction Support Agreement, and shall be entitled to receive all benefits of the Transaction Support Agreement, including the receipt of the Transaction Consideration or other consideration provided therein in accordance with its terms.   The Transaction Support Agreement shall be deemed and treated as an Executory Contract that shall be assumed pursuant to this Plan.

For the avoidance of doubt, all terms of the Transaction Support Agreement shall remain in full force and effect, including the subordination provisions set forth in paragraph 5(f) therein.   Such subordination provisions are valid, binding and enforceable subordination provisions under Section 510(a) of the Bankruptcy Code.

### B.    Dissolution of the Debtors

On the Effective Date, the Debtors shall be deemed dissolved and shall not be required to take any further steps with respect to such dissolution.   The Post-Effective Date Debtors may, but shall not be required, to take steps as deemed desirable to wind up the Debtors' affairs and prepare appropriate dissolution filings, and file all appropriate tax returns.

### C.    Liquidation of Assets

On and after the Effective Date, the Post-Effective Date Debtors may take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order. Without limiting the foregoing, the Post-Effective Date Debtors may, without application to or approval of the Bankruptcy Court, pay the charges incurred after the Effective Date for Professional fees and expenses related to the winding up of the Debtors' affairs and administration and implementation of the Plan.

### D.    Post-Confirmation Reports and Fees

Following the Confirmation Date, the Post-Effective Date Debtors shall be responsible for the filing of post-Confirmation reports required during such periods with the U.S. Trustee and payment of all post-Confirmation fees charged or assessed against the estates under 28 U.S.C. § 1930 during such periods.

E.      **Funded Amount and Wind-Down Reserve**

        Prior to the Effective Date, the Funded Amount (together with any retainers held by the professionals) shall be used to pay all reasonable fees and expenses, including the reasonable and documented professionals' fees and costs of administering the Debtors' Chapter 11 Cases, and to oversee and facilitate the receipt and distribution of the Transaction Consideration and any other Distributions under this Plan, including distributions to Allowed Administrative Claims and Priority Claims.   For the avoidance of doubt, any Allowed Administrative Claims and Priority Claims at Parent will be satisfied through an allocation of the Funded Amount.  In the event that any portion of the Funded Amount, including the Wind-Down Reserve, remains after the payment of all fees and expenses described herein, then the remainder shall be distributed to holders of Allowed General Unsecured Claims against Holdings that vote to accept the Plan.

        For the avoidance of doubt, no portion of the Funded Amount shall be used to challenge the liens and/or claims under the Prepetition $20 Million Term Loan Facility or the validity and/or enforceability of the transactions contemplated by the Transaction Support Agreement or the Escrow Agreement.

F.      **Release of Liens**

        Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the property of the Debtors' estate shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests shall revert to the Post-Effective Date Debtors and its successors and assigns.

G.      **Voting of Claims.**

        Each holder of an Allowed Claim as of the Voting Deadline in an Impaired Class of Claims or Equity Interests that is not deemed to have rejected the Plan, and that held such Claim as of the Voting Record Date, shall be entitled to vote to accept or reject the Plan.  The instructions for completion of the Ballots are set forth in the instructions accompanying the Ballot. Approval for the procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan will be sought in the Plan Scheduling Motion. The procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan are described in the Disclosure Statement.

H.      **Treatment of Intercreditor Agreements**

        Nothing contained herein shall affect the enforceability of any intercreditor agreements in accordance with, and subject to, the terms thereof and any applicable law, and all rights and obligations, if any, of the parties to such intercreditor agreements thereunder, or in connection therewith, are preserved.

I.      **Nonconsensual Confirmation.**

The Debtors intend to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code with respect to any impaired Class that has not accepted or is deemed to have rejected the Plan pursuant to section 1126 of the Bankruptcy Code.

In addition, although the Debtors believe that the Plan is confirmable as to each of Parent and Holdings, in the event that the Debtors are unable to confirm the Plan as to Parent, they reserve the right to convert Parent's Chapter 11 Case into a chapter 7 case or otherwise dismiss Parent's Chapter 11 Case.

J.      **Indemnification of Directors, Officers and Employees.**

Notwithstanding any other provisions of the Plan, from and after the Effective Date, indemnification obligations owed by the Debtors to directors, and officers of a Debtor who continued to serve in such capacity on or after the date of the Transaction Support Agreement, to the extent provided in the applicable articles or certificates of incorporation, bylaws or similar constituent documents, by statutory law or by written agreement (including, for the avoidance of doubt, the indemnification obligations set forth in paragraph 10(e) of the Transaction Support Agreement), will be assumed pursuant to this Plan; *provided, however* that such indemnification obligations shall be paid and satisfied solely from the proceeds of available insurance policies obtained by or on behalf of the Debtors.  Subject to the foregoing caveat with respect to available insurance policies, all such indemnification obligations shall survive confirmation of the Plan, remain unaffected thereby, and not be discharged, irrespective of whether indemnification, defense, reimbursement or limitation is owed in connection with an event occurring before, on or after the Petition Date.

Indemnification obligations owed to any Professionals retained pursuant to sections 327 or 328 of the Bankruptcy Code and by order of the Court shall be deemed to be, and shall be treated as though they are, executory contracts that are assumed pursuant to section 365 of the Bankruptcy Code under the Plan.

## ARTICLE V.
## CONFIRMATION OF THE PLAN

A.      **Conditions to Confirmation.**

The following are conditions to the entry of the Confirmation Order unless such conditions, or any of them, have been satisfied or duly waived in accordance with Article V.B:

1.      The Court shall have approved the Disclosure Statement.

2.      The Confirmation Order shall have been entered by the Bankruptcy Court and is in form and substance reasonably satisfactory to the Debtors, in consultation with the Prepetition $20 Million Facility Lenders.

3.      The Plan shall be in form and substance reasonably satisfactory to the Debtors and the Prepetition $20 Million Facility Lenders.

4.      The Assumption Schedule shall be in form and substance reasonably satisfactory to the Debtors, in consultation with the Prepetition $20 Million Facility Lenders.

**B.      Waiver of Conditions Precedent to Confirmation.**

The Debtors, with the consent of the Prepetition $20 Million Facility Lenders, may waive the conditions set forth in Article V.A above at any time without leave of or order of the Court and without any formal action.

**C.      Compromise and Settlement of Claims and Controversies**

Pursuant to sections 363 and 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions under the Plan and other benefits provided pursuant to the Plan and the Transaction Support Agreement, the provisions of the Plan, upon consummation, shall constitute a good faith compromise of all Claims, Equity Interests, Causes of Action, and controversies resolved pursuant to the Plan and the Transaction Support Agreement and relating to any contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest, or any Distributions to be made on account of such an Allowed Claim or Equity Interest.  In the event that, for any reason, the Confirmation Order is not entered or the Effective Date does not occur, the Debtors, the Prepetition $20 Million Facility Lenders, the Supporting PIK Noteholders, and the PIK Administrative Agent reserve all of their respective rights with respect to any and all disputes resolved and settled under the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, Causes of Action, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtors, their Estates, and Holders of Claims or Equity Interests and is fair, equitable, and are within the range of reasonableness. Distributions made to Holders of Allowed Claims or Equity Interests are intended to be final. The provisions of the Plan, including, without limitation, its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.

**D.      Injunction.**

FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER, ANY CAUSE OF ACTION RELEASED OR TO BE RELEASED PURSUANT TO THE PLAN OR THE CONFIRMATION ORDER.

FROM AND AFTER THE EFFECTIVE DATE, TO THE EXTENT OF THE RELEASES AND EXCULPATION GRANTED IN THIS ARTICLE V, THE RELEASING PARTIES SHALL BE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER AGAINST THE RELEASED PARTIES AND THEIR ASSETS AND PROPERTIES, AS THE CASE MAY BE, ANY SUIT, CAUSE OF ACTION OR OTHER PROCEEDING, ON ACCOUNT OF OR RESPECTING ANY CLAIM,

DEMAND, LIABILITY, OBLIGATION, DEBT, RIGHT, CAUSE OF ACTION, EQUITY INTEREST OR REMEDY RELEASED OR TO BE RELEASED PURSUANT TO THIS ARTICLE V OR THE CONFIRMATION ORDER.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS WHO HAVE HELD, HOLD OR MAY HOLD CLAIMS OR EQUITY INTERESTS THAT HAVE BEEN RELEASED PURSUANT TO ARTICLE V OR ARE SUBJECT TO EXCULPATION PURSUANT TO ARTICLE V ARE PERMANENTLY ENJOINED, FROM AND AFTER THE EFFECTIVE DATE, FROM TAKING ANY OF THE FOLLOWING ACTIONS:  (1) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS; (2) ENFORCING, ATTACHING, COLLECTING OR RECOVERING BY ANY MANNER OR MEANS ANY JUDGMENT, AWARD, DECREE OR ORDER AGAINST SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS; (3) CREATING, PERFECTING OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST SUCH RELEASED PARTIES OR THE PROPERTY OR ESTATES OF SUCH RELEASED PARTIES ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS; (4) ASSERTING ANY RIGHT OF SETOFF OR SUBROGATION OF ANY KIND AGAINST ANY OBLIGATIONS DUE FROM THE DEBTORS OR THE POST -EFFECTIVE DATE DEBTORS OR AGAINST THE PROPERTY OR INTERESTS IN PROPERTY OF THE DEBTORS ON ACCOUNT OF ANY SUCH CLAIM; AND (5) COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR OTHER PROCEEDING OF ANY KIND ON ACCOUNT OF OR IN CONNECTION WITH OR WITH RESPECT TO ANY SUCH CLAIMS OR EQUITY INTERESTS RELEASED OR SETTLED PURSUANT TO THE PLAN.

THE RIGHTS AFFORDED IN THE PLAN AND THE TREATMENT OF ALL CLAIMS AND EQUITY INTERESTS HEREIN SHALL BE IN EXCHANGE FOR AND IN COMPLETE SATISFACTION OF ALL CLAIMS AND EQUITY INTERESTS OF ANY NATURE WHATSOEVER, INCLUDING ANY INTEREST ACCRUED ON CLAIMS FROM AND AFTER THE PETITION DATE, AGAINST THE DEBTORS OR ANY OF THEIR ASSETS, PROPERTY OR ESTATES.  ON THE EFFECTIVE DATE, ALL SUCH CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR IN THE PLAN, AND THE EQUITY INTERESTS IN PARENT SHALL BE CANCELLED.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED FOR HEREIN OR IN OBLIGATIONS ISSUED PURSUANT HERETO FROM AND AFTER THE EFFECTIVE DATE, ALL CLAIMS AGAINST THE DEBTORS SHALL BE FULLY RELEASED, AND ALL EQUITY INTERESTS SHALL BE CANCELLED, AND THE DEBTORS' LIABILITY WITH RESPECT THERETO SHALL BE EXTINGUISHED COMPLETELY, INCLUDING ANY LIABILITY OF THE KIND SPECIFIED UNDER SECTION 502(G) OF THE BANKRUPTCY CODE.

EXCEPT AS OTHERWISE EXPRESSLY PROVIDED IN THE PLAN OR RELATED DOCUMENTS, OR FOR OBLIGATIONS ISSUED PURSUANT TO THE PLAN, ALL PERSONS SHALL BE PRECLUDED FROM ASSERTING AGAINST THE DEBTORS, THEIR ESTATES, EACH OF THEIR RESPECTIVE SUCCESSORS AND ASSIGNS, AND EACH OF ITS ASSETS AND PROPERTIES, AND EACH OF THE RELEASED PARTIES, ANY OTHER CLAIMS OR EQUITY INTERESTS BASED UPON ANY DOCUMENTS, INSTRUMENTS OR ANY ACT OR OMISSION, TRANSACTION OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED BEFORE THE EFFECTIVE DATE RELATED TO THE DEBTORS, THE FORMERLY OWNED OPERATING BUSINESSES AND THEIR RESPECTIVE BUSINESSES.

## E.  Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except as otherwise expressly provided herein (including, without limitation, as to released Claims) the Post-Effective Date Debtors shall retain all Causes of Action, including, for the avoidance of doubt, all Causes of Action arising out of the Transaction Support Agreement and any related agreements or documents. Nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of any claim, Cause of Action, right of setoff, or other legal or equitable defense of the Debtors that is not specifically waived or relinquished by this Plan. The Post-Effective Date Debtors shall have, retain, reserve and be entitled to assert all such claims, Causes of Action, rights of setoff and other legal or equitable defenses that the Debtors had immediately before the Petition Date as fully as if the Chapter 11 Cases had not been commenced, and all of the Post-Effective Date Debtors' legal and equitable rights respecting any claim that is not specifically waived or relinquished by this Plan may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtors or Post-Effective Date Debtors, as applicable, will not pursue any and all available Causes of Action against such Person. The Debtors or Post-Effective Date Debtors, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Person, in accordance with the Plan. From and after the Effective Date, the Post-Effective Date Debtors shall have the exclusive right, authority and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw or litigate to judgment any Cause of Action and to decline to do any of the foregoing without further notice to or action, order or approval of the Court. In accordance with Article V.E herein, the Post-Effective Date Debtors are deemed a representative of the Estates for the purpose of prosecuting any Claim or Cause of Action and any objections to Claims pursuant to 11 U.S.C. § 1123(b)(3)(B). For the avoidance of doubt, the Claims and Causes of Action preserved pursuant to this Article V.E shall not include (i) any Avoidance Actions released in accordance with Article V.F of this Plan, (ii) any Claims or Causes of Action released pursuant to Article V.K of this Plan, or (iii) any Claims or Causes of Action against the Debtors or their current or former directors and officers arising prior to the Effective Date.

## F.  Release of Avoidance Actions

On the Effective Date, and except to the extent otherwise reserved in the Plan, the Debtors, on behalf of themselves and their estates, shall release any and all Avoidance Actions

and the Debtors and the Post-Effective Date Debtors, and any of their successors or assigns and any Entity acting on behalf of the Debtors or the Post-Effective Date Debtors shall be deemed to have waived the right to pursue any and all Avoidance Actions. No Avoidance Actions shall revert to creditors of the Debtors.

## G.    Votes Solicited in Good Faith.

The Debtors have, and upon entry of the Confirmation Order shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

## H.    Payment of PIK Notes Administrative Agent Fees

As of the Effective Date, any agreement regarding payment of PIK Notes Administrative Agent fees between the Debtors and the PIK Notes Administrative Agent, as amended, shall be deemed and treated as rejected pursuant to this Plan without giving rise to any Claims.  The PIK Notes Administrative Agent shall apply the prepetition retainer it holds to satisfy any prepetition or postpetition fees it incurs, without any recourse against the Debtors. Any unused portion of the prepetition retainer shall promptly be returned to the Debtors.  If the Debtors or the Post-Effective Date Debtors dispute the reasonableness of the PIK Notes Administrative Agent Expenses, the Debtors, the Post-Effective Date Debtors, or the PIK Notes Administrative Agent, as applicable, may submit such dispute to the Court for a determination of the reasonableness of such fees or expenses and the disputed portion of the PIK Notes Administrative Agent Expenses shall not be paid until the dispute is resolved.

## I.    Cancellation of Certain Indebtedness and Existing Securities.

On the Effective Date, except as otherwise specifically provided for in the Plan: (i) the obligations of the Debtors under any certificate, share, note, bond, indenture, purchase right, option, warrant or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in a Debtor giving rise to any Claim or Equity Interest (except such certificates, notes or other instruments or documents evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan), and (ii) the obligations of a Debtor pursuant, relating or pertaining to any agreements, indentures, certificates of designation, bylaws or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, purchase rights, options, warrants or other instruments or documents evidencing or creating any indebtedness or obligation of such Debtor (except such agreements, certificates, notes or other instruments evidencing indebtedness or obligations of a Debtor that are specifically reinstated pursuant to the Plan or assumed by a Debtor) shall be released; provided, however, that notwithstanding the occurrence of the Confirmation Date or the Effective Date, any such agreement that governs the rights of the holder of a Claim against the Debtors shall continue in effect solely for purposes of (a) allowing holders of such Claims to receive distributions under the Plan as provided herein, and (b) allowing the Disbursing Agent to make distributions under the Plan as provided herein, and deduct therefrom such reasonable compensation, fees, and expenses due thereunder or incurred in making such distributions, to the extent not paid by the Debtors and authorized under such agreement.

**J.      Claims Incurred After the Effective Date.**

        Claims incurred by the Debtors after the Effective Date may be paid by the Post-Effective Date Debtors from the Funded Amount in the ordinary course of business and without application for or Court approval, subject to any agreements with such holders of a Claim and applicable law.

**K.      Releases, Exculpations and Injunctions of Released Parties.**

        1.      ***Releases by the Debtors*.  On the Effective Date, and notwithstanding any other provisions of the Plan, the Debtors and the Post-Effective Date Debtors, on behalf of themselves and their Estates, shall be deemed to unconditionally release the Released Parties from any and all claims, obligations, suits, judgments, damages, rights, Causes of Action and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, assertable on behalf of or derivative from the Debtors, based in whole or in part upon actions taken <u>solely</u> in their respective capacities described herein or any omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date in any way relating to the Debtors or their business and affairs, the Formerly Owned Operating Businesses or their businesses and affairs, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any security of the Debtors, the Disclosure Statement, the Transaction Support Agreement, the Transactions (as defined in the Transaction Support Agreement), including, without limitation actions taken during the Forbearance and Marketing Period and/or in connection with the Collateral Agent Stock Turnover, the Escrow Agreement, the PIK Notes Agency Agreements, the Plan or agreements, instruments, or other documents related to any of the foregoing; <u>provided</u>, <u>however</u>, that (a) no individual shall be released from any act or omission that constitutes fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any) as determined by a Final Order, (b) the Post-Effective Date Debtors shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any Claims of any such persons asserted against the Debtors, (c) nothing herein shall operate as a waiver or release of any claims held by the Debtors against the Released Parties for the enforcement of the Transaction Support Agreement and any subordination provisions therein; <u>provided</u>, <u>however</u>, that any claims for actions or inactions taken by the Released Parties relating to the marketing of the Debtors, the Formerly Owned Operating Businesses and/or their respective assets during the Forbearance and Marketing Period and for the Collateral Agent Stock Turnover are released as set forth in this section; and (d) the foregoing release applies to the Released Parties solely in their respective capacities described herein.**

        2.      ***Releases by Holders of Claims*.  To the fullest extent permissible under applicable law, and except as otherwise provided in the Plan or the Confirmation Order, on and after the Effective Date, the Releasing Parties shall be deemed to unconditionally release the Released Parties and their respective property from any and all Claims, debts, obligations, rights, suits, judgments, damages, actions, causes of action, remedies, and liabilities of any nature whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, at law, in equity, or otherwise, they hold that are in connection with any of the Debtors and their business and**

affairs, the **Formerly Owned Operating Businesses** and their business and affairs, the Debtors' respective **Estates, Assets** or properties, the **Transactions** (as defined in the **Transaction Support Agreement**), the **Plan**, or these **Chapter 11 Cases**; <u>provided</u>, <u>however</u>, that the foregoing releases by the **Releasing Parties** shall not operate to waive or release any **Released Party** on account of liability that is judicially determined pursuant to a **Final Order** to have resulted from such **Released Party**'s fraud, willful misconduct, gross negligence, or breach of fiduciary duty (if any).

3.        *Exculpation and Injunction.*        The Debtors and the other **Released Parties** (i) shall have no liability whatsoever to any holder or purported holder of an **Administrative Claim, Claim**, or **Equity Interest** for any act or omission that occurred prior to, during and/or in connection with the **Chapter 11 Cases** and/or in connection with, or arising out of the preparation and filing of the **Chapter 11 Cases**, the events and circumstances leading up to the **Chapter 11 Cases**, the **Transaction Support Agreement** (including without limitation, negotiation and implementation thereof), the **Transactions** (as defined in the **Transaction Support Agreement**), including, but not limited to, the prepetition marketing of the Debtors and the **Formerly Owned Operating Businesses** and/or the **Collateral Agent Stock Turnover**, and the **Escrow Agreement**, the **PIK Notes Agency Agreements**, the preparation, negotiation, and filing of the **Plan**, the **Disclosure Statement**, the pursuit of approval of the **Disclosure Statement** or the solicitation of votes for confirmation of the **Plan**, the **Chapter 11 Cases**, the consummation of the **Plan**, the administration of the **Plan** or the property to be distributed under the **Plan**, or any transaction contemplated by the **Plan**, the **Disclosure Statement**, the **Transaction Support Agreement**, or the **Escrow Agreement**, and any agreements, instruments or other documents related to any of the foregoing, or in furtherance thereof, except for any act or omission that constitutes fraud, willful misconduct, gross negligence or breach of fiduciary duty (if any) as determined by a **Final Order**, and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the **Plan**. For the avoidance of doubt, nothing herein shall operate as a waiver or release of any claims held by the Debtors against the **Released Parties** for the enforcement of the **Transaction Support Agreement** and any subordination provisions therein; <u>provided</u>, <u>however</u>, that any claims for actions or inactions taken by the **Released Parties** relating to the marketing of the Debtors, the **Formerly Owned Operating Businesses** and/or their respective assets during the **Forbearance and Marketing Period** and for the **Collateral Agent Stock Turnover** are released as set forth in this section. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such **Released Parties** from liability. Without limiting the generality of the foregoing, the **Released Parties** shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code. Pursuant to section 105 of the Bankruptcy Code, no holder or purported holder of an **Administrative Claim, Claim** or **Equity Interest** shall be permitted to commence or continue any **Cause of Action**, employment of process, or any act to collect, offset, or recover any **Claim** against a **Released Party** that accrued on or before the **Effective Date** and that has been released or waived pursuant to this **Plan**. Notwithstanding anything herein to the contrary, no **Released Party** shall be exculpated from any liability resulting from any act or omission that limits the liability of any **Person** pursuant to N.Y. Comp. Codes R. & Regs. Tit. 22 § 1200.8 Rule 1.8(h)(1) (2009) as determined by **Final Order** and any other statutes, rules or

**regulations dealing with professional conduct to which such professionals are subject; provided that each Released Party shall be entitled to rely upon the advice of counsel concerning his, her or its duties pursuant to, or in connection with, the Plan or any other related document, instrument, or agreement; <u>provided, however</u>, that any party seeking to assert such a claim against any such attorney must first seek relief, on proper notice, from the Bankruptcy Court.**

**L.      <u>Satisfaction and Release of Claims and Equity Interests</u>**

The rights afforded herein and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of all Claims of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, against the Debtors, the Post-Effective Date Debtors, or any of their respective assets or properties arising prior to the Effective Date. Except as otherwise expressly specified in the Plan, after the Effective Date, any holder of such Claim or Equity Interest shall be precluded from asserting against the Debtors, the Post-Effective Date Debtors, or any of their respective assets or properties, any other or further Claim based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the entry of the Confirmation Order.

**M.      <u>Preservation of Insurance</u>.**

The Debtors' release from all Claims as provided herein shall not, except as necessary to be consistent with this Plan, diminish or impair the enforceability of any insurance policy that may provide coverage for Claims against the Debtors, their current and former directors and officers, the Post-Effective Date Debtors, or any other Person. As set forth herein, the Transaction Support Agreement shall be deemed and treated as an Executory Contract under the Plan, and the terms of the Transaction Support Agreement shall remain in full force and effect, including the obligations to obtain and maintain insurance set forth therein. To the extent not obtained pursuant to the terms of the Transaction Support Agreement, prior to the Effective Date, the Debtors shall obtain directors' and officers' liability insurance tail coverage for all of their current and former directors and officers, which coverage shall extend for a period of not less than six (6) years after the Effective Date and contain terms no less favorable to such directors and officers as the terms of the existing directors' and officers' liability insurance policies issued to the Debtors.

**ARTICLE VI.
DISTRIBUTIONS UNDER THE PLAN**

**A.      <u>Procedures for Treating Disputed Claims</u>.**

On and after the Effective Date, only the Post-Effective Date Debtors shall be entitled to object to, settle, compromise, withdraw or litigate objections to, or request the estimation of Claims against the Debtors, their respective Estates, Assets or properties. Objections and requests for estimation shall be served on the respective Holder of the Claim and filed with the Bankruptcy Court on or before the Claims Objection Deadline. Any fees, costs or expenses incurred by the Post-Effective Date Debtors in objecting to Claims shall be paid out of

the Wind-Down Reserve. On the Effective Date, all outstanding objections to and requests for estimation of Claims will vest in the Post-Effective Date Debtors.

## B.   Allowed Claims.

1.   *Timing of Distributions*.  Distributions under the Plan shall be made by the Debtors, on the Effective Date, and the Post-Effective Date Debtors or the Disbursing Agent, after the Effective Date, as applicable.

2.   *Delivery of Distributions*.  Distributions under the Plan shall be made by the Debtors, on the Effective Date, and the Post-Effective Date Debtors or the Disbursing Agent, after the Effective Date, to the holders of Allowed Claims in all Classes for which a distribution is provided in this Plan at the addresses set forth on either (a) the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents, as applicable, unless the Debtors have been notified in writing of a change in address, including, but not limited to, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules for such Holder, (b) on the Proof of Claim filed such Holder, (c) in any notice of assignment filed with the Bankruptcy Court with respect to such Claim pursuant to Bankruptcy Rule 3001(e), or (d) in any notice served by such Holder giving details of a change of address; *provided, however*, that the initial distribution to Holders of PIK Notes Claims shall be made to the PIK Notes Administrative Agent.

3.   *Distribution of Cash*.  Any payment of Cash by the Debtors, on the Effective Date, and the Post-Effective Date Debtors or the Disbursing Agent, after the Effective Date, pursuant to the Plan shall be made at the option and in the sole discretion of the Debtors or the Post-Effective Date Debtors, as applicable, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Post-Effective Date Debtors.

4.   *Unclaimed Distributions of Cash*.  Subject to Article VII.B.6 herein, any distribution of Cash under the Plan that is unclaimed after six (6) months after it has been delivered (or attempted to be delivered) shall, pursuant to section 347(b) of the Bankruptcy Code, revert to the Debtors, on the Effective Date, and the Post-Effective Date Debtors or the Disbursing Agent, after the Effective Date and thereafter shall be distributed to holders of General Unsecured Claims against Holdings, notwithstanding any state or other escheat or similar laws to the contrary, and the entitlement by the holder of such unclaimed Allowed Claim to such distribution or any subsequent distribution on account of such Allowed Claim shall be extinguished and forever barred.

5.   *Saturdays, Sundays, or Legal Holidays*.  If any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

6.   *Disbursing Agent*.  Pending the final distribution of all sums distributable under the terms of the Plan, the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtors to the extent necessary to make any payment or distribution contemplated by the Plan.

7.      *Distributions to Holders of Claims*:

(a)      *Distribution to Claims Allowed as of the Effective Date*.  Except as otherwise expressly set forth in the Plan, the Debtors, on the Effective Date, and the Post-Effective Date Debtors or the Disbursing Agent, after the Effective Date, shall distribute Cash or Collateral, as the case may be, to the holders of Allowed Claims as of the Effective Date as contemplated herein.

(b)      *Claims Allowed after the Effective Date*.  Each holder of a Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive the distribution to which such holder of an Allowed Claim is entitled as set forth in Article III, and distributions to such holder shall be made in accordance with the provisions of this Plan.  As soon as practicable after the date that the Claim becomes an Allowed Claim, the Post-Effective Date Debtors or the Disbursing Agent shall provide to the holder of such Claim the distribution (if any) to which such holder is entitled under this Plan as of the Effective Date, without any interest to be paid on account of such Claim.

8.      *Interest on Claims*.  Except as specifically provided for in the Plan, no Claims, Allowed or otherwise (including Administrative Claims), shall be entitled, under any circumstances, to receive any interest on a Claim.

## C.      **Allocation of Consideration.**

The aggregate consideration to be distributed to the holders of Allowed Claims in each Class under the Plan shall be treated as first satisfying an amount equal to the principal amount of the Allowed Claim for such holders, and any remaining consideration as satisfying accrued, but unpaid and interest, as applicable.

## D.      **Estimation.**

The Debtors or the Post-Effective Date Debtors may, at any time, request that the Court estimate any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Post-Effective Date Debtors had previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim.  In the event that the Court estimates any Disputed Claim, such estimated amount may constitute either (i) the Allowed amount of such Claim, (ii) the amount on which a reserve is to be calculated for purposes of any reserve requirement under the Plan or (iii) a maximum limitation on such Claim, as determined by the Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Debtors or the Post-Effective Date Debtors, as the case may be, may elect to object to ultimate payment of such Claim.  All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

## E.      **Claims Paid by Third Parties**

The Debtors or the Post-Effective Date Debtors shall reduce in full a Claim, and such Claim shall be disallowed without a Claim objection having to be Filed and without any further notice to or action, order or approval of the Bankruptcy Court, to the extent that the

holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Post-Effective Date Debtors. Subject to the last sentence of this paragraph, to the extent a holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor on account of such Claim, such holder shall, within two weeks of receipt thereof, repay or return the distribution to the applicable Debtor or the Post-Effective Date Debtors, to the extent the holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan. The failure of such holder to timely repay or return such distribution shall result in the holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the two-week grace period specified above until the amount is repaid.

**F.**    **Insured Claims.**

If any portion of an Allowed Claim is an Insured Claim, no distributions under the Plan shall be made on account of such Allowed Claim until the holder of such Allowed Claim has exhausted all remedies with respect to any applicable insurance policies. To the extent that the Debtors' insurers agree to satisfy a Claim in whole or in part, then immediately upon such agreement, the portion of such Claim so satisfied may be expunged without an objection to such Claim having to be filed and without any further notice to or action, order or approval of the Court.

## ARTICLE VII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction:

(i) to resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor or is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) the Post-Effective Date Debtors amending, modifying, or supplementing, after the Effective Date, pursuant to Article VIII, any Executory Contracts or Unexpired Leases to the Assumption Schedule or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

(ii) to determine, adjudicate, or decide any other applications, adversary proceedings, contested matters, and any other matters pending on the Effective Date;

(iii) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(iv) to resolve disputes as to the ownership of any Claim or Equity Interest;

(v) to allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Equity Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the secured or unsecured status, priority, amount, or allowance of Claims or Equity Interests;

(vi) to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, reversed, modified or vacated;

(vii) to issue such orders in aid of execution of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(viii) to consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any order of the Court, including the Confirmation Order;

(ix) to hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(x) to hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan;

(xii) to hear and determine any issue for which the Plan requires a Final Order of the Court;

(xiii) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(xiv) to hear and determine disputes arising in connection with compensation and reimbursement of expenses of professionals for services rendered during the period commencing on the Petition Date through and including the Effective Date;

(xv) to hear and determine any Causes of Action preserved under the Plan;

(xvi) to hear and determine any matter, case, controversy, suit, dispute, or Cause of Action (i) regarding the existence, nature, and scope of the releases, injunctions, and exculpation provided under the Plan, and (ii) enter such orders as may be necessary or appropriate to implement such releases, injunctions, exculpations, and other provisions;

(xviii) to enter a final decree closing the Chapter 11 Case;

(xix) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

(xx) to hear and determine disputes or issues arising under the Transaction Support Agreement;

(xx) to adjudicate any and all disputes arising from or relating to distributions under the Plan;

(xxi) to enforce all orders previously entered by the Court; and

(xxii) to hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.    Assumption of Executory Contracts and Unexpired Leases.**

Except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless any such executory contract or unexpired lease: (i) is expressly identified on the Assumption Schedule; (ii) has been previously assumed by the Debtors by Final Order or has been assumed by the Debtors by order of the Court as of the Effective Date, which order becomes a Final Order after the Effective Date; (iii) is the subject of a motion to assume pending as of the Effective Date; or (iv) is otherwise assumed pursuant to the terms herein.

The Confirmation Order will constitute an order of the Court approving such rejections pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

**B.    Cure Claims.**

At the election of the Debtors or the Post-Effective Date Debtors, as applicable, any monetary defaults under each Executory Contract and Unexpired Lease to be assumed under the Plan shall be satisfied pursuant to section 365(b)(1) of the Bankruptcy Code in one of the following ways (i) payment of the Cure Claim in Cash on or as soon as reasonably practicable to occur of (A) thirty (30) days after the determination of the Cure Claim, and (B) the Effective Date or such other date as may be set by the Court, or (ii) on such other terms as agreed to by the Debtors or the Post-Effective Date Debtors and the non-Debtor counterparty to such Executory Contract or  Unexpired Lease.  In the event of a dispute pertaining to assumption or assignment, the Cure Claim payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the resolution of the dispute in accordance with Article VII.A of this Plan.

The only adequate assurance of future performance shall be the promise of the Post-Effective Date Debtors to perform all obligations under any executory contract or unexpired lease under this Plan.

**ASSUMPTION OF ANY EXECUTORY CONTRACT OR UNEXPIRED LEASE PURSUANT TO THE PLAN OR OTHERWISE SHALL RESULT IN THE FULL RELEASE AND SATISFACTION OF ANY CLAIMS OR DEFAULTS, WHETHER MONETARY OR NONMONETARY, INCLUDING DEFAULTS OF PROVISIONS RESTRICTING THE CHANGE IN CONTROL OR OWNERSHIP INTEREST COMPOSITION OR OTHER BANKRUPTCY-RELATED DEFAULTS, ARISING**

**UNDER ANY ASSUMED EXECUTORY CONTRACT OR UNEXPIRED LEASE AT ANY TIME BEFORE THE DATE THE DEBTORS ASSUME SUCH EXECUTORY CONTRACT OR UNEXPIRED LEASE. ANY PROOFS OF CLAIM FILED WITH RESPECT TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE THAT HAS BEEN ASSUMED SHALL BE DEEMED DISALLOWED AND EXPUNGED, WITHOUT FURTHER NOTICE TO OR ACTION, ORDER OR APPROVAL OF THE COURT**.

Obligations arising under insurance policies assumed by the Debtors before the Effective Date shall be adequately protected in accordance with any order authorizing such assumption.

**C.      Reservation of Rights.**

Neither the exclusion nor inclusion of any contract or lease in the Assumption Schedule, as applicable, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that Post-Effective Date Debtors have any liability thereunder. In the event a written objection is filed with the Court as to whether a contract or lease is executory or unexpired, the right of the Debtors or the Post-Effective Date Debtors to move to assume or reject such contract or lease shall be extended until the date that is thirty (30) days after the entry of a Final Order by the Court determining that the contract or lease is executory or unexpired, in which case the deemed assumptions and rejections provided for in the Plan shall not apply to such contract or lease.

**D.      Rejection of Executory Contracts and Unexpired Leases.**

1.      *Rejection Damage Claims*. If the rejection by the Debtors, pursuant to the Plan or otherwise, of an Executory Contract or Unexpired Lease gives rise to a Rejection Damage Claim, a Proof of Claim must be filed with the Court within (i) thirty (30) days after the date of entry of an order of the Court approving such rejection, or (ii) if the rejection is pursuant to this Plan, within thirty (30) days after the date of entry of the Confirmation Order. For the avoidance of doubt, all Allowed Rejection Damage Claims shall be treated as Unsecured Claims.

2.      ***REQUIREMENT TO FILE A PROOF OF CLAIM FOR REJECTION DAMAGE CLAIMS*. ANY REJECTION DAMAGE CLAIMS THAT ARE NOT TIMELY FILED SHALL BE DISALLOWED AUTOMATICALLY, FOREVER BARRED FROM ASSERTION, AND SHALL NOT BE ENFORCEABLE AGAINST ANY DEBTOR WITHOUT THE NEED FOR ANY OBJECTION BY THE DEBTORS OR FURTHER NOTICE TO OR ACTION, ORDER, OR APPROVAL OF THE COURT, AND ANY REJECTION DAMAGE CLAIM SHALL BE DEEMED FULLY SATISFIED, RELEASED, NOTWITHSTANDING ANYTHING IN THE SCHEDULES OR A PROOF OF CLAIM TO THE CONTRARY.**

**E.      Assignment.**

Any Executory Contract or Unexpired Lease held by any Debtor and assumed hereunder or otherwise in the Chapter 11 Cases, if not expressly assigned to a third party previously in the Chapter 11 Cases, will be deemed assigned to the Post-Effective Date Debtors pursuant to section 365 of the Bankruptcy Code. If an objection to a proposed assumption,

assumption and assignment or Cure Claim is not resolved in favor of the Debtors before the Effective Date, the applicable Executory Contract or Unexpired Lease may be designated by the Debtors for rejection within five (5) Business Days of the entry of the order of the Court resolving the matter against the Debtor. Such rejection shall be deemed effective as of the Effective Date.

**F.**     **Insurance Policies.**

Notwithstanding anything in this Plan to the contrary, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as and deemed to be Executory Contracts under the Plan. On the Effective Date, the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents and instruments related thereto.

**G.**     **Benefit Plans and Indemnification Agreements**

Subject to Section IV.J, on the Effective Date, all (i) indemnification agreements, and (ii) employee compensation and employee benefit plans of the Debtors, including employee benefit plans and programs subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code (if any) entered into before or after the Petition Date and not since terminated, shall terminate as against the Debtors.

**ARTICLE IX.**
**EFFECTIVENESS OF THE PLAN**

**A.**     **Conditions Precedent to Effectiveness.**

The Plan shall not become effective unless and until the Confirmation Date has occurred and the following conditions have been satisfied in full or waived in accordance with Article IX.B:

1.     the Confirmation Order shall have been entered by the Court in form and substance acceptable to the Debtors, in consultation with the Prepetition $20 Million Facility Lenders;

2.     the Confirmation Order shall not have been stayed, modified, or vacated on appeal;

3.     the final version of the Plan and any supplemental documents and exhibits shall have been filed and in a form and substance satisfactory to the Debtors and the Prepetition $20 Million Facility Lenders;

4.     the bar date for Governmental Units has passed;

5.     all actions, documents, certificates and agreements necessary to implement the Plan shall have been effected or executed and delivered to the required parties and, to the extent required, filed with the applicable Governmental Units in accordance with applicable laws; and

      6.      all authorizations, consents and regulatory approvals required (if any) for the Plan's effectiveness shall have been obtained and not revoked.

**B.**      **Waiver of Conditions Precedent to Effectiveness.**

      The Debtors, in consultation with the Prepetition $20 Million Facility Lenders, may waive conditions set forth in Article IX.A above at any time without leave of or order of the Court and without any formal action.

**C.**      **Effect of Failure of Conditions.**

      If each of the conditions to the Effective Date is not satisfied or duly waived in accordance with the Plan, then upon motion by the Debtors made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an Order granting such motion.

**D.**      **Vacatur of Confirmation Order.**

      If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims against or Equity Interests in the Debtor; (ii) prejudice in any manner the rights of the holder of any Claim against, or Equity Interest in, the Debtors; (iii) prejudice in any manner any right, remedy or claim of the Debtors; or (iv) be deemed an admission against interest by the Debtors.

**E.**      **Modification of the Plan.**

      Subject to the limitations contained in the Plan, (i) the Debtors, with the consent of the Prepetition $20 Million Facility Lenders, reserve the right, in accordance with the Bankruptcy Code and the Bankruptcy Rules, to amend or modify the Plan prior to the entry of the Confirmation Order, including amendments or modifications to satisfy section 1129(b) of the Bankruptcy Code, and (ii) after entry of the Confirmation Order, the Debtors, with the consent of the Prepetition $20 Million Facility Lenders, may, upon order of the Court, amend or modify the Plan, in accordance with section 1127(b) of the Bankruptcy Code.

**F.**      **Revocation, Withdrawal, or Non-Consummation.**

      1.      *Right to Revoke or Withdraw*.  The Debtors, with the consent of the Prepetition $20 Million Facility Lenders, reserve the right to revoke or withdraw the Plan at any time before the Effective Date.

      2.      *Effect of Withdrawal, Revocation, or Non-Consummation*.  If the Debtors revoke or withdraw the Plan prior to the Effective Date, or if the Confirmation Date or the Effective Date does not occur, the Plan, any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Equity Interest or Class of

Claims or Equity Interests), the assumption or rejection of Executory Contracts, Unexpired Leases or benefit plans effected by the Plan, any release, exculpation or indemnification provided for in the Plan, and any document or agreement executed pursuant to the Plan shall be null and void.  In such event, nothing contained herein, and no acts taken in preparation for consummation of the Plan shall be deemed to constitute a waiver or release of any Claims by or against or Equity Interests in the Debtors or any other Person, to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Debtors, or to constitute an admission of any sort by the Debtors or any other Person.

**ARTICLE X.**
**MISCELLANEOUS PROVISIONS**

**A.**     **Immediate Binding Effect.**

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtors, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with any Debtor.

**B.**     **Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York (without reference to the conflicts of laws provisions thereof that would require or permit the application of the law of another jurisdiction) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

**C.**     **Filing or Execution of Additional Documents.**

On or before the Effective Date, the Debtors shall (on terms materially consistent with the Plan) file with the Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**D.**     **Term of Injunctions of Stays.**

All injunctions or stays provided for in the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

E.      **Withholding and Reporting Requirements.**

        In connection with the Plan and all instruments issued in connection therewith and distributions thereon, the Post-Effective Date Debtors shall comply with all withholding and reporting requirements imposed by any United States federal, state, local or non-U.S. taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.  Notwithstanding any provision in the Plan to the contrary, the Post-Effective Date Debtors shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distribution pending receipt of information necessary or appropriate to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate.

F.      **Notices.**

        All notices, requests, and demands hereunder to be effective shall be made in writing or by e-mail, and unless otherwise expressly provided herein, shall be deemed to have been duly given when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed.  Each of such notices shall be addressed as follows:

    1.      *To the Debtors at*:

        Parent THI, Inc. and TGHI, Inc.
        1211 North Miller Street
        Anaheim, California 92806
        Attn:  President
        layden@yorkstreetcapital.com

        *With a copy to:*

        Klestadt Winters Jureller Southard & Stevens, LLP
        200 West 41st Street, 17th Floor
        New York, New York 10036
        Attn: Tracy L. Klestadt and Joseph Corneau
        tklestadt@klestadt.com and JCorneau@Klestadt.com

        Kramer Levin Naftalis & Frankel LLP
        1177 Avenue of Americas
        New York, New York 10036
        Attn:  Adam Rogoff and Anupama Yerramalli
        arogoff@kramerlevin.com, and ayerramalli@kramerlevin.com

    2.      *To the Prepetition $20 Million Facility Agent at:*

        Wilmington Savings Fund Society, FSB
        WSFS Bank Center
        500 Delaware Avenue, 11th Floor

P.O. Box 957
Wilmington, Delaware 19899
Attn: Patrick Healy
phealy@wsfsbank.com

*With a copy to:*

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, New York 10038-4982
Attn: Brett Lawrence, Jayme Goldstein and Daniel Ginsberg
blawrence@stroock.com, jgoldstein@stroock.com, and
dginsberg@stroock.com

3.      *To the PIK Note Administrative Agent:*

Law Debenture Trust Company of New York
400 Madison Avenue, Suite 4D
New York, NY 10017
Attn: Frank Godino and Thomas Musarra
frank.godino@lawdeb.com and thomas.musarra@lawdeb.com

*With a copy to*:

Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Attn: Steven Reisman
sreisman@curtis.com

4.      *To the U.S. Trustee at*:

Office of the United States Trustee, Region 2
201 Varick Street
New York, NY 10014-4811
Attn:: Andy Velez-Rivera, Esq. and Susan Arbeit, Esq.
Andy.Velez-Rivera@usdoj.gov and  susan.arbeit@usdoj.gov.

**G.      Conflicts.**

The terms of the Plan shall govern in the event of any inconsistency between the Plan and the Disclosure Statement.  In the event of any inconsistency with the Plan and the Confirmation Order, the Confirmation Order shall govern with respect to such inconsistency.

Dated:  April 15, 2016

By:  _____/s/ Christopher Layden_____
**Christopher Layden**
**President, Parent THI, Inc. and TGHI, Inc.**

**<u>Exhibit B</u>**

Notice of Entry of Confirmation Order

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel for the Debtors
and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                                 :
In re:                                                           :    Chapter 11
                                                                 :
TGHI, INC., et al.,                                              :    Case No. 16-10300(MEW)
                                                                 :
                          Debtors.[4]                            :    Jointly Administered
                                                                 :
------------------------------------------------------------ X

**NOTICE OF ENTRY OF ORDER CONFIRMING THE FIRST AMENDED JOINT
PREPACKAGED PLAN OF LIQUIDATION OF THE DEBTORS PURSUANT TO
CHAPTER 11 OF THE BANKRUPTCY CODE**

TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST OF
THE ABOVE DEBTORS, PLEASE TAKE NOTICE OF THE FOLLOWING:

Confirmation of the Plan.  On April ___, 2016 (the "Confirmation Date"), the United

States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors (A)*

*Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code and (B)*

*Solicitation of Votes and Solicitation Procedures and (II) Confirming the First Amended Joint*

---

[4] The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521) and TGHI, Inc. (3814).

*Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code*

(the "<u>Confirmation Order</u>") [Docket No. ___].  A copy of the Confirmation Order is annexed

hereto as **<u>Exhibit 1</u>**. Unless otherwise defined herein, capitalized terms used herein shall have the

meanings ascribed to them in the Prepack Plan or the Confirmation Order, as applicable.  The

Prepack Plan and the Disclosure Statement are available by written request to the to the Debtors'

claims and noticing agent, Kurtzman Carson Consultants LLC at 1290 Avenue of the Americas,

9th Floor, New York, New York 10104, by email at TGHIinfo@kccllc.com, or by telephone at

(917) 281-4833, or free of charge at the Debtors' website at http://www.kccllc.net/TGHI. They

are also available on the Court's website at www.ecf.nysb.uscourts.gov (PACER account

required).

Dated:   New York, New York
         [____], 2016

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By:   */s/ DRAFT*
       Tracy L. Klestadt
       Joseph C. Corneau
       200 West 41st Street, 17th Floor
       New York, New York 10036
       Tel: (212) 972-3000
       Fax: (212) 972-2245
       Email:  tklestadt@klestadt.com
              jcorneau@klestadt.com

       *Counsel for the Debtors*
       *and Debtors in Possession*

**<u>Exhibit C</u>**

Notice of Effective Date

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
Tracy L. Klestadt
Joseph C. Corneau
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Counsel for the Debtors*
*and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------X
                                                          :
In re:                                                    :    Chapter 11
                                                          :
TGHI, INC., et al.,                                       :    Case No. 16-10300(MEW)
                                                          :
                              Debtors.5                   :    Jointly Administered
                                                          :
-------------------------------------------------------------- X

**NOTICE OF OCCURRENCE OF EFFECTIVE DATE OF THE FIRST AMENDED**
**JOINT PREPACKAGED PLAN OF LIQUIDATION OF THE DEBTORS PURSUANT**
**TO CHAPTER 11 OF THE BANKRUPTCY CODE**

TO ALL CREDITORS, EQUITY INTEREST HOLDERS AND PARTIES IN INTEREST OF
THE ABOVE DEBTORS, PLEASE TAKE NOTICE OF THE FOLLOWING:

Confirmation of the Plan. On April ___, 2016 (the "Confirmation Date"), the United

States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")

entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Debtors (A)*

*Disclosure Statement Pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code and (B)*

*Solicitation of Votes and Solicitation Procedures and (II) Confirming the First Amended Joint*

---

5 The Debtors and the last four digits of their taxpayer identification numbers are as follows: Parent THI, Inc. (5521)
and TGHI, Inc. (3814).

*Prepackaged Plan of Liquidation of the Debtors Pursuant to Chapter 11 of the Bankruptcy Code*

(the "Confirmation Order") [Docket No. ___].  Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Confirmation Order, as applicable.  The Prepack Plan, the Disclosure Statement and the Confirmation Order are available by written request to the to the Debtors' claims and noticing agent, Kurtzman Carson Consultants LLC at 1290 Avenue of the Americas, 9th Floor, New York, New York 10104, by email at TGHIinfo@kccllc.com, or by telephone at (917) 281-4833, or free of charge at the Debtors' website at http://www.kccllc.net/TGHI. They are also available on the Court's website at www.ecf.nysb.uscourts.gov (PACER account required).

Effective Date.  Pursuant to the Confirmation Order, the Debtors hereby certify and give notice that the Prepack Plan became effective on [_____], 2016 (the "Effective Date").

Dated:   New York, New York
         [_____], 2016

                              KLESTADT WINTERS JURELLER
                              SOUTHARD & STEVENS, LLP

                         By:   /s/ DRAFT
                              _____
                              Tracy L. Klestadt
                              Joseph C. Corneau
                              200 West 41st Street, 17th Floor
                              New York, New York 10036
                              Tel: (212) 972-3000
                              Fax: (212) 972-2245
                              Email:  tklestadt@klestadt.com
                                      jcorneau@klestadt.com

                              *Counsel for the Debtors*
                              *and Debtors in Possession*